UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

WEIDONG GUAN,
a/k/a "Bill Guan,"

Defendant.

**SEALED INDICTMENT**

24 Cr. _____ (\_\_\_)

**24 CRIM 322**

The Grand Jury charges:

## OVERVIEW

1. From at least in or about 2020, through in or about May 2024, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, and others participated in a sprawling, transnational scheme to launder at least approximately $67 million of illegally obtained funds (the "Money Laundering Scheme"). The Money Laundering Scheme benefited a multinational media company headquartered in Manhattan, New York (the "Media Company"), certain entities affiliated with the Media Company (together with the Media Company, the "Media Entities"), and GUAN.

2. WEIDONG GUAN, a/k/a "Bill Guan," the defendant, was the Chief Financial Officer of the Media Company and managed, among other teams, the Media Company's "Make Money Online" team (the "MMO Team"), which was located in a particular foreign office of the Media Company (the "Media Company's Foreign Office"). Under GUAN's management, members of the MMO Team and others used cryptocurrency to knowingly purchase tens of millions of dollars in crime proceeds. The MMO Team and other participants in the scheme

purchased these crime proceeds at a discount and then transferred those proceeds into bank accounts held by the Media Entities.

3. Members of the MMO Team and other scheme participants moved the crime proceeds into the Media Entities' accounts through tens of thousands of layered transactions utilizing, among other things, prepaid debit cards and financial accounts that were opened using stolen identification information, including the personal identification information of U.S. residents. Some of the crime proceeds were further transferred into bank and cryptocurrency accounts belonging to WEIDONG GUAN, a/k/a "Bill Guan," the defendant.

4. In or about 2020, the Money Laundering Scheme caused tens of millions of illicit dollars to be transferred into the Media Entities' bank accounts. In fact, that year, the Media Company's internal financial accounting reflected an increased annual revenue over the previous year of approximately 410 percent—from approximately $15 million to approximately $62 million. A significant portion of this increase was attributable to the Media Company's Foreign Office, including the MMO Team, which was managed by WEIDONG GUAN, a/k/a "Bill Guan," the defendant.

5. To conceal the illicit origins, nature, and source of the crime proceeds, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, and his co-conspirators, made false statements about the source of the Media Entities' increased funds. For example, GUAN and his co-conspirators made multiple false statements in response to numerous complaints and concerns raised by banks, cryptocurrency companies, and others about the Media Entities' suspicious financial activity. At times, GUAN falsely stated that the increase of funds reflected "profit" from the work of the Media Company's Foreign Office that it had "donated" to the Media Entities. At other times, GUAN falsely stated that the increase of funds was from customer "subscriptions" to the Media Company.

And at still other times, GUAN falsely stated, including to U.S. banks, that the increase in funds was attributable to increased "donations" by supporters of the Media Company. In truth and in fact, and as GUAN well knew, the unlawful proceeds of the Money Laundering Scheme drove the increase in funds to the Media Entities' accounts.

## THE DEFENDANT AND RELEVANT ENTITIES AND ACCOUNTS

6. At all times relevant to this Indictment, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, served as the Chief Financial Officer of a multinational media company (*i.e.*, the Media Company) that is part of a media conglomerate headquartered in Manhattan consisting of certain media entities (*i.e.*, the Media Entities), including the Media Company. GUAN has also served as the Secretary of the Media Entities. GUAN has held personal bank accounts with four banks ("Bank-1," "Bank-2," "Bank-3," and "Bank-4," and, collectively, the "Banks") and various cryptocurrency accounts. GUAN resides in New Jersey and works at the Media Company's offices in Manhattan.

7. Certain of the Media Entities, including the Media Company, are headquartered in Manhattan. The Media Company's Foreign Office is located in a country other than the United States. The Media Entities held bank accounts with Bank-1, including at least two bank accounts that were opened in Manhattan and used in furtherance of the Money Laundering Scheme (the "8173 Account" and the "5397 Account"). The Media Entities also held bank accounts with Bank-2, Bank-3, and Bank-4. The Banks are each headquartered in the United States, and their deposits are each insured by the Federal Deposit Insurance Corporation ("FDIC").

## THE MONEY LAUNDERING SCHEME

8. Beginning in or about early 2020, individuals affiliated with the Media Entities—including members of the MMO Team—began purchasing tens of thousands of prepaid debit cards

3

below cost on a cryptocurrency platform ("Cryptocurrency Platform-1"). The prepaid debit cards were issued by different debit card companies and loaded with U.S. dollars that had been unlawfully obtained through various frauds (*i.e.*, the crime proceeds). For example, certain of the prepaid debit cards were loaded with fraudulently procured unemployment insurance benefits obtained using stolen personal identification information of U.S. residents. The crime proceeds were sold on Cryptocurrency Platform-1 to affiliates of the Media Company's Foreign Office at discounted rates of approximately 70 to 80 cents per dollar and in exchange for cryptocurrency. Once purchased, the crime proceeds were transferred to bank accounts of the Media Entities (the "Media Entities' Bank Accounts"), including through multiple layered transactions designed to conceal the unlawful origins of the funds.

