USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__1/21/2026__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

                - against -

WEIDONG GUAN,
a/k/a "Bill Guan," and
LE VAN HUNG,
a/k/a "Hung Van Le,"
a/k/a "Van Hung Le,"

                Defendants.

---

**24 CR 322 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Pending before the Court are the motions of defendants Weidong Guan ("Guan") and Le Van Hung ("Hung," and together with Guan, the "Defendants") pursuant to Federal Rule of Criminal Procedure ("Rule") 7(f) to compel the Government to provide a bill of particulars (see Dkt. Nos. 86, 89), Hung's motion to suppress all evidence seized pursuant to a series of warrants (see Dkt. No. 92), and Hung's motion to dismiss the Superseding Indictment (the "Hung Indictment") (see Dkt. No. 95). For the reasons set forth below, Guan's and Hung's motions for a bill of particulars are **DENIED,** Hung's motion to suppress is **DENIED,** and Hung's motion to dismiss is **DENIED.**

### I.    BACKGROUND

In May 2024, Guan was indicted (the "Guan Indictment") on three charges: one count of participating in a conspiracy to commit money laundering, from at least in or about 2020

1

through at least in or about May 2024, in violation of 18 U.S.C. § 1956(h); and two counts of committing bank fraud, in or about June 2020 and in or about December 2020, in violation of 18 U.S.C. § 1344(2). (See Dkt. No. 4.) Hung was indicted in May 2024 on four charges: money laundering conspiracy, in violation of 18 U.S.C. § 1956(h); bank fraud conspiracy, in violation of 18 U.S.C. § 1349; aggravated identity theft, in violation of 18 U.S.C. § 1028A; and identity theft conspiracy, in violation of 18 U.S.C. § 1028(f).

The Guan Indictment and Hung Indictment (together, the "Indictments") allege that Guan and Hung participated in a scheme to launder at least $67 million of illegally obtained funds benefiting a multinational media company (the "Media Company") based in New York, various affiliated entities (together with the Media Company, the "Entities"), and Guan, who served as the Media Company's Chief Financial Officer. (See Guan Indictment ¶¶ 1-2; Hung Indictment ¶ 1.) Guan managed the Media Company's "Make Money Online" team (the "MMO Team"). (See Guan Indictment ¶ 2.) Allegedly, under Guan's management, the MMO Team and others used cryptocurrency to purchase millions of dollars in crime proceeds at a discount and transferred the proceeds into the Entities' bank accounts. (See id.) The Indictments state that those proceeds were transferred through thousands of

transactions involving prepaid debit cards and financial accounts opened using stolen personal identification information of United States residents. (See id. ¶ 3; Hung Indictment ¶ 5.) The Hung Indictment alleges that Hung recruited co-conspirators, transferred personal identification information, and tracked that information, all in furtherance of the money laundering scheme. (See Hung Indictment ¶ 7.) Hung is also charged with directing a co-conspirator to (1) "obtain at least one prepaid debit card, receive funds to the card, and transfer the funds to the . . . Entities' bank accounts"; (2) use their "U.S. address to receive in the mail physical prepaid debit cards that were issued in the name" of other individuals and "transfer images of those prepaid debit cards" to Hung; and (3) call a bank and "falsely claim that they were the account holder of a certain account by using the personal identification information of the purported account holder" so that Hung and his co-conspirators could transfer funds in and out of the account. (Id. ¶ 8.)

The Government began investigating the circumstances leading to the charges in this case in or around January 2021 and has obtained over twenty warrants to search the contents of various email accounts, social media accounts, and electronic devices. (See Opp'n at 1-2.) Relevant to the

3

pending motions, incident to Hung's arrest on or about June 5, 2024, authorities seized three of Hung's personal electronic devices. (See Dkt. No. 94 at 3.) In addition to warrants to search Hung's Facebook account and various email accounts, the Government also obtained a warrant to search the content "created, sent, received, or accessed between January 1, 2020, and June 5, 2024" on the three electronic devices. (Id. at 4; Dkt. No. 93, Exs. A-C.)

