



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 19, 2026

**BY ECF**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:** ***United States v. Weidong Guan & Le Van Hung*, 24 Cr. 322 (VM)**

Dear Judge Marrero:

The Government respectfully submits this letter in opposition to (a) defendant Le Van Hung's motion to compel the Government to seek to obtain and review classified materials allegedly in the possession of numerous federal agencies, including those in the intelligence community (the "Hung Motion," Dkt. 157), and (b) defendant Weidong Guan's substantially similar motion to compel the Government to seek to obtain and review classified and unclassified material allegedly in the possession of over a dozen federal agencies, and potentially several state and local agencies too, although the precise scope of what he seeks is unclear (the "Guan Motion," Dkt. 165, and, together with the Hung Motion, the "Motions"). In short, in their Motions, the defendants move to compel the Government to conduct, at a minimum, a review of the classified files of the eighteen agencies in the intelligence community, *none* of the members of which are on this case, and other agencies that are also outside the prosecution team, based on speculative assertions about the potential existence of potentially relevant classified and unclassified material.[1] The Motions—which were filed a mere three weeks before trial—are untimely. They are, in any event, meritless (and appear to be nothing more than last-ditch attempts to delay trial).

## I.  Background

In the Hung Motion, Hung requests that the Court order the Government (i) to search for and review "existing classified holdings through appropriate [Department of Justice ("DOJ")] and [National Security Division ("NSD")] channels" for certain materials, (ii) "submit responsive materials, or a classified declaration describing the results of its search," pursuant to the Classified Information Procedures Act ("CIPA"), and (iii) to confirm whether NSD was consulted before the

---

[1] Nothing in this memorandum should be understood as confirmation or denial that any classified information exists or does not exist, nor should it be construed as a confirmation or denial that the prosecution team is or is not aware of any such alleged information.

Honorable Victor Marrero
June 19, 2026
Page 2

Government responded to the defendants' CIPA letters and "whether a counterintelligence assessment of this case has been conducted."  (Hung Motion 23-24).

In the Guan Motion, Guan requests that the Court order the Government to search for, review, and produce all classified and non-classified documents concerning (i) "any surveillance, interference, and targeting of Mr. Guan, the Falun Gong community, and *The Epoch Times* employees and executives by" the People's Republic of China ("PRC"), the Chinese Communist Party ("CCP"), and their purported agents and proxies, (ii) "any counter-surveillance and counter-intelligence efforts by the [Federal Bureau of Investigation ("FBI")] or other DOJ or U.S. agencies into Mr. Guan, the Falun Gong community, and *The Epoch Times*," and (iii) "any intelligence and counter-intelligence gathered by DOJ or other U.S. agencies of transnational repression activities targeting Mr. Guan, Falun Gong, or *The Epoch Times* by the People's Republic of China, the Chinese Communist Party, and their agents and proxies."  (Guan Motion 1).

The reach of both Motions, filed on the eve of trial, is staggering.  They each appear to request the Government to search the files of at least twenty federal agencies, including every member of the intelligence community and members of the now-defunct Organized Crime Drug Enforcement Task Force ("OCDETF"), which included, among other organizations, the U.S. Coast Guard and the Bureau of Alcohol, Tobacco, Firearms, and Explosives.  (*See, e.g.*, Hung Motion 16-18; Guan Motion 18-23).

## II.  The Motions Are Both Untimely and Meritless

### A.  Applicable Law – Rule 16, *Brady*, and the Classified Information Procedures Act

Federal Rule of Criminal Procedure 16(a)(1)(E)(i) requires the Government to produce, upon defense request, items "within the government's possession, custody, or control" that are "material to preparing the defense."  As the Second Circuit has long held, the Government's discovery obligations extend only to "information known to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation."  *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (quoting *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006)); *United States v. Gupta*, No. 23 Cr. 289 (VM), 2025 WL 2463631, at *1 (S.D.N.Y. Aug. 27, 2025) ("[T]he Government's discovery obligations extend to information known to the prosecutor and others who can be considered members of the prosecution team."); *United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013) ("The prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation."), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015).

