UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
UNITED STATES OF AMERICA,

      -against-                        No. 24-cr-0322 (VM)

WEIDONG GUAN and LE VAN HUNG,

        Defendants.
--------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT LE VAN HUNG'S MOTION IN LIMINE

Timothy C. Parlatore, Esq.
Parlatore Law Group, LLP
*Attorneys for Defendant Le Van Hung*
260 Madison Ave., 17th Floor
New York, New York 10016
(212) 679-6312

# Table of Contents

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT................................................................................................................... 2

    I. THE GOVERNMENT'S "CONTEMPORANEOUS KNOWLEDGE" ARGUMENT MISCHARACTERIZES THE DEFENSE THEORY AND EXPOSES THE NEED FOR PRECLUSION. ............................................................................................................... 2

    II.THE PAXFUL MATERIALS ARE ADMISSIBLE..................................................... 6

        A. The United States Is One Party for Purposes of Rule 801(d)(2)........................... 6

        B. The FinCEN Consent Order Is Admissible as a Public Record............................ 8

        C. Rule 403 Favors Admission, and the Government's "Mini-Trial" Concern Is Self-Defeating........................................................................................................................ 10

    III.THE PRECLUSION REQUESTS ARE NOT STRAWMEN, AND THE GOVERNMENT SHOULD BE HELD TO THE ACTUAL-KNOWLEDGE THEORY IT CHARGED. ..................................................................................................................... 12

    CONCLUSION............................................................................................................... 17

**PRELIMINARY STATEMENT**

The Government's opposition devotes eighteen pages to arguing that the Paxful materials are irrelevant because the defense has "disclaimed contemporaneous knowledge" of the facts contained in those documents. (Opp. at 50-68.) That argument is a straw man — and the Government knows it.

Mr. Hung's opening memorandum made the defense theory clear: the Paxful materials are offered to establish what the platform was actually like — a marketplace that held itself out as an operating public marketplace while concealing from its users the very compliance failures that made it impossible for an ordinary buyer, relying on the platform alone, to determine whether the gift cards he purchased were stolen. (Def. Mem. at 3-5, 14.) The Government nonetheless asked defense counsel whether Mr. Hung contends he had "contemporaneous personal knowledge" of the facts in the Paxful plea agreement. Undersigned counsel confirmed what the motion already stated: "Contemporaneous knowledge of the information in the plea is not the theory here." (Ex. A.) Four days later, the Government filed its opposition built entirely around the premise counsel had rejected.

The Government's strategy is transparent: it wants to use Paxful as a sword — arguing that the platform's anonymity, discount pricing, and transaction volume prove Mr. Hung's knowledge — while excluding the Government's own Paxful findings as context. That is not how the rules of evidence work. If the Government intends to argue that marketplace features are circumstantial evidence of knowledge, the defense is entitled to present the Government's own findings showing that those features were standard marketplace characteristics hidden from users, not red flags visible to buyers.

The Government's remaining arguments fare no better. Its claim that different DOJ components are not the "same party" contradicts binding Second Circuit authority and persuasive authority from the First, Ninth, and D.C. Circuits. Its Rule 403 objection is self-defeating — the only risk of a "mini-trial" arises if the Government intends to contest facts it already agreed to in the Paxful proceedings, and if it does, that inconsistency is precisely what makes the materials admissible. And its characterization of the preclusion requests as "strawmen" is belied by its refusal to consent to the very order it claims is unnecessary.

## ARGUMENT

### I. THE GOVERNMENT'S "CONTEMPORANEOUS KNOWLEDGE" ARGUMENT MISCHARACTERIZES THE DEFENSE THEORY AND EXPOSES THE NEED FOR PRECLUSION.