9. To execute the Money Laundering Scheme, individuals employed by or affiliated with the Media Entities, located both in the United States and overseas, used stolen personal identification information to open accounts, including prepaid debit card accounts, cryptocurrency accounts, and bank accounts, that were used to transfer the crime proceeds to the Media Entities' Bank Accounts.

10. From the Media Entities' Bank Accounts, certain of the crime proceeds were further transferred to the personal bank and cryptocurrency accounts of WEIDONG GUAN, a/k/a "Bill Guan," the defendant. For example, from in or about April 2020 through in or about January 2021, seven of the Media Entities' Bank Accounts made approximately 85 transfers totaling approximately $16.7 million to one of GUAN's bank accounts. GUAN subsequently transferred approximately $5.7 million of those funds from his bank account to his own and other cryptocurrency accounts on a second cryptocurrency platform ("Cryptocurrency Platform-2"). GUAN also transferred approximately $10.9 million of those funds from his bank account to his

4

own and other cryptocurrency accounts with a third cryptocurrency platform ("Cryptocurrency Platform-3"). Certain of the funds were transferred back to other cryptocurrency accounts with Cryptocurrency Platform-1, likely to purchase additional crime proceeds, in continuation of the Money Laundering Scheme. Despite the multi-million-dollar transfers GUAN received into his personal and cryptocurrency accounts in 2020 and 2021, GUAN did not report this income in his tax filings for the years 2020 or 2021.

### GUAN AND OTHERS AT THE MEDIA COMPANY RECEIVED NUMEROUS REPORTS AND COMPLAINTS ABOUT THE SCHEME

11. Beginning in or about mid-2020, shortly after the Money Laundering Scheme was initiated by the MMO Team, which was managed by WEIDONG GUAN, a/k/a "Bill Guan," the defendant, various entities and individuals—including banks, cryptocurrency platforms, and others—repeatedly alerted GUAN and others employed by the Media Company about the suspicious nature of financial transactions involving the Media Entities' Bank Accounts that was indicative of fraud and money laundering. At times, GUAN—who was aware of the nature and existence of the Money Laundering Scheme—forwarded certain of those alerts to other employees of the Media Entities for further inquiry or without any message; at other times, GUAN responded with false information; in other instances, GUAN does not appear to have responded to or addressed the alerts. For example, in substance and in part:

      a. On or about June 29, 2020, Bank-1 contacted GUAN, and requested invoices relating to certain transactions involving one of the Media Entities' Bank Accounts (the 8173 Account) that Bank-1's Risk Management Department identified as suspicious. In response, GUAN falsely represented to Bank-1 that the transactions were "all online donations" and that the Media Entities did not keep invoices for donations unless the donor requested an invoice. In actuality, and as GUAN was well aware, the transactions were not online donations to the Media

5

Entities, but rather, laundered crime proceeds. After responding to Bank-1, GUAN subsequently emailed an employee of the Media Entities requesting copies of fraudulent "donation notification emails" for each of the transactions at issue.

      b.      In or about August 2020, GUAN and others employed by the Media Company received an email complaint from an individual affiliated with the Media Entities reporting concerns about money laundering activity in the Media Company's Foreign Office. That complaint noted that certain employees of the Media Company's Foreign Office were purchasing large quantities of prepaid debit and gift cards online and at discounted rates, and that the purchased U.S. dollars were believed to be stolen funds.

      c.      On or about October 6, 2020, Bank-1 informed GUAN that one of the Media Entities' Bank Accounts had been identified as having a suspiciously high "chargeback ratio"—that is, the percentage of transactions unauthorized by the customer and therefore refunded—for fraud that exceeded the industry standard.

      d.      In or about December 2020, Bank-2 contacted GUAN at least twice about two of the Media Entities' Bank Accounts, one of which was the 8623 Account, because of an increase in the processing volume of those two accounts. In response, GUAN falsely represented to Bank-2, among other things, that the increase in transaction volume was a result of "more and more donations from our supporters because more and more people like our media."

      e.      On or about December 23, 2020, GUAN received a forwarded message from a prepaid debit card company alerting the Media Company that "[t]he funds being used [by the Media Company] are stolen/fraudulent funds which leads us to believe these are all money laundering attempts."

f. In or about September 2020, Cryptocurrency Platform-2 contacted GUAN to inquire about his recent account activity, which involved high transfer values and many transactions with peer-to-peer exchanges (*i.e.*, electronic money transfers made from one person to another through an intermediary that is typically a payment application) that are "attractive for money laundering activities." Cryptocurrency Platform-2 asked GUAN for, among other things, information about the "source of funds to purchase cryptocurrency." Cryptocurrency Platform-2 contacted GUAN again in October 2020 and November 2020 about the same topic, but GUAN did not respond to Cryptocurrency Platform-2's emails.