The authorized search included fourteen categories of information, four of which Hung cites in the instant motion: (1) "[e]vidence of financial transfers to or from bank or cryptocurrency accounts associated with WEIDONG GUAN . . . [and] other related entities . . . including, but not limited to, communications, documents, or images pertaining to such transfers"; (2) "[e]vidence of electronic accounts, including cryptocurrency accounts, bank accounts, payment application accounts, and email accounts used in furtherance of the Subject Offenses, and the ownership of such accounts"; (3) "[e]vidence that establishes the identities of co-conspirators and others involved in committing the Subject Offenses, including photographs and contact information such as names, usernames, email addresses, or physical addresses"; and (4) "[e]vidence of passwords or other information needed to access electronic devices or other accounts likely to

4

contain evidence of the Subject Offenses." (Dkt. No. 94 at 4.)

In addition to detailed warrant affidavits, the Government has produced approximately two million pages of documents and data, including spreadsheets containing financial transactions and statements. (See Dkt. No. 87 at 3; Dkt. No. 104, Ex. F.) The Government has also provided Guan and Hung with a spreadsheet identifying approximately 100,000 transactions that total approximately $67 million - the figure reflected in the Indictments indicating the extent of the money laundering scheme. (See Dkt. No. 109 at 1-2.)

On October 8, 2025, Guan filed a motion for a bill of particulars (see Dkt. No. 86), supported by a memorandum of law. (See "Guan BoP Mem.," Dkt. No. 87.) On October 8, 2025, Hung filed a motion for a bill of particulars (see Dkt. No. 89), supported by a memorandum of law. (See "Hung BoP Mem.," Dkt. No. 91.) On October 8, 2025, Hung filed a motion to suppress (see Dkt. No. 92), supported by a memorandum of law. (See "Suppress Mem.," Dkt. No. 94.) On October 8, 2025, Hung filed a motion to dismiss the charges (see Dkt. No. 95), supported by a memorandum of law. (See "MTD Mem.," Dkt. No. 97.) On November 7, 2025, the Government filed a consolidated opposition to Guan's and Hung's motions. (See "Opposition" or "Opp'n," Dkt. No. 104.) On November 21, 2025, Guan filed a

reply. (See "Guan Reply," Dkt. No. 105.) On November 21, 2025, Hung filed a reply. (See "Hung Reply," Dkt. No. 105.) On November 24, 2025, the Government filed a letter regarding a factual assertion contained in both replies. (See Dkt. No. 107.) In light of the Government's voluntary production of further discovery – as indicated in its Opposition and in the November 24 letter - the Court issued an order on December 3, 2025, directing the parties to clarify which issues in the motions for a bill of particulars remained in contention. (See Dkt. No. 104, Ex. F; Dkt. Nos. 107, 108.) Guan filed a response on December 9, 2025. (See "Guan Letter," Dkt. No. 109.) Hung failed to respond by the Court-ordered deadline.

## II.  DISCUSSION

### A.   DEFENDANTS' MOTIONS FOR A BILL OF PARTICULARS

The purpose of a bill of particulars is to provide the defendant with sufficient information about the charged conduct to prepare for trial, to avoid surprise, and to be able to interpose a claim of double jeopardy if he were again prosecuted for the same offense. See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); Fed. R. Crim. P. 7(f). "A bill of particulars is not meant to be a tool to compel disclosure of the Government's case before trial." United States v. Fruchter, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000). "A bill of particulars is required only where the

6

charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004) (internal quotation marks and citation omitted).

In evaluating whether a defendant has been adequately informed "of the specific acts of which he is accused," id., courts look to the indictment and the materials disclosed in discovery. See Bortnovsky, 820 F.2d at 574 ("[I]f the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."). "The ultimate test is whether the information sought is necessary, not whether it is helpful." United States v. Morgan, 690 F. Supp. 2d 274, 285 (S.D.N.Y. 2010). It is within the Court's discretion to make that determination and order a bill of particulars if appropriate. See Bortnovsky, 820 F.2d at 574.