Even when material is within the government's possession, custody, or control it is material to preparing the defense only "if it could be used to counter the government's case or to bolster a defense," and thus "information not meeting either of those criteria is not to be deemed material within the meaning of" Rule 16.  *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (interpreting the Rule's predecessor, Fed. R. Crim. P. 16(a)(1)(C)); *accord United States v.*

Honorable Victor Marrero
June 19, 2026
Page 3

*Armstrong*, 517 U.S. 456, 462 (1996); *United States v. Rigas*, 258 F. Supp. 2d 299, 306-07 (S.D.N.Y. 2003). That an item may be "useful" to the defense does not render it "material" under Rule 16. *Rigas*, 258 F. Supp. 2d at 307. Rather, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991). "In order to compel the Government to produce certain evidence, a defendant must make a *prima facie* showing of materiality, and must offer more than the conclusory allegation that the requested evidence is material." *United States v. Abdalla*, 317 F. Supp. 3d 786, 790 (S.D.N.Y. 2018); *accord United States v. Finnerty*, 411 F. Supp. 2d 428, 431 (S.D.N.Y. 2006); *Rigas*, 258 F. Supp. 2d at 307.

Under *Brady* and its progeny, "[t]he prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). This duty covers not only exculpatory material, but also information that could be used to impeach a government witness. *Id.* (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

While CIPA "establishes procedures for handling classified information in criminal cases," *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008), it "neither creates new discovery rights nor expands the rules of discovery governing the admissibility of evidence," *United States v. Kwok*, No. 23 Cr. 118 (AT), 2026 WL 482295, at *1 (S.D.N.Y. Feb. 20, 2026) (citation omitted); *see also, e.g.*, *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989) ("[CIPA] creates no new rights of or limits on discovery of a specific area of classified information. Rather it contemplates an application of the general law of discovery in criminal cases to the classified information area with limitations imposed based on the sensitive nature of the classified information."). As this Court explained in another case, "CIPA does not alter the traditional rules of discovery." *United States v. Gupta*, No. 23 Cr. 289 (VM), 2025 WL 2662334, at *1 (S.D.N.Y. Sept. 17, 2025) (citation omitted).

## B. The Defendants' Motions Are Waived

As an initial matter, the Motions are untimely, and thus waived. The Court-mandated deadline for filing pretrial motions was October 22, 2025. (Dkt. 80). Accordingly, any motion for discovery was long ago waived. *See, e.g.*, *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) (a failure to bring timely a motion required to be brought under Federal Rule of Criminal Procedure 12, which includes a discovery motion, constitutes a "complete" waiver, and "[a] strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient" to overcome such waiver); *United States v. Mustafa*, 753 F. App'x 22, 44 (2d Cir. 2018) (same, citing the amended Rule 12(c)(3)).

Hung asserts that CIPA is not itself a "discovery provision," and thus Rule 12 does not apply. (Hung Motion 21). That is nonsensical. As noted above—and has been the law for decades—CIPA does not create new discovery rights or alter the traditional rules of discovery. *See, e.g.*, *Kwok*, 2026 WL 482295, at *1. CIPA is merely a procedural vehicle to protect classified

Honorable Victor Marrero
June 19, 2026
Page 4

information that otherwise may be discoverable, as this Court has previously explained.  *See Gupta*, 2025 WL 2662334, at *1.