The Government's opposition rests on a fundamental mischaracterization of the defense theory. The Government argues that the Paxful materials are irrelevant because Mr. Hung "disclaimed contemporaneous knowledge" of the facts contained in those documents. (Opp. at 52, 55-56, 61-63.) But the defense has never offered these materials to show what Mr. Hung knew about the documents. The defense offers them to show what the platform was like — which bears directly on whether a user could have known that the gift cards he purchased represented criminal proceeds. To be precise about purpose: the Paxful materials are not offered to prove what Mr. Hung subjectively believed. They are offered to prove that the marketplace features the Government calls incriminating were, objectively, ordinary and concealed, so that those features cannot bear the weight of the knowledge inference the Government asks the jury to draw.

The opening memorandum stated this theory expressly. It explained that the Paxful materials are offered to establish the platform's "anonymity, lack of customer identification, fabricated compliance policies, [and] concealment of criminal activity from users," and to show

2

that the platform's suspicious-activity findings did not render ordinary transactions presumptively criminal. (Def. Mem. at 3-4.) It explained that the evidence is needed "to prevent the Government from converting ordinary features of the marketplace" into incriminating circumstances "without giving the jury the Government's own platform-level findings." (Def. Mem. at 5.) And it stated that "this motion does not seek to resolve the knowledge question before trial." (Def. Mem. at 3.)

The Government was therefore on notice — from the motion itself — that contemporaneous knowledge of the documents was not the theory. The June 12 email exchange merely confirmed what the motion already said. (Ex. A.) The Government's decision to build its entire Section IV around the opposite premise was not a misunderstanding. It was a deliberate choice to argue against a theory the defense never advanced.

The distinction the Government ignores is dispositive. The Paxful materials are not offered to show what Mr. Hung knew. They are offered to show what the Government itself has established about the platform on which Mr. Hung transacted: that Paxful operated as a public marketplace while, behind the scenes, it lacked any real KYC controls, filed zero SARs until November 2019, and presented fabricated compliance policies to the very financial institutions responsible for monitoring the platform. Those failures were hidden from users — that is the point. A buyer on Paxful encountered a platform that appeared legitimate, and the Government's own findings demonstrate that the platform's concealment of its compliance failures made it impossible for a buyer, relying on the platform alone, to detect that the cards he purchased were stolen. Mr. Hung did not need to have read the plea agreement or the Consent Order to have been affected by the conditions those documents describe. The documents matter not because Mr. Hung knew about them, but because they prove the environment in which he operated was designed to keep him — and every other user — in the dark.

The relevance of this evidence is direct, not attenuated. The Government intends to use features of the Paxful marketplace — anonymity, discount pricing, transaction volume — as circumstantial evidence that Mr. Hung knew the gift cards were criminal proceeds. The Paxful materials are the only available evidence that establishes the context necessary to evaluate those features: that they were standard marketplace characteristics, not red flags visible to buyers, and that the platform was specifically designed to conceal the provenance of the items traded on it. The Government wants to use Paxful as a sword while excluding the Government's own findings as a shield. If marketplace features are fair game for the Government's inference, the defense is entitled to the Government's own findings showing those features were standard and concealed. The Government cannot offer the platform's character as proof of knowledge while withholding what it has formally found that character to be. Without this context, the jury will hear the Government's characterization of marketplace features in a vacuum — precisely the one-sided presentation that motions in limine are designed to prevent.

This distinction is well-grounded in Second Circuit law. In *United States v. Kaplan*, the Second Circuit held that "evidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record . . . from which to conclude that the defendant would have the same knowledge." 490 F.3d 110, 120 (2d Cir. 2007). The court warned against the danger that jurors would "improperly hold [the defendant] liable because they believed he should have known of the fraud." *Id.* at 121-22. That is precisely the risk here: the Government seeks to use Paxful's marketplace features to imply that Mr. Hung should have known the cards were stolen, while simultaneously excluding the evidence that shows those same features were hidden from users and designed to make detection impossible.