g. From in or about August 2021 through August 2022, Cryptocurrency Platform-3 contacted GUAN multiple times, inquiring about the "purpose" of his account and whether GUAN had any proof of the source of his funds. GUAN did not respond to Cryptocurrency Platform-3's emails.

h. From in or about September 2021 through in or about October 2021, GUAN received over 1,700 automated emails from Bank-2 alerting him that at least one of the Media Entities' Bank Accounts was receiving a high volume of transactions per hour from the same IP address, indicating that the transactions were made from the same location, inconsistent with individual subscription payments or donations.

i. From in or about 2020 through in or about 2022, several individuals contacted the Media Company about fraudulent transactions made in their names that benefited the Media Company, such as unauthorized deductions from bank accounts or unauthorized purchases, including of debit cards. GUAN was forwarded several of these complaints.

## GUAN'S FALSE AND CONFLICTING STATEMENTS ABOUT THE MEDIA ENTITIES' INCREASE IN REVENUE

12. During the course of the Money Laundering Scheme, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, made multiple false statements about the source of the Media Entities' increase in funds or purported "revenue" increase. For example, in substance and in part:

 a. In or about 2020 and in or about 2021, in response to inquiries and concerns from banks, including Bank-1 and Bank-2 as set forth above, GUAN falsely claimed to Bank-1 and Bank-2 that the Media Entities' increased revenue was from "donations."

 b. In or about January 2021, GUAN expressed gratitude to employees of the Media Company's Foreign Office for the significant increase in revenue in or about 2020. For example, on or about January 7, 2021, GUAN emailed employees of the Media Company's Foreign Office, including members of the MMO Team—which was largely responsible for executing the Money Laundering Scheme—for the "team's contribution last year" and for making "a huge profit and donat[ing] all of it to our media group." GUAN wished the team "a better performance" in 2021.

 c. In or about January 2022, GUAN wrote a letter addressed to a congressional office falsely stating that "subscriptions constitute the major portion of [the Media Company's] revenue," and that "[c]haritable donations" constitute "an insignificant portion of the overall revenue." However, in truth and in fact, and as GUAN well knew, the Money Laundering Scheme drove the Media Company's increased revenue in 2020 and 2021.

## STATUTORY ALLEGATIONS

### COUNT ONE
### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

13. The allegations set forth in paragraphs 1 through 12 are incorporated by reference as if set forth fully herein.

14. From at least in or about 2020, through at least in or about May 2024, in the Southern District of New York and elsewhere, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1957(a).

15. It was a part and an object of the conspiracy that WEIDONG GUAN, a/k/a "Bill Guan," the defendant, and others known and unknown, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such a financial transaction, which transaction affected interstate and foreign commerce and involved the use of a financial institution which was engaged in, and the activities of which affected, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

16. It was further a part and an object of the conspiracy that WEIDONG GUAN, a/k/a "Bill Guan," the defendant, and others known and unknown, within the United States, knowingly would and did engage and attempt to engage in a monetary transaction, as defined in Title 18,

9

United States Code, Section 1947(f)(1), in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit, wire fraud, in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Section 1956(h).)

## COUNT TWO
### (Bank Fraud)

The Grand Jury further charges:

17. The allegations set forth in paragraphs 1 through 12 are incorporated by reference as if set forth fully herein.

18. In or about June 2020, in the Southern District of New York and elsewhere, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, knowingly executed, and attempted to execute, a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, GUAN made false statements to Bank-1, including misrepresentations that certain transactions were "donations" to one of the Media Entities when they were not donations, as part of a scheme to keep at least one Bank-1 account open and to maintain access to the funds in that bank account, including to transfer funds in and out of that account.

(Title 18, United States Code, Sections 1344(2) and 2.)

## COUNT THREE
### (Bank Fraud)

The Grand Jury further charges:

19. The allegations set forth in paragraphs 1 through 12 are incorporated by reference as if set forth fully herein.

20. In or about December 2020, in the Southern District of New York and elsewhere, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, knowingly executed, and attempted to execute, a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of false and fraudulent pretenses, representations, and promises, to wit, GUAN made false statements to Bank-2, including misrepresentations that certain transactions were "donations" to the Media Entities when they were not donations, as part of a scheme to keep at least one Bank-2 account open and to maintain access to the funds in that bank account, including to transfer funds in and out of that account.

(Title 18, United States Code, Sections 1344(2) and 2.)

## FORFEITURE ALLEGATIONS

21. As a result of committing the offense alleged in Count One of this Indictment, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

22. As a result of committing the offenses alleged in Counts Two and Three of this Indictment, WEIDONG GUAN, a/k/a "Bill Guan," the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any and all property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of the

commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

Substitute Assets Provision

23. If any of the above-described forfeitable property, as a result of any act or omission of WEIDONG GUAN, a/k/a "Bill Guan," the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)



FOREPERSON

Damian Williams
DAMIAN WILLIAMS
United States Attorney