1.   Guan's Motion[1]

Against the backdrop of the substantial discovery the Government has provided, the Court finds that a bill of particulars is unnecessary at this stage. Guan argues that the Government's supplemental disclosures – provided after the filing of the pending motion – do not materially resolve

---

[1] Hung joins Guan's motion at Dkt. No. 86 for a bill of particulars. (See Dkt. No. 89.)

the need for a bill of particulars. (See Guan Letter at 1.) In his motion, Guan argues that the Government "should be ordered to provide a bill of particulars identifying the specific prepaid debit card transactions that it intends to rely on at trial to prove that Mr. Guan conspired to launder the $67 million alleged in the Indictment." (Guan BoP Mem. at 9.) Guan now contends that while the Government's supplemental disclosure of discovery identified 100,000 transactions amounting to the $67 million figure stated in the Indictments, "roughly 600,000 transactions . . . are referenced in the discovery," and thus the Government has not addressed or indicated whether the other 500,000 transactions are relevant to the charges. (Guan Letter at 1-2, n. 2.)

Despite the Government's contention that it may rely on transactions other than the 100,000 specifically identified – as it may seek to establish at trial "a figure that is greater or less than" the amount stated in the Indictments (Gov. Letter at 2) – the Court finds that the current disclosures "identify with sufficient particularity the nature of the charge[s] pending against [the defendant]." United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988). Although the information Guan seeks – namely, the specific prepaid debit card transactions that the Government intends to rely on at trial – might aide in Guan's defense, the

8

arguments supporting the need for the disclosures fail to meet the standard set forth by courts in this District. See, e.g., United States v. Block, No. 16-CR-595, 2017 WL 1608905, at *6 (S.D.N.Y. Apr. 28, 2017) (explaining that "the standard for granting a bill of particulars is not whether it would be *helpful* to [defendant's] defense but, rather, whether it is *necessary*") (emphases in original); Alston v. United States, No. 15-CR-435, 2021 WL 2380064, at *7 (S.D.N.Y. June 10, 2021) (finding that a bill of particulars is "generally disfavored" and "ordered only where the indictment (as supplemented by discovery and other disclosures) is not sufficient to provide adequate notice to a defendant").

Here, the Court finds that even if the Government has not addressed the relevance of the thousands of transactions produced in discovery, the identification of roughly 100,000 – those that amount to the total indicated in the Indictments – allows Guan to understand the charges against him and prepare for trial. The Government is not required to identify each and every transaction it intends to rely upon, nor specify an all-inclusive itemized list. See, e.g., United States v. Motovich, No. 21-CR-497, 2024 WL 2943960, at *17 (E.D.N.Y. June 11, 2024) (denying bill of particulars seeking, in part, to identify relevant transactions – among "the more than 10,000" – because both the "notice of the

9

nature of the charges" and "the date ranges within which Defendants committed the crimes" were sufficiently specific to inform them of the charges and "enable them to prepare a defense"); United States v. Cuti, No. 08-CR-972, 2009 WL 3154310, at *8 (S.D.N.Y. Sept. 24, 2009) (denying bill of particulars where the Government supplied, in part, "a list of $15 million in [transactions], some of which were part of the allegedly fraudulent scheme"). Granting a bill of particulars in this case would run counter to established precedent, turning the motion into "an investigative tool for the defense." United States v. Morales, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).

Finally, while Guan is correct that, in certain cases, "voluminous discovery can militate *in favor of* granting a bill of particulars" (Guan BoP Mem. at 5), this is not such a case. As the Government contends, Guan does not face the "problem of identifying which small handful of transactions, among many legitimate transactions, are allegedly criminal." (Opp'n at 17.) Even if the Government ultimately relies on any of the unaddressed 500,000 transactions, it has specifically identified the 100,000 transactions that support the figures stated in the Indictments. See, e.g., United States v. Kahale, 789 F. Supp. 2d 359, 376 (E.D.N.Y. 2009) (finding that the case did not present the "quintessential

'needle in a haystack' problem" because the indictment and discovery materials provided adequate notice to defendants of the crimes charged). Simply stated, the information Guan seeks is not "necessary for the preparation of [his] defense." United States v. Chalmers, 410 F. Supp. 2d 278, 286-87 (S.D.N.Y. 2006).

2.   Hung's Motion[2]

In his motion for a bill of particulars, Hung argues that the Government must disclose (1) all known co-conspirators; (2) the specified unlawful activity underlying the money laundering charges; (3) the principal overt acts and transactions; and (4) the alleged acts of bank fraud and identity theft. (See Hung BoP Mem. at 4-7.)