Hung also claims supposed good cause excuses his untimely motion because his "CIPA theory did not crystallize" until the Spring 2026 when he reviewed the "August 2020 complaint letter" (the "Whistleblower Complaint").  (Hung Motion 21-22).  Not so.  The Whistleblower Complaint was specifically described in the Guan Indictment, which was publicly available to Hung's current defense counsel when he was retained and to Hung's prior two counsel (Guan Ind. ¶ 11(b)), and a copy of the document itself was produced as far back as July 22, 2024 (control numbers USAO_REL_00827578-USAO_REL_00827581).[2]  Hung also makes much of the fact that the Government has continued to produce discovery (Hung Motion 21)—as Government always does when it receives potentially discoverable material in the lead up to trial—but he does not claim that his "crystallized theory" arose from any such recent discovery production.  In short, at most, Hung has established that he inadvertently failed to file a motion sooner.  That is insufficient as a matter of law.  *See, e.g.*, *Yousef*, 327 F.3d at 125; *United States v. Forrester*, 60 F.3d 52, 59 (2d Cir. 1995) ("attorney oversight" does not establish good cause).

Guan does not address the timeliness of his motion other than to cast it as one seeking *Brady* and *Giglio* material.  (Guan Motion 13 n.14).  To be sure, although the Government's *Brady* obligations are continuing, regardless of any deadline imposed under Rule 12, "the *Brady* obligations of the prosecutors extend only to materials within prosecutors' possession, custody or control."  *United States v. Blaszczak*, 308 F. Supp. 3d 736, 742 (S.D.N.Y. 2018); *see also United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022) ("[U]ndisclosed information that is not known to anyone on [the prosecution team] does not give rise to a *Brady* violation.").  Even if the Motions were deemed limited to *Brady* material—and it is apparent that they are not so limited—they accordingly fail because they seek material far outside the possession, custody, or control of the prosecution team.  Nor does *Brady* apply to material that is inculpatory and/or immaterial.  *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (a defendant making a *Brady* claim must make a "showing of materiality"); *cf. United States v. Bruder*, No. 98 Cr. 196, 2001 WL 1328461, at *12 (E.D.N.Y. Sept. 5, 2001) (materials "not *Brady* material because they are either inculpatory or immaterial").  As explained below, neither Motion, on which the defendants bear the burden, establishes materiality.

## C. The Defendants' Motions Seek Materials from Outside the Prosecution Team

Even if timely (and they are not), the Motions fail to demonstrate that the materials they seek—to the extent they even exist—are in the possession, custody, and control of the prosecution team.

Together, the Motions seek material from the eighteen-member intelligence community and beyond.  As an initial matter, the intelligence community is not part of the prosecution team in this case, which is a criminal matter, not an intelligence matter.  The two agencies that

---

[2] These productions were first made to Guan prior to Hung's extradition, and then to Hung on April 3, 2025 following Hung's arrival in the United States.  Hung has thus had over a year to examine this document and conduct any alleged linguistic analysis of it.

Honorable Victor Marrero
June 19, 2026
Page 5

contributed personnel to assist the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") with the case after the first several weeks are the U.S. Department of Labor's Office of Inspector General ("DOL-OIG") and the U.S. Department of State's Diplomatic Security Service ("DSS"). Neither is a member of the intelligence community.[3] Therefore, any materials that the intelligence community may or may not have are not within the possession, custody, or control of the prosecution team in this case—full stop. The Second Circuit has "long rejected the notion that knowledge of any part of the government is equivalent to knowledge on the part of the prosecutor." *Hunter*, 32 F.4th at 36; *see also United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis."); *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to produce that which it does not control and never possessed or inspected."); *United States v. Alexandre*, No. 22 Cr. 326 (JPC), 2023 WL 416405, at *12 (S.D.N.Y. Jan. 26, 2023) (the Government need not "produce documents from agencies that did not participate in the investigation of the defendant or documents of which it is unaware . . . . In other words, the prosecutor is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery request"); *United States v. Simmons*, No. 13 Cr. 6025 (CJS), 2016 WL 285176, at *17 (W.D.N.Y. Jan. 22, 2016) ("[E]ven if NSA were in possession of electronic communications of [the defendant]—a wholly speculative assertion—those communications are not subject to production" because the NSA was not part of the prosecution team.), *report and recommendation adopted*, No. 13 Cr. 6025, 2016 WL 1127802 (W.D.N.Y. Mar. 23, 2016); *United States v. Chalmers*, 410 F. Supp. 2d 278, 287, 289 (E.D.N.Y. 2006) (defendants not entitled to require government to search holdings of, among others, NSA