The Government's mischaracterization of the defense theory is not merely an academic error — it reveals the need for the preclusion relief requested in Section III below. The Government's strategy is to treat marketplace features as a one-way ratchet: it wants to argue that anonymity, discount pricing, and transaction volume are circumstantial evidence of Mr. Hung's knowledge, while excluding the Government's own findings showing that those features were standard marketplace characteristics hidden from users — not red flags visible to buyers. The Second Circuit has recognized that the Government may rely on environmental facts and a defendant's exposure to the same information sources as others to establish knowledge. *See United States v. Kozeny*, 667 F.3d 122, 134-35 (2d Cir. 2011). But that principle cuts both ways: if the Government intends to argue that Paxful's features prove knowledge, the defense is entitled to present evidence showing why those features did not and could not inform Mr. Hung of the criminal provenance of the cards. As the Second Circuit recently confirmed, excluding defense evidence that corroborates the defendant's state-of-mind theory is reversible error where intent is the central disputed issue. *United States v. Cardenas*, 167 F.4th 569 (2d Cir. 2026).

The Government also mischaracterizes the Paxful materials themselves. It argues that the "fake AML and KYC policies" were presented to financial institutions, not users, and that the "anonymous" feature was touted to prospective customers. (Opp. at 66-67.) But these "corrections" reinforce the defense theory. If Paxful presented fabricated compliance policies to banks, then even the financial institutions responsible for monitoring the platform were deceived — to say nothing of users. If Paxful marketed anonymity to prospective customers, then users were affirmatively told the platform operated without identity verification. Both facts make it harder — not easier — for an buyer to detect that the cards he purchased were stolen.

## II. THE PAXFUL MATERIALS ARE ADMISSIBLE.

### A. The United States Is One Party for Purposes of Rule 801(d)(2).

The Government argues that the SDNY USAO is not the "same party" as MLARS, the EDCA USAO, or FinCEN, and therefore the Paxful plea agreements cannot be admitted as party-opponent admissions. (Opp. at 56-57.) This argument contradicts the weight of federal appellate authority.

The party in this case is the United States of America — not the United States Attorney's Office for the Southern District of New York. The case is captioned "United States v. Le Van Hung." The Paxful Holdings plea agreement was signed by attorneys from MLARS and the EDCA USAO, acting on behalf of the same United States. When those attorneys filed the plea agreement with the Eastern District of California and asked a federal judge to accept it as the basis for a guilty plea, they were manifesting the United States' adoption of and belief in the factual statements contained therein.

The plea agreement is admissible under multiple subsections of Rule 801(d)(2). It qualifies under Rule 801(d)(2)(A) as the party's own statement — because the United States is the party, and the plea agreement is its statement, filed in its name and signed by its attorneys. It qualifies under Rule 801(d)(2)(B) because the United States manifested its adoption of and belief in the factual statements by submitting them to a federal court as the basis for a guilty plea. And it qualifies under Rule 801(d)(2)(C) and (D) because the DOJ attorneys who signed the agreement were authorized to speak for, and were agents of, the United States acting within the scope of their authority. The Government's opposition unsuccessfully attacks only the Rule 801(d)(2)(B) theory, but the plea agreement satisfies multiple independent bases for admission.

The First Circuit addressed the "same party" issue squarely in *United States v. Kattar*, holding that "the Justice Department certainly should be considered" a party-opponent of criminal defendants, and that formal DOJ litigation filings are admissible under Rule 801(d)(2)(B) because the Justice Department "has, as clearly as possible, manifested its belief in the substance of the contested documents" by "submit[ting] them to other federal courts to show the truth of the matter contained therein." 840 F.2d 118, 130-31 (1st Cir. 1988). The court stated the principle in terms that directly foreclose the Government's position here: "The government cannot indicate to one federal court that certain statements are trustworthy and accurate, and then argue to a jury in another federal court that those same assertions are hearsay." *Id.* at 131.

The D.C. Circuit reached the same conclusion in *United States v. Morgan*, holding that "the Federal Rules clearly contemplate that the federal government is a party-opponent of the defendant in criminal cases" and that formal government statements "represent the position of the government itself, not merely the views of its agent." 581 F.2d 933, 937 & n.10 (D.C. Cir. 1978).