First, the Court finds that the Government is not required to identify each co-conspirator, as Hung has "received adequate information on which to prepare [his] defenses." United States v. Mahaffy, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006). The Government has identified various co-conspirators and provided identifying information, and "[s]o long, as here, an indictment and discovery sufficiently enable defendants to avoid surprise and prepare for trial, a bill of particulars is not warranted." United States v.

_____

[2] Guan joins Hung's motion at Dkt. No. 89 for a bill of particulars. (See Dkt. No. 86.)

Coffey, 361 F. Supp. 2d 102, 122 (E.D.N.Y. 2005); see also United States v. Rodriguez, 1999 WL 820558 at *2 (S.D.N.Y. Oct. 13, 1999) (denying motion for a bill of particulars seeking the identity of known co-conspirators where the indictment coupled with discovery allowed the defendant "both to prepare his defense and to avoid prejudicial surprise at trial"); United States v. Sindone, 2002 WL 48604, at *1 (S.D.N.Y. Jan. 14, 2002) (finding that "the government is not required to turn over information that will permit a defendant to preview the government's case"); United States v. Albunio, No. CR-91-0403, 1992 WL 281037, at *4 (E.D.N.Y. Sept. 9, 1992) (finding that "the refusal of a district court to direct the filing of a bill of particulars as to the names of unindicted co-conspirators or as to the names of witnesses is not an abuse of discretion").

Hung next asserts that the Court must require the Government to disclose the specific unlawful activity underlying the money laundering charges – namely, the "nature of the scheme, the approximate time period, and the victims" – and other principal overt acts. (Hung BoP Mem. at 5-6.) But here, once again, the Court finds that the information in the Indictments is sufficient to put Hung on notice of the "specific acts of which he is accused." United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987) ("A bill of

particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."). Similar requests for the types of detailed disclosures that Hung seeks – including with respect to "where" and "when" – "are routinely denied." United States v. Juliano, No. 99-CR-1197, 2000 WL 640644, at *2 (S.D.N.Y. May 18, 2000); see also United States v. Kaplan, No. 23-CR-293, 2025 WL 2200539, at *7 (E.D.N.Y. Aug. 1, 2025) ("Defendants request that the Government preview its theories and the evidence it intends to highlight from the vast number of documents it has turned over in discovery. . . . [C]ourts in this Circuit have consistently held that this is an impermissible ground for a bill of particulars in conspiracy cases."); United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge."). As to disclosing the principal transactions among what Hung asserts are the "millions of pages" that have been released in discovery, the Court denies this request for the same reasons it denies Guan's motion for a bill of particulars.

Finally, Hung asserts that in relation to the bank fraud and identity theft charge, the "defense is entitled to know:

(i) the specific content of the alleged false statements; (ii) the date on which they were made; (iii) the person or department to whom they were made; and (iv) the identity of the person whose means of identification was allegedly stolen." (Hung BoP Mem. at 5-6.) At the outset, the Court notes that the Government has already identified the victim referenced in the identity theft charge. (See Dkt. No. 104, Ex. F.) The other specifics Hung seeks fall squarely into categories of information that could prove helpful but are not necessary, which, as stated, is the standard for granting a bill of particulars. See, e.g., United States v. Facciolo, 753 F. Supp. 449, 451 (S.D.N.Y. 1990) ("The important question is whether the information sought is necessary, not whether it is helpful."). Accordingly, the Court denies Hung's motion for a bill of particulars.

### B.   HUNG'S MOTION TO SUPPRESS

Although the Government's investigation underlying this action involved the issuance and execution of numerous search warrants, Hung specifically challenges the validity of three – moving to suppress all evidence, and the fruits thereof, obtained directly or indirectly from the search of (1) "personal electronic devices . . . seized from his person upon his arrest on or about June 5, 2024"; (2) "the Facebook account associated with the identifier levanhung.mmo4"; and

(3) "the email accounts huynhgiabao180295@gmail.com, hung@xaha.us, and any other email accounts for which Mr. Hung has a reasonable expectation of privacy." (Dkt. Nos. 92-93.)

To support his argument that the evidence seized pursuant to those warrants must be suppressed as fruit of the poisonous tree, Hung contends that the warrants are facially invalid because they lack particularity and are overbroad. (See Suppress Mem. at 5-7.) Hung additionally asserts that the good faith exception does not apply. (See id.) The Court disagrees.