---

[3] *See* Members of the IC, Office of the Director of National Intelligence, *available at* https://www.dni.gov/index.php/what-we-do/members-of-the-ic (listing the 18 organizations that are part of the intelligence community, which does not include DOL-OIG or DSS) (last visited June 19, 2026). In 2021, a USAO-SDNY Task Force Officer detailed from Customs and Border Protection ("CBP") helped review the returns from the first search warrant obtained in this case, but he was otherwise uninvolved in the case. During the investigation, at USAO-SDNY's request, CBP also ran queries in its systems related to certain subjects, and, when a subject arrived at John F. Kennedy International Airport in July 2023, the USAO-SDNY coordinated with CBP in order to covertly execute a search warrant on that subject's electronic devices. Similarly, a Vietnamese speaking member of the New York Police Department ("NYPD"), at the direction of USAO-SDNY, provided draft translations and reviewed search warrant returns to identify documents for translations. Regardless, neither CBP nor the NYPD is a member of the intelligence community. *Id.* And, as described further herein, the fact that an individual at an agency provided limited assistance to the Government for a limited period of time does not make that individual part of the prosecution team, much less the entire agency for which the individual works.

Honorable Victor Marrero
June 19, 2026
Page 6

and CIA because defendants failed to "establish that each of the [agencies] was part of the 'prosecution team'").

Ignoring settled law, the defendants try to expand the scope and obligations of the prosecution team in this case. Those arguments can and should be quickly rejected.

*First*, the fact that agencies were thanked in a press release announcing the case provides no basis to shoehorn the entirety of those agencies (or in the case of OCDETF, a grouping of numerous agencies) into the prosecution team. (*See, e.g.*, Hung Motion 15 (claiming that the FBI, agencies that contributed personnel to OCDETF, and CBP have "substantive connections to this case"); Guan Motion 6 (claiming that there "well may be other federal and state agencies that are part of the prosecution team")). There are of course all sorts of reasons an agency may be referenced or thanked in a press release, and the Motions cite no authority for the fact that thanking an agency makes that entire agency part of the prosecution team. Indeed, it is not uncommon for a foreign government or private companies to be thanked for their assistance—but plainly that does not turn them into arms of the prosecution. In any event, under settled law, the prosecution team encompasses *individuals*, not entities. *See, e.g.*, *Meregildo*, 920 F. Supp. 2d at 440-41 ("In the Second Circuit, a prosecutor's constructive knowledge only extends to those *individuals* who are an arm of the prosecutor or part of the prosecution team." (emphasis added) (internal quotation marks omitted)); *Stewart*, 433 F.3d at 298 (focusing on what the "*person*" did when defining the prosecution team).

Moreover, the mere fact that the FBI provided limited assistance in 2021 in the first few weeks of the investigation, and years before charges were brought in 2024, does not mean that any member of the FBI was part of the prosecution team, much less the FBI writ large. After those first few weeks, the FBI did not "actively investigate[] the case, act[] under the direction of the prosecutor, or aid[] the prosecution in crafting trial strategy." *Meregildo*, 920 F. Supp. 2d at 442; *see also id.* ("[U]nder the totality of the circumstances, the more involved individuals are with the prosecutor, the more likely they are team members."). The defendants do not contend to the contrary. And CBP's limited assistance in this case similarly was not close to what would turn the personnel involved into members of the prosecution team, much less the entire agency. *See supra* n.2. So too with the NYPD lending someone to assist with providing translations and identifying documents for translation, and nothing more. *Id.*