The Ninth Circuit — the circuit in which the Paxful Holdings plea agreement was entered — recently held that "in a criminal case, the sworn statement of a government attorney in a plea agreement or sentencing memorandum is a party admission, excluded from the definition of hearsay under Rule 801(d)(2)." *United States v. Mirabal*, 98 F.4th 981, 983 (9th Cir. 2024). The court rejected the argument that such statements are merely a prosecutor's personal opinion, explaining that the factual basis in a plea agreement is "the official position of the United States regarding what happened" and "not the mere errant remark or personal viewpoint of a government attorney." *Id.* at 990-91. The court held: "in criminal cases, the Justice Department certainly should be considered a party-opponent of criminal defendants." *Id.* at 991 (quoting *Kattar*, 840 F.2d at 130). When MLARS and the EDCA USAO signed the Paxful Holdings plea agreement and filed

it with a federal court in *Mirabal*'s circuit, they did so in a jurisdiction that expressly recognizes plea agreements as party admissions of the United States. The factual representations in that agreement did not change character when they crossed district lines.

The Second Circuit's own precedent is consistent. In *United States v. GAF Corp.*, the court held that a prior bill of particulars was admissible as "an admission by the government" because it was "prepared, reviewed, and presented by an agent of the United States." 928 F.2d 1253, 1260-61 (2d Cir. 1991). The court explained that "the jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims." *Id.* at 1260. In *United States v. Yildiz*, the Second Circuit confirmed that "the government's attorneys can bind the government with their in-court statements . . . and filings." 355 F.3d 80, 82 (2d Cir. 2004). *Yildiz* drew the line at informal agent statements — not at formal attorney filings like plea agreements. *Id.*

The Government's authorities do not support its position. *United States v. Klein*, 2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017), is a district court decision that cannot override binding Second Circuit authority in *GAF Corp.*, *Salerno*, and *Yildiz*. *United States v. Baker*, 923 F.3d 390 (5th Cir. 2019), addressed whether the SEC and DOJ were the "same party" under Rule 804(b)(1) — a different rule with a different analytical framework requiring "similar motive." It did not address Rule 801(d)(2) party admissions. And *United States v. Martoma*, 2014 WL 5361977 (S.D.N.Y. Jan. 8, 2014), is another district court case that does not bind this Court.

**B. The FinCEN Consent Order Is Admissible as a Public Record.**

The FinCEN Consent Order is independently admissible under Rule 803(8) as a public record containing factual findings from an authorized investigation. FinCEN is the federal agency charged with administering and enforcing the Bank Secrecy Act. *See* 31 U.S.C. § 5321(a). Its

Consent Order regarding Paxful contains detailed factual findings about Paxful's compliance failures, anonymity features, failure to file SARs, and failure to detect illicit activity — all based on FinCEN's regulatory investigation.

The Second Circuit has held that Rule 803(8) renders "presumptively admissible 'not merely . . . factual determinations in the narrow sense, but also . . . conclusions or opinions that are based upon a factual investigation.'" *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000). Once the proponent shows the report contains factual findings from a legally authorized investigation, "the burden to show 'a lack of trustworthiness' then shifts to the party opposing admission." *Id.* The Supreme Court has confirmed that the touchstone is whether the proffered portions reflect "a factual investigation" and are sufficiently trustworthy — not whether the document also contains evaluative conclusions. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169-70 (1988).

The Fifth Circuit's decision in *United States v. Gluk* is directly on point. There, the court held that SEC investigative documents were admissible under Rule 803(8) in a criminal prosecution because they set out "factual findings from a legally authorized investigation." 831 F.3d 608, 614-17 (5th Cir. 2016). The court held that agency documents are admissible unless the agency has affirmatively "disavowed" them, and that "[w]hen an agency professional transmits a document to others outside the agency, that document is presumptively a factual finding of the agency." *Id.* at 615-17.