1.   Particularity and Overbreadth

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; see also United States v. Cohan, 628 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) ("A warrant . . . can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries."). The particularity requirement "guards against general searches that leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." United States v. Riley, 906 F.2d 841, 844 (2d Cir.

15

1990); see also United States v. Clark, 638 F.3d 89, 94 (2d Cir. 2011) ("Particularity concerns frequently arise in circumstances where the description in the warrant of the place to be searched is so vague that it fails reasonably to alert executing officers to the limits of their search authority."). "To be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements." United States v. Ulbricht, 858 F.3d 71, 99 (2d Cir. 2017), abrogated on other grounds by Carpenter v. United States, 585 U.S. 296 (2018). The warrant must: (1) "identify the specific offense" for which probable cause has been established; (2) "describe the place to be searched"; and (3) "specify the items to be seized by their relation to designated crimes." United States v. Galpin, 720 F.3d 436, 446 (2d Cir. 2013) (internal quotation marks and citation omitted).

The level of specificity that the Fourth Amendment requires depends on many factors, United States v. Jacobson, 4 F. Supp. 3d 515, 522 (E.D.N.Y. 2014), and courts do not demand "a perfect description of the data to be searched and seized," Ulbricht, 858 F.3d at 100. "Search warrants covering digital data may contain some ambiguity." Id. (internal quotation marks omitted); see also Galpin, 720 F.3d at 446 ("[C]ourts may tolerate some ambiguity in the warrant so long as law enforcement agents have done the best that could

16

reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." (internal quotation marks and citation omitted)). As the Second Circuit has explained, "it is important to bear in mind that a search warrant does not necessarily lack particularity simply because it is broad." Ulbricht, 858 F.3d at 100. The particularity requirement is satisfied if the warrant enables "the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." United States v. George, 975 F.2d 72, 75 (2d Cir. 1992).

First, Hung argues that the warrants lack particularity because they list "broad, generic categories of data that exist on nearly every modern electronic device" and "impermissibly delegate" the task of determining what is relevant to the investigation. (Suppress Mem. at 5-6.) Hung asserts, as an example, that "authorizing the seizure of evidence that establishes the identities of co-conspirators or evidence of electronic accounts" describes the "purpose of the search" instead of directing the officer "what to seize." (Id.) The authorization to search "all photographs" and "all

17

location data," Hung contends, is "not meaningfully limited" and thus cannot withstand scrutiny. (Hung Reply at 6.)

The Court finds, however, that each of the three warrants at issue – the warrants related to Hung's personal electronic devices, Facebook account, and email accounts – satisfies the three particularity requirements. They "identify the specific offense" for which probable cause has been established and "describe the place to be searched." Galpin, 720 F.3d at 446. Hung primarily argues that the warrants fail to "specify the items to be seized," asserting that the warrants do not list the "items themselves" by "limiting the search to communications with specific individuals, documents containing specific keywords, or financial records from a particular time period." (Suppress Mem. at 5-6.) But the Second Circuit has upheld the validity of warrants without the presence of exacting, rigid limitations, noting that the focus is "on practical accuracy, as opposed to technical precision." United States v. Tompkins, 118 F.4th 280, 287–88 (2d Cir. 2024); see also Ulbricht, 858 F.3d at 102 (rejecting defendant's argument that "the warrant was insufficiently particular because the government and the magistrate judge failed to specify the search terms and protocols *ex ante* in the warrant").

The contested personal electronic devices warrant authorizes, for example, a search for "communications, documents, or images pertaining to" "financial transfers to or from bank or cryptocurrency accounts," "[e]vidence of electronic accounts," and "[e]vidence of passwords or other information needed to access electronic devices or other accounts." (Dkt. No. 93, Ex. A.) Here, the Court finds that this language sufficiently specifies the items to be seized as authorized by the warrants. See, e.g., United States v. Motovich, No. 21-CR-497, 2024 WL 2943960, at *8 (E.D.N.Y. June 11, 2024) (finding that a warrant authorizing a search for "saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, 'chat,' instant messaging logs, photographs, and correspondence" in connection with who used a computer met the particularity requirement); United States v. Regan, 706 F. Supp. 1102, 1110 (S.D.N.Y. 1989) ("The standard for constitutional particularity . . . requires only that a warrant be sufficiently specific to permit the rational exercise of judgment [by the executing officers] in selecting what items to seize." (internal quotation marks and citation omitted)).