Accordingly, the exceedingly limited (in both scope and timing) involvement of the FBI, CBP, and the NYPD makes this case easily distinguishable from *United States v. Gupta*, 884 F. Supp. 2d 491 (S.D.N.Y. 2012), the case that Guan relies on to expand the scope of the prosecution team's obligations in this case. (Guan Motion 18-19). In that case, the court ordered the government to review memoranda and interview notes of the Securities and Exchange Commission ("SEC") that the SEC had prepared after it had conducted 44 joint interviews with the government as part of their parallel investigations of the defendant. *Id.* at 495. Notably, when reaching that conclusion, the court stated that its ruling "does not mean that all of the documents the SEC prepared and accumulated in its investigation of [the defendant] are part of the joint investigation." *Id.* In short, even where another agency has worked with the government for a

Honorable Victor Marrero
June 19, 2026
Page 7

limited period, the case Guan cites does not stand for the proposition that the prosecution team must search all of the files of that other agency.

Nor does the fact that the investigation here was designated an OCDETF operation (as numerous cases were, and was principally a funding mechanism, not a way of staffing a matter), mean that someone at the entities that comprised OCDETF was part of the prosecution team, much less the entities as a whole, including such plainly irrelevant entities as the U.S. Coast Guard and numerous and unidentified "State and Local Law Enforcement Agencies" throughout the country. *See* About OCDETF, Archives: U.S. Department of Justice, *available at* https://www.justice.gov/archives/ocdetf/about-ocdetf (last visited June 19, 2026). Instead, "[c]ourts have been careful to impose the disclosure obligations created by Rule 16(a)(1) only on government attorneys and law enforcement officials actually involved in the prosecution or investigation of a particular case." *United States v. Attanasio*, No. 03 Cr. 1382 (NGG), 2005 WL 8153622, at *2 (E.D.N.Y. Sept. 9, 2005); *see also Meregildo*, 920 F. Supp. 2d at 443-44 ("[E]ven when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper. Interacting with the prosecution team, without more, does not make someone a team member."); *United States v. Quinn*, 445 F.2d 940, 944 (2d Cir. 1971) (rejecting the "untenable position" that a Florida prosecutor's knowledge of certain evidence can be imputed to an AUSA in New York); *Gist v. United States*, No. 16 Cr. 656 (GHW), 2021 WL 3774289, at *17 (S.D.N.Y. Aug. 24, 2021) (holding that the fact that individuals "fall under the broad umbrella of the Department of Justice" does not thereby render them part of a same prosecution team); *United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term 'government' in this rule narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general.").

And Guan's citation to *United States v. Kwok*, No. 23 Cr. 118-1 (AT), 2024 WL 732109, (S.D.N.Y. Feb. 21, 2024), supports, rather than undermines, the Government's position here, consistent with long-settled law. (Guan Motion 16-17). While the court in *Kwok* directed the government to disclose, among other things, evidence related to the CCP's targeting of that defendant in a fraud case in which, according to the indictment, it was alleged that the defendant "amass[ed] followers who were aligned with his purported campaign against the [CCP] and who were also inclined to believe [his] statements regarding investment and money-making opportunities" (*i.e.*, a case—unlike this one—in which the CCP was expressly referenced in the charging instrument and relevant to the theory of the case), the court limited that order to "materials within the prosecution's possession." *Id.* at *1, *3. The court *rejected* that defendant's broad request that the government "identify any other U.S. government agency that the government knows possesses the aforementioned information" because that defendant "cite[d] no legal support for this broad request" and the court "has identified none." *Id.* at *5.

*Second*, while correctly recognizing that "the Justice Manual does not itself create a substantive discovery right," Hung claims that "[i]nternal [p]rocedures [c]ontemplate the [r]equested [s]earch" (allegedly) and thus argues that the Court should order it. (Hung Motion 16-17). Guan also argues that the Justice Manual supposedly mandates that the Government "must search" the files of the intelligence community and certain federal agencies. (Guan Motion 14).