The Government argues the Consent Order is "negotiated" and therefore not a neutral agency report. (Opp. at 60-61.) But the factual findings in the Consent Order are based on FinCEN's investigation, not on compromise. The penalty amount may reflect negotiation; the factual recitations about Paxful's compliance failures do not. FinCEN has not disavowed those

findings. To the contrary, it transmitted them to the public in a formal enforcement document issued pursuant to statutory authority. That is precisely the kind of agency factual finding Rule 803(8) was designed to admit. *See English v. District of Columbia*, 651 F.3d 1, 8-9 (D.C. Cir. 2011) (holding that whether superiors later adopted or ratified an investigative report "is irrelevant to whether it is a Rule 803(8) public record").

**C. Rule 403 Favors Admission, and the Government's "Mini-Trial" Concern Is Self-Defeating.**

The Government's Rule 403 argument rests on the claim that admitting the Paxful materials would trigger a "mini-trial" about separate agencies, cases, and legal regimes. (Opp. at 63-64.) That concern is self-defeating.

The defense seeks to introduce selected, redacted excerpts establishing four discrete facts about the Paxful platform: (1) it emphasized anonymity and allowed trading without identification; (2) it presented fabricated compliance policies to financial institutions; (3) it concealed criminal activity from users; and (4) the FinCEN record does not support treating Paxful prepaid-card transactions as presumptively criminal. These are not collateral matters requiring extended litigation. They are facts the Government itself established in the Paxful proceedings. Admitting them requires no witnesses, no expert testimony, and no extended foundation — only the introduction of the Government's own documents.

The only scenario in which a "mini-trial" could arise is if the Government intends to contest the very facts it agreed to in the Paxful plea agreement and Consent Order. But if the Government does not intend to contest those facts, there is no mini-trial — the excerpts are admitted and the jury considers them alongside the other evidence. And if the Government does intend to contest facts it previously represented to a federal court as "trustworthy and accurate," *Kattar*, 840 F.2d at 131, then that inconsistency is precisely what makes the materials admissible under *McKeon* and

10

*GAF Corp.* — because "the jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims." *GAF Corp.*, 928 F.2d at 1260.

The Government cannot escape this logic. Either it stands by its prior factual findings — in which case there is no mini-trial and no Rule 403 problem — or it repudiates them, in which case the jury is entitled to know about the inconsistency. The Government's opposition itself concedes that it "does not suggest the facts in the Paxful plea agreements are incorrect." (Opp. at 60.) That concession eliminates the predicate for any mini-trial concern. And the jury is fully capable of evaluating the materials: as the Fifth Circuit held in rejecting an identical "jury confusion" objection, a jury is "perfectly capable of weighing the evidence" contained in agency findings against other evidence at trial. *Gluk*, 831 F.3d at 618.

The probative value of this evidence is substantial. The Government intends to argue that features of the Paxful marketplace — anonymity, discount pricing, transaction volume — are circumstantial evidence of Mr. Hung's knowledge. The Paxful materials are the very evidence that shows those features were standard marketplace characteristics hidden from users, not red flags visible to buyers. Excluding this context while permitting the Government to press scienter by ambience would create the exact unfair prejudice Rule 403 guards against. *See Kaplan*, 490 F.3d at 120-22.

The Government's own Paxful sentencing memorandum confirms the point. In recommending a sentence for Paxful Holdings, the Government described the company's reserve policies as designed to "protect the assets of customers who played no part in the criminal conduct." (Ex. C at 5.) That is the Government's own recognition — in a formal filing submitted

11

to a federal court — that Paxful users could be innocent participants. The jury is entitled to know that.

To the extent the Court has any residual concern about the scope of the materials, the defense is prepared to work with the Court to identify the narrowest set of redacted factual excerpts that fairly establishes the four platform characteristics identified above, accompanied by an appropriate limiting instruction. If the Court has any concern about scope, it can require the defense to submit an excerpt-by-excerpt chart identifying the source, admissibility basis, purpose, and proposed limiting instruction for each excerpt, with the Government then making targeted objections. The defense does not seek to introduce the entirety of the plea agreements, the sentencing memorandum, or the Consent Order — only the specific factual findings necessary to give the jury the context it needs to evaluate the Government's knowledge arguments. Alternatively, the Court could defer ruling and require the Government to make an evidentiary proffer before arguing discount, anonymity, or generalized platform risk as proof of knowledge at trial, at which point the Court could assess the need for the Paxful context on a developed record.