Furthermore, as for the authorization to search for "[e]vidence that establishes the identities of co-conspirators and others involved in committing the Subject

19

Offenses, including photographs and contact information such as names, usernames, email addresses, or physical addresses," the Court disagrees that this language merely describes the "purpose of the search," as Hung contends. (Dkt. No. 93, Ex. A; Suppress Mem. at 5-6.) The Government points the Court to persuasive authority upholding similar categories of authorized searches. See, e.g., United States v. Ray, 541 F. Supp. 3d 355, 389 (S.D.N.Y. 2021) (finding that defendant's challenge to a warrant authorizing, in part, a search for "evidence concerning the identity or location of, and communications with participants and co-conspirators in the Subject Offenses" was without merit). The Court is therefore not persuaded that the warrants at issue contain "so vague a description of the material sought" as to render them invalid. Cohan, 628 F. Supp. 2d at 359.

Second, even if the warrants are sufficiently particularized, Hung argues that they are impermissibly overbroad, as "an otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based." Galpin, 720 F.3d at 446; (Suppress Mem. at 6-7). "Although somewhat similar in focus, [overbreadth and particularity] are two distinct legal issues: (1) whether the items listed as 'to be seized' in the warrant were overbroad

because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." United States v. Hernandez, No. 09-CR-625, 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010).

Hung asserts that the warrants "authorize the seizure of the entire contents of his devices and accounts," including "years of personal emails to family members, private photographs, medical records, web browsing history, location data, and countless other files" that, as he further contends, "have no conceivable connection to the alleged offenses." (Suppress Mem. at 6-7.) Hung argues that the submitted affidavits "do not establish probable cause to believe that his personal photographs, his location history, all his communications, his web browsing activity, or his passwords relate to the alleged offenses." (Hung Reply at 9.)

The Government asserts that Hung's contention is "contradicted by the text of each of the warrants," which does not "authorize the seizure of the entire contents" but expressly limits it "to certain categories of evidence of the enumerated subject offenses." (Opp'n at 29.) Here, the Court is persuaded by the Government's argument, finding that the contested warrants contain explicit and enumerated categories that – as Hung concedes - are sufficiently supported by

21

"affidavits establish[ing] probable cause to believe [Hung] was involved in a money laundering scheme." (Suppress Mem. at 6); see, e.g., United States v. Purcell, 967 F.3d 159, 181 (2d Cir. 2020) ("[W]arrants which authorize broad searches of both digital and non-digital locations may be constitutional, so long as probable cause supports the belief that the location to be searched . . . contains extensive evidence of suspected crime.").

Finally, aside from the authorization to seize, Hung cannot argue that the warrants permit too broad of a search, as district courts "routinely uphold warrants to search entire electronic accounts when there is probable cause to believe they contain evidence of a crime." United States v. Toth, No. 120-CR-177, 2022 WL 16837972, at *3 n.3 (W.D.N.Y. July 13, 2022), report and recommendation adopted, No. 20-CR-177, 2022 WL 16836568 (W.D.N.Y. Nov. 8, 2022); see also United States v. Liburd, No. 17-CR-296, 2018 WL 2709199, at *3 (E.D.N.Y. June 5, 2018) ("[B]ecause of the nature of digital media searches, it was proper for the search warrant to allow the FBI to search the entire contents of Defendant's Facebook account, once [the judge] determined that there existed probable cause to believe that evidence relating to Defendant's criminal activity was contained in that account, even if the account also contained information unrelated to

22

criminal activity."). Therefore, the Court finds that the warrants at issue here are not overbroad.

2.    Good Faith

Hung argues that even if the warrants are sufficiently particular and not overbroad, the executing agents' reliance on them was not objectively reasonable and in good faith. (See Suppress Mem. at 7.) Here, however, the Court finds that even if the warrants are deficient for other reasons – which they are not – the good-faith exception would still support their validity.