Honorable Victor Marrero
June 19, 2026
Page 8

The defendants are wrong.  While the Justice Manual sets out the policies and procedures for conducting a prudential search for potentially discoverable material in the possession of intelligence agencies that were not part of the prosecution team in certain cases, *see* Justice Manual § 9-90.210, it does not mandate that that be done in all cases, and the Justice Manual creates no legal obligation to conduct such a search at all, *see* Justice Manual § 9-27.150 ("These principles, and internal office procedures adopted pursuant to them, are intended solely for the guidance of attorneys for the government.  They are not intended to create a substantive or procedural right or benefit, enforceable at law, and may not be relied upon by a party to litigation with the United States."); *see also, e.g.*, *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994) (noting that the Justice Manual "provide[s] no substantive rights to criminal defendants").  Prudential search reviews ("PSR")—which is what Hung appears to seek through his request for a "classified-materials review" and Guan appears to seek through his request for classified material—are, as the name makes clear, searches conducted out of prudence as a matter of policy, not legal obligation.[4]  To be sure, the Government is aware of and followed the Justice Manual in this case, as it does in every case, but even if it had not, that would not be a cognizable basis for what Hung and Guan seek, much less in the weeks before trial.

*Third*, Hung makes the utterly puzzling argument that the fact that this case is being prosecuted by the Public Corruption Unit "[u]nderscore[s] the [n]eed for [r]eview." (Hung Motion 17-18).  Hung cites no authority for the proposition that internal unit assignment of this case somehow expands the obligations of the prosecution in this case.  Hung's asserted curiosity as to why the case is being handled by the Public Corruption Unit, of course, does not expand the discovery obligations of the prosecution team in this case.

### D.  The Defendants Have Failed to Demonstrate Materiality

Finally, even if the Motions were timely and sought information in the possession of the prosecution team, the Motions should be denied for the additional, independent reason that the defendants have failed to make *a prima facie* showing that the hypothetical information sought would be material to preparing their defense.

*First*, the defendants cannot establish materiality because their requests rely entirely on conclusory allegations that fail to demonstrate that the information they seek even exists (or is even likely to exist).  *See United States v. Giffen*, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) ("Conclusory allegations . . . are insufficient to establish materiality.").  For instance, Hung spends a lot of time speculating that a whistleblower complaint, which was forwarded to Guan and Hung in August 2020 (the "Whistleblower Complaint"), was purportedly written by the CCP. (Hung Motion 6-8).[5]  In the Whistleblower Complaint, a whistleblower raised concerns that certain

---

[4] Even the section of the Justice Manual that Guan cites notes that "mere speculation that a government file may contain *Brady* material is never sufficient" to meet a defendant's burden of showing that the files of the intelligence community should be searched.  *See* Justice Manual, § 2052(B)(2).

[5] The Whistleblower Complaint was originally written in Chinese.  The original and translation have been marked as Government Exhibits 1A-4 and 1A4TR, respectively.  (GX 1A-6TR, cited

Honorable Victor Marrero
June 19, 2026
Page 9

employees, including Hung, were purchasing large quantities of prepaid debit and gift cards that had been loaded with stolen funds and donating that money to The Epoch Times and related entities.  Without referencing anything other than an alleged "[f]orensic linguistic analysis"—which Hung does not explain, much less provide—Hung appears to assert that the Whistleblower Complaint was written by the CCP.[6]  (Hung Motion 6-8).  Rule 16 demands far more.  Hung's conclusory statements about what a supposed forensic analysis has supposedly "confirmed" does not justify a fishing expedition into the files of agencies which are not part of the prosecution team, much less to fish for classified information.  *See United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (affirming district court's denial of discovery requests where district court "concluded that those requests were too broad and unfocused, and that the information requested was not material in the Rule 16 sense" and instead part of a "fishing expedition"), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018); *United States v. Neumann*, No. 21 Cr. 439 (NSR), 2022 WL 3445820, at *16 (S.D.N.Y. Aug. 17, 2022) ("Rule 16 does not entitle a criminal defendant to a broad and blind fishing expedition among [items] possessed by the Government on the chance that something impeaching might turn up." (citation and internal quotation marks omitted)).