### III. THE PRECLUSION REQUESTS ARE NOT STRAWMEN, AND THE GOVERNMENT SHOULD BE HELD TO THE ACTUAL-KNOWLEDGE THEORY IT CHARGED.

The Government characterizes the defense's three preclusion requests as "strawmen" because it says it does not intend to argue that (a) all transactions were criminal, (b) the discount alone proves knowledge, or (c) general risk awareness satisfies the knowledge element. (Opp. at 44-45, 94-98.) But the Government refuses to consent to an order memorializing those commitments. That refusal speaks louder than the brief. If the Government truly does not intend to make these arguments, a preclusion order costs it nothing. Its resistance reveals that it does intend to make them — perhaps not in the precise formulation the defense described, but in

substance. Indeed, the Government no longer claims the discount alone proves knowledge, but now argues only that an 'unexplained discount' suggests Hung's awareness, 'or, at minimum, conscious avoidance,' that the cards were fraudulently obtained. (Opp. at 36.) The dispute is therefore narrow: whether a discount that matched the prevailing platform rate is 'unexplained' at all. This is a fact for the jury to determine and they can only do so with *all* the relevant evidence, the evidence the defense seeks to introduce as well as the prosecution's evidence.

The Government has charged actual knowledge, and it should be held to that standard. The Superseding Indictment alleges that the defendants acted "knowingly" and knew that "the property involved in a financial transaction represented the proceeds of some form of unlawful activity." It does not plead a negligence or "should have known" theory. Section 1956 requires precisely that: proof that the defendant knew "the property involved in the financial transaction represented the proceeds of some form of unlawful activity." *United States v. Maher*, 108 F.3d 1513, 1528 (2d Cir. 1997). The knowledge element attaches to the charged property — not to the marketplace as a whole, and not to some unidentified percentage of a larger pool. The relief the defense seeks is to hold the Government to that standard and to preclude argument that would invite the jury to convict on something less. Consistent with the opening memorandum, the defense does not ask the Court to bar all reference to the discount. It asks the Court to preclude the Government from arguing that the discount, without evidence that it departed materially from the standard Paxful rate, is itself probative of knowledge.

That standard cannot be satisfied by aggregating volume and discount across a transaction pool the Government itself concedes is mixed. In opposing the defendants' motion for a bill of particulars, the Government acknowledged that it would "likely feature a subset of these transactions" at trial and that some transactions "may be legitimate." (Dkt. 104 at 19.) The

Government thus concedes what the defense has maintained: that the universe of Mr. Hung's purchases included lawful and unlawful cards alike. That concession is fatal to any argument that the volume of his purchases, or the discount at which he bought, establishes that he knew any particular card was criminal proceeds. If the pool is mixed, then neither the number of cards nor their price distinguishes a lawful purchase from an unlawful one. Because the Government concedes the pool is mixed, the price common to every card in that pool, lawful and unlawful alike, cannot distinguish one from the other.

The discount illustrates the point. The Government should be precluded from arguing that gift cards sold at a discount are indicators of illegality unless it first introduces evidence that the discount on the charged transactions was distinguishable from the discount on legitimately sourced cards. On Paxful, gift cards traded at a discount whether or not they were illicitly sourced. The only discount figure in the record is the Government's own: its theory prices the charged purchases at 80 or fewer cents per dollar. (Opp. at 21.) The Government does not allege he paid below the prevailing platform price and does not allege he selectively targeted illicitly sourced cards. On this record, the discount is simply the price at which cards traded on the platform, and it tells the jury nothing about whether any particular card was stolen. That was the standard marketplace rate, and it applied across the platform regardless of whether a particular card was lawfully or unlawfully obtained. The Government has not disclosed the specific discount at which Mr. Hung's charged transactions were priced, and it does not allege that he paid below-market rates or that he selectively targeted illicitly obtained cards. A discount that is indistinguishable from the discount on lawful cards tells the jury nothing about whether any particular card was stolen — it is simply the price at which gift cards traded on Paxful. The discount becomes probative of knowledge only if it was so far below the standard marketplace rate — for example, a card offered at a steep

14

discount far below the platform's ordinary price.— that no reasonable buyer could believe the card had been lawfully obtained. A card sold at 20% off in an established resale market is ordinary commerce; a card sold at half its value is merchandise that has obviously "fallen off a truck." The Government should be required to establish that the discount on Mr. Hung's transactions departed materially from the standard Paxful rate before arguing the discount as evidence of knowledge.