"The fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies." Herring v. United States, 555 U.S. 135, 140 (2009). The Supreme Court has explained that application of the exclusionary rule has always been its "last resort," not its "first impulse." Id. (internal quotation marks omitted). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Id. at 144.

Under the good-faith exception, the exclusionary rule does not apply to "evidence seized 'in objectively reasonable reliance on' a warrant issued by a detached and neutral magistrate judge, even where the warrant is subsequently

23

deemed invalid." United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008) (quoting United States v. Leon, 468 U.S. 897, 922 (1984)). "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." United States v. Clark, 638 F.3d 89, 100 (2d Cir. 2011) (internal quotation marks omitted). "In assessing whether it has carried that burden," courts must be "mindful that, in Leon, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within its protection." Id.; see also Leon, 468 U.S. at 922 ("[T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.").

The Supreme Court has identified four circumstances where an exception to the exclusionary rule does not apply: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." Clark, 638 F.3d at 100 (citation omitted). Thus, the critical question

24

is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

Here, Hung argues that an objectively reasonable officer would know that the warrants at issue suffer not from "subtle or technical defects" but instead from "glaring constitutional deficiencies." (Suppress Mem. at 7.) The Court disagrees. Each of the warrants, supported by ample probable cause, describe the places to be searched – the digital accounts and devices – and specify the categories of items that could be seized. (See Dkt. No. 93, Exs. A-C.) Furthermore, as courts have consistently held, "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Clark, 638 F.3d at 100 (cleaned up).

Accordingly, the Court rejects Hung's challenges to the warrants and denies the motion to suppress in its entirety.

### C.   HUNG'S MOTION TO DISMISS

Hung rests his motion to dismiss the indictment on the theory that the allegations against him are the product of an unconstitutional selective prosecution. (See MTD Mem. at 4.) To establish a claim for selective prosecution, Hung must

demonstrate that a federal prosecutorial policy (1) "had a discriminatory effect; and (2) "that it was motivated by a discriminatory purpose." United States v. Armstrong, 517 U.S. 456, 465 (1996) (internal quotation marks and citation omitted). The Supreme Court has stated "that the standard [for proving a selective prosecution claim] is a demanding one." Id. at 463.

To establish a discriminatory effect, Hung must show that "similarly situated individuals . . . were not prosecuted," id. at 465, or, in other words, that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [the defendant, and that the defendant] has been singled out for prosecution." United States v. Fares, 978 F.2d 52, 59 (2d Cir. 1992) (internal quotation marks and citation omitted).

To establish a discriminatory purpose, Hung must show that "the government's discriminatory selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." Id. (internal quotation marks and citation omitted). "[D]iscriminatory purpose . . . implies more than . . . intent as awareness of consequences. It

26

implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Wayte v. United States, 470 U.S. 598, 610 (1985) (internal quotation marks and citation omitted). Absent a showing that Hung was prosecuted "because of" protected status or conduct, a "claim of selective prosecution fails." Id. at 610.

Here, Hung argues that political affiliation and expression are protected characteristics and that the "whistleblower disclosures reveal a concerted effort by the FBI and DOJ to open investigations into dozens of conservative organizations," including the Media Company. (MTD Mem. at 4-5.) Hung contends that the "discriminatory effect is evident by the absence of any similar, sweeping investigation into left-leaning or administration-aligned media organizations." (MTD Mem. at 5.) But that claim falls far short of establishing that Hung has been "singled out for prosecution," as Hung does not plausibly point to any other "similarly situated" individual or group – i.e., an individual or group who engaged in similar conduct to that alleged in the Indictments – whom the Government failed to prosecute. Fares, 978 F.2d at 59. Arguing that the Government has not investigated "left-leaning or administration-aligned

media organizations" is simply not sufficient to demonstrate discriminatory effect. (MTD Mem. at 5); see United States v. Sun Myung Moon, 718 F.2d 1210, 1229–30 (2d Cir. 1983) (finding that the defendant failed to demonstrate the necessary factual predicate for claim of selective prosecution, as no showing was made that others similarly situated were not prosecuted).