Nor does the fact that Guan says that he "believes that he has been wiretapped, tailed, intimidated, and harassed" (Guan Motion 2) mean that the agencies and intelligence community from which he seeks information have information supporting his belief.  To the extent that Guan

---

by Hung (Hung Motion 1), is a duplicate that the Government is not planning on offering).  Hung incorrectly asserts that the Government's theory of Hung's knowledge rests "substantially" on the Whistleblower Complaint and that it is the Government's "primary evidence of knowledge." (Hung Motion 6-7).  That is false.  The Government intends to prove the defendants' knowledge through, among other evidence, numerous email communications from banks and individuals alerting the defendants about fraud and money laundering, financial tracing demonstrating steps the defendants took to conceal the money laundering, other evidence of consciousness of guilt, and spreadsheets maintained by Hung which contained the personal identifying information of thousands of U.S. residents and mobile payment accounts opened in the names of those identity theft victims.

[6] Although the Whistleblower Complaint would be relevant and admissible for the non-hearsay purpose of proving the defendants were on notice even if its contents were false, *see, e.g.*, *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013), Hung does not appear to address the fact that he and his co-conspirators were contemporaneously aware that, whatever the Whistleblower Complaint's provenance, its claims about the operation of the Make Money Online ("MMO") Team described in the Indictments were accurate.  Approximately three days after the Whistleblower Complaint was first sent, a co-conspirator forwarded it to Hung and described the author of the Whistleblower Complaint as someone who "knows very well about" the "business operation model" and the "management mechanism" of the "MMO team" and who directed Hung to "find out who the leaked information came from."  (GX 2179TR).  These adoptive admissions make the original genesis of the Whistleblower Complaint irrelevant (and the forwarding of the Whistleblower Complaint was also a statement in furtherance of the conspiracy and, thus, admissible irrespective of its truth).

Honorable Victor Marrero
June 19, 2026
Page 10

has alleged personal experience with the "repressive tactics of the PRC, CCP, and their agencies and proxies for nearly three decades" (Guan Motion 9-10), Guan can present evidence of that personal experience, and his resulting alleged belief, to the extent it is admissible under the Federal Rules of Evidence.[7]  But, that is not what his motion is about.  His motion seeks to force the Government to attempt to obtain and review the files of dozens of agencies, on numerous topics, when those agencies were not part of the prosecution team, based on speculation that those agencies might have information consistent with what Guan allegedly believes.

*Second*, the defendants have failed to demonstrate materiality because neither of the Motions claims that the defendants *contemporaneously knew* of the internal government information they seek—to the extent it even exists.  Without such contemporaneous knowledge, the information they seek could not possibly "enable[] the defendant[s] significantly to alter the quantum of proof in [their] favor," *Maniktala*, 934 F.2d at 28, because information that the defendants did not know about could not remotely have impacted their intent or conduct, *see United States v. Campos*, 763 F. App'x 97, 100 (2d Cir. 2019) (precluding a defense witness on the basis that "what [the defense witness] knew or believed sheds little, if any, light on what [the defendant] knew or believed").  For example, if Hung had no contemporaneous knowledge of the purported CCP sale of fraudulent gift cards or surveillance of Falun Gong practitioners in Vietnam (Hung Motion 13), these alleged facts would not be probative of Hung's own intent and criminal conduct, including the fact that he possessed the personal identifying information of thousands of U.S. residents.