The same limitation applies to the Government's reliance on the use of identification information to open accounts. That conduct concerns the mechanics of liquidating gift cards — creating the accounts through which cards were redeemed — and is untethered from any knowledge of whether a particular card was stolen. At most, that conduct may bear on whether the transactions were structured or concealed; it does not, without more, establish that Mr. Hung knew the particular cards being redeemed were criminal proceeds. The act of opening an account to redeem a card says nothing about whether the buyer knew the card represented criminal proceeds. Absent evidence connecting the account-opening conduct to knowledge of the cards' provenance, the Government should not be permitted to argue that this conduct demonstrates that Mr. Hung knew the cards were criminal proceeds.

The Second Circuit has made clear that circumstantial evidence must actually be probative of the specific knowledge element before it can carry the inference the Government seeks. In *United States v. Belloisi*, the court reversed a conviction because "the mere commission of suspicious acts that further the conspiracy does not necessarily establish a defendant's knowledge of the nature of the conspiracy." 164 F.4th 232 (2d Cir. 2026). Even evidence that "fortif[ies] the inference that [the defendant] knew he was participating in an unlawful conspiracy of some sort" is not "probative as to the specific object of the conspiracy." *Id.* And where the evidence is "either

inconclusive or equally consistent with [the defendant's] involvement in" innocent conduct, it cannot carry the knowledge inference the Government seeks. *Id.*

The same principle governs any conscious-avoidance theory. To the extent the Government suggests Mr. Hung "consciously avoided" knowing the cards were criminal proceeds (Opp. at 45, 70-71), conscious avoidance requires evidence that the defendant "was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Kozeny*, 667 F.3d 122, 134 (2d Cir. 2011). Generalized awareness that some transactions on a large cryptocurrency platform might involve illicit activity does not satisfy that standard. If it did, every user of every peer-to-peer marketplace would be subject to a conscious-avoidance charge. The Court should require the Government to identify transaction-specific evidence of a high probability that the charged cards in particular were criminal proceeds before permitting a conscious-avoidance argument.

Unless the Government can show that the discount on the charged transactions was materially different from the standard Paxful marketplace rate, the discount is equally consistent with ordinary marketplace behavior and provides no reasonable basis for inferring knowledge. *See United States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993) (evidence "should not be admitted to show knowledge unless the other act is 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence'"); *United States v. Landesman*, 17 F.4th 298 (2d Cir. 2021) (quoting *United States v. Hawkins*, 547 F.3d 66, 71 (2d Cir. 2008)) ("If the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.").

A "brick in the wall" that is not itself probative of the specific knowledge element is not a brick — it is filler. The Government should not be permitted to stack non-probative facts alongside other evidence to create a false impression of cumulative weight. *See United States v. Pauling*, 924 F.3d 649, 660 (2d Cir. 2019) ("An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist."). The Court should require the Government to establish an evidentiary foundation — that the discount on the charged transactions was materially different from the standard Paxful marketplace rate — before arguing discount as evidence of knowledge.

## CONCLUSION

For the foregoing reasons, and those set forth in the opening memorandum, Mr. Hung respectfully requests that the Court grant his Motion in Limine.

Dated: June 19, 2026

Respectfully submitted,

Timothy C. Parlatore, Esq.
Parlatore Law Group, LLP
*Attorneys for Defendant Le Van Hung*
260 Madison Ave., 17th Floor
New York, New York 10016
(212) 679-6312