As for discriminatory purpose, Hung asserts that the "operation was not a series of distinct, predicate-based investigations" but a "single, overarching campaign to investigate the entire Republican political apparatus." (MTD Mem. at 5.) Hung argues that the government intended "to use its law enforcement powers to disrupt, harass, and potentially prosecute its political opponents" rather than to neutrally enforce the law. (Id.) But here again, Hung fails to establish that he was prosecuted "because of" any alleged protected status, conduct, or association. Wayte, 470 U.S. at 610. Hung points the Court to a press release issued by a legislator, revealing that the FBI "targeted 92 Republican organizations and individuals as part of its sweeping Arctic Frost investigation." (Dkt. No. 96, Ex. A.) However, the cited press release links to an unclassified FBI document stating that the referenced investigation "was opened in April 2022," which, as the Government notes, was more than a year after

28

the FBI assisted with the investigation at issue here. (Opp'n at 28; Dkt. No. 96, Ex. A.) Indeed, by April 2022 – when the Arctic Frost investigation began - the Government had already obtained several search warrants and "taken significant steps based on judicial findings of probable cause." (See Dkt. No. 93, Ex. B; Opp'n at 39.) The Court also finds compelling the Government's argument that none of Hung's cited materials that relate to the Arctic Frost investigation – which the Government contends was "separate and unrelated" – mention Hung or the pending charges. (Opp'n at 39.) Furthermore, even if Hung could show that the "timing of the investigation and indictment . . . is consistent with the 'Arctic Frost' operation," he nevertheless fails to support his contention that although the press release "did not identify all of the targets, The 'Media Company' is precisely the type of entity that was the subject of the unconstitutional 'Arctic Frost' investigation." (Dkt. No. 96.) As the Second Circuit has found, "[m]ere assertions and generalized proffers on information and belief are insufficient." Fares, 978 F.2d at 59. Here, Hung has not met his burden to establish discriminatory purpose.

In the alternative, Hung argues that the Court should order discovery and an evidentiary hearing. (See MTD Mem. at 5-6.) The standard for discovery in aid of a claim of

29

selective prosecution is a "rigorous" one, that is intended in "itself . . . [to be] a significant barrier to the litigation of insubstantial claims." Armstrong, 517 U.S. at 464, 468. A high standard is set because of the costs associated with permitting a defendant – before trial – to pursue an investigation of a Government investigation and thereby delay his prosecution. See, e.g., United States v. Sanders, 211 F.3d 711, 717 (2d Cir. 2000) ("Whether a defendant claims selective prosecution or vindictive prosecution, [e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." (internal quotation marks and citation omitted)).

To obtain discovery on a claim of selective prosecution, Hung "must provide some evidence tending to show the existence of the essential elements of the defense." Id.; see also United States v. Bass, 536 U.S. 862, 863 (2002) (per curiam) (explaining that a "defendant who seeks discovery on a claim of selective prosecution must show some evidence of both discriminatory effect and discriminatory intent").

Hung argues that associated public disclosures related to the investigation "raise a reasonable doubt about the

prosecutor's purpose" and "show that the government created a program to target political adversaries," including the Media Company. (MTD Mem. at 6.) Hung further contends that the Government exclusively possesses information concerning its motives, "including the full list of Arctic Frost targets, the predicate for including the 'Media Company' in that investigation, and the internal communications leading to the decision to indict [Hung]." (Id.) However, even if Hung could demonstrate why discovery is necessary to explore the Government's motive – ostensibly to support a claim of discriminatory purpose or intent - as explained above, Hung fails to establish any evidence of discriminatory effect. See, e.g., Bass, 536 U.S. at 863 (finding that the court "need go no further in the present case than consideration of the evidence supporting discriminatory effect" – evidence that the defendant failed to submit). Accordingly, Hung is not entitled to discovery relating to alleged evidence of discriminatory purpose or motive on the part of the Government.

### III. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant Weidong Guan ("Guan") for a bill of particulars (Dkt. No. 86) is **DENIED;** and it is further

31

**ORDERED** that the motions of defendant Le Van Hung ("Hung") for a bill of particulars (Dkt. No. 89), to suppress all evidence seized pursuant to a series of warrants (Dkt. No. 92), and to dismiss the Superseding Indictment (Dkt. No. 95) are **DENIED.**


**SO ORDERED.**

Dated:     21 January 2026
           New York, New York

Victor Marrero
U.S.D.J.