Similarly, Guan claims that he "open[ed] up hundreds of bank accounts . . . to evade detection by the PRC and CCP and to avoid the PRC and CCP's efforts to interfere with his and *The Epoch Times*' financial affairs." (Guan Motion 4).  When making this claim, Guan notably omits that he and his co-conspirators opened up *thousands*—not hundreds—of financial accounts, and Guan fails to explain how this purported "detection by the PRC and CCP" justified funneling money through those thousands of accounts that were opened in the names of identity theft victims.  As discussed above, the fact that Guan has alleged personal experience of the purported tactics of the PRC and CCP further undermines his claim of materiality as any hypothetical information he obtains would be cumulative of his personal experience.  Guan also fails to explain how alleged counter-surveillance and/or counter-intelligence *by the United States* (Guan Motion 3-4), even if he knew about it, could possibly have impacted his conduct, since he alleges that his conduct was designed to counter the CCP, not the United States.  Putting that aside, if Guan had no contemporaneous knowledge of the alleged facts to which he points, including the purported, specific conduct of the PRC and CCP described above, those facts would also not be relevant to the jury's evaluation of Guan's own intent and his conduct, including the numerous lies Guan told to banks in which he claimed that the increase in revenue to The Epoch Times was due to donations, not the illegal activities of the MMO Team he managed.  And on the contrary, if either defendant had contemporaneous knowledge, that knowledge plainly did not rest on internal government materials, much less classified materials.

---

[7] The Government reserves the right to object to such alleged evidence based on, among other grounds, Federal Rule of Evidence 403.

Honorable Victor Marrero
June 19, 2026
Page 11

In his motion, Hung incorrectly claims that contemporaneous knowledge is irrelevant and cites *United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008), as the appropriate standard for evaluating his motion to compel. (Hung Motion 11, 18-19).  But the three-step process described in *Aref* applies when the Court is evaluating a government motion to withhold classified information from discovery under Section 4 of CIPA, that is, is evaluating whether material that *is known the prosecution team and otherwise potentially discoverable* may be withheld, not when it is evaluating motions—like the ones here—to compel the Government to conduct searches for hypothetical classified material possessed by the intelligence community writ large in the first place.  *See, e.g.*, *Simmons*, 2016 WL 285176, at \*17 (denying a request for materials purportedly collected by the NSA because it was not part of the prosecution team).  Were the law otherwise, a defendant could demand that the Government conduct a boundless, intrusive, and costly search into the files of the eighteen members of the intelligence community in every case.  For very good reason, that is not the law

### E.  Hung's Other Request Should Be Denied

In the Hung Motion, Hung also seeks an order directing the Government to confirm whether NSD was consulted before the Government responded to the defendants' CIPA letters and "whether a counterintelligence assessment of this case has been conducted." (Hung Motion 17, 23-24). Hung cites no authority for this request. Nor can he. The Government is under no obligation to identify the steps it took before responding to a discovery letter from the defendant, and indeed, such internal deliberations are privileged.  *See Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (deliberative process privilege extends to "documents reflecting . . . deliberations comprising part of a process by which governmental decisions . . . are formulated").  The Government also has no legal obligation to inform the defendant whether it has conducted a PSR.  As the Government told the defendants, the Government is aware of its disclosure obligations, has complied with (and indeed, exceeded) those obligations, and will continue to do so.  The Government is not required to disclose to the defendants how it has done so.  *See United States v. Gomez*, 199 F. Supp. 3d 728, 751-52 (S.D.N.Y. 2016) ("No more is required" when the Government has acknowledged its discovery obligations and confirmed it will comply with them.), *aff'd*, 751 F. App'x 63 (2d Cir. 2018); *United States v. Hossain*, No. 19 Cr.

Honorable Victor Marrero
June 19, 2026
Page 12

06 (SHS), 2020 WL 6874910, at *4 (S.D.N.Y. Nov. 23, 2020) (same), *aff'd*, No. 22-618-CR, 2024 WL 4212321 (2d Cir. Sept. 17, 2024).

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney

                              By:    s/_____
                                        Benjamin M. Burkett
                                        Rebecca T. Dell
                                        Paul M. Monteleoni
                                        Amanda C. Weingarten
                                        Assistant United States Attorneys
                                        (212) 637-2455/2198/2219/2257

cc:    (by ECF)

       Counsel of Record