UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

WEIDONG GUAN,
    a/k/a "Bill Guan,"

            *Defendant.*

24 Cr. 322 (VM)

REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT WEIDONG GUAN'S MOTIONS *IN LIMINE*

PETRILLO KLEIN + BOXER LLP
655 Third Avenue, 12th Floor
New York, New York 10017

*Counsel for Weidong Guan*

TABLE OF CONTENTS

I.      THE COURT SHOULD EXCLUDE EXHIBITS AND TESTIMONY
        CONCERNING OUT-OF-COURT COMMUNICATIONS THAT WERE NOT
        SHARED WITH MR. GUAN ................................................................................. 1

II.     THE GOVERNMENT FAILS TO ARTICULATE THE RELEVANCE OF MR.
        GUAN'S TAX RETURNS AS EVIDENCE OF CONCEALMENT OF THE
        ALLEGED SCHEME ..........................................................................................11

III.    THE BALANCE OF THE GOVERNMENT'S RULE 404(B) NOTICE STILL
        FAILS TO PROVIDE SUFFICIENT NOTICE OF THE CONDUCT BEING
        OFFERED AND IS GENERALLY NOT INTERTWINED WITH THE CHARGED
        OFFENSES ........................................................................................................ 13

IV.     THE GOVERNMENT CONCEDES IT WILL LIMIT THE VICTIM IMPACT
        EVIDENCE IT WILL INTRODUCE .................................................................. 15

V.      THE GOVERNMENT CONCEDES THAT IT WILL NOT REFER TO
        INDIVIDUALS AS VICTIMS OF MONEY LAUNDERING, BUT STILL
        IMPERMISSIBLY ATTEMPTS TO REFER TO TAXPAYERS AS VICTIMS............... 16

VI.     THE GOVERNMENT APPEARS TO CONCEDE THAT IT MUST LINK THE
        MONEYS ALLEGED TO BE INVOLVED IN THE MONEY LAUNDERING
        CONSPIRACY TO SPECIFIED UNLAWFUL ACTIVITY ........................................... 17

VII.    MR. GUAN AGREES THE COURT CAN DECIDE LATER WHETHER TO
        PROVIDE THE JURY WITH THE INDICTMENT OR EXCLUDE EVIDENCE OF
        METADATA ...................................................................................................... 18

CONCLUSION.......................................................................................................... 19

TABLE OF AUTHORITIES

Cases

*Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*,
 No. 22-CV-5612 (JGK), 2025 WL 2346377 (S.D.N.Y. July 3, 2025) ....................................... 4

*Ryan v. Miller*,
 303 F.3d 231 (2d. Cir. 2002) ........................................................................................... 2, 3

*United States v. Dennis*,
 2025 WL 1751946 (2d Cir. June 25, 2025) ....................................................................... 9

*United States v. Gomez*,
 617 F.3d 88 (2010) .......................................................................................................... 2, 3

*United States v. Gotti*,
 459 F.3d 296 (2d Cir. 2006) ............................................................................................. 18

*United States v. Hendricks*,
 921 F.3d 320 (2d Cir. 2019) ............................................................................................. 16

*United States v. Ho,*
 984 F.3d 191 (2d Cir. 2020) ............................................................................................. 10

*United States v. Johnson*,
 529 F.3d 493 (2d Cir.2008) ............................................................................................... 3

*United States v. Juhic*,
 954 F.3d 1084 (8th Cir. 2020) ....................................................................................... 4, 11

*United States v. Lizarraga-Tirado*,
 789 F.3d 1107 (9th Cir. 2015) ............................................................................................ 4

*United States v. Lubrano,*
 984 F.3d 191 (2d Cir. 2020) ............................................................................................. 10

*United States v. Manfredonia,*
 414 F.2d 760 (2d Cir. 1969) ............................................................................................... 9

*United States v. Napout,*
 No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ................................. 7

*United States v. Oliver*,
 987 F.3d 794 (8th Cir. 2021) ............................................................................................... 4

*United States v. Palma*,
473 F.3d 899 (8th Cir. 2007)........................................................................ 17

*United States v. Reyes*,
18 F.3d 65 (2d Cir. 1994)....................................................................... 2, 3, 6, 8

*United States v. Ruggiero*,
472 F.2d 599 (2d Cir. 1973)............................................................................ 9

*United States v. Schimmel*,
943 F.2d 802 (7th Cir. 1991)......................................................................... 17

*United States v. Slaughter*,
386 F.3d 401, 403 (2d Cir. 2004).................................................................... 9

*United States v. Zapata*,
356 F. Supp. 2d 323 (S.D.N.Y. 2005) ............................................................. 4

Rules

Fed. R. Evid. 403 .............................................................................................. 4

Fed. R. Evid. 701 .............................................................................................. 7

Fed. R. Evid. 801(c).......................................................................................... 2

Defendant Weidong "Bill" Guan respectfully submits this reply memorandum of law in support of his motions *in limine* (ECF 145, "Motion") to exclude certain categories of evidence that the government intends to introduce at trial.

I.     THE COURT SHOULD EXCLUDE EXHIBITS AND TESTIMONY CONCERNING OUT-OF-COURT COMMUNICATIONS THAT WERE NOT SHARED WITH MR. GUAN

The government effectively concedes that the categories of evidence addressed in the first two sections of Mr. Guan's Motion are hearsay that do not fall within the business records (or any other) valid exception. Instead, the government attempts to justify its proffer of hearsay reflecting internal communications and deliberations within financial and cryptocurrency institutions and complaints about theft or fraud that were never shared with Mr. Guan[1] by arguing that these materials somehow inform the background or justify the reasons behind communications that were shared with him. This argument is illogical, calls for the admission of completely irrelevant, unnecessary, and profoundly prejudicial out-of-court chatter, and is not supported by the Rules of Evidence or relevant case law. Just as a case agent called as a trial witness may not testify that he and his fellow agents came to the view that a defendant was likely guilty, a bank witness or agent presenting subpoenaed bank documents cannot testify to out-of-court statements made by control function employees that a trial defendant appeared likely to have run afoul of law, rule, regulation, or compliance standard.

---

[1] Contrary to the government's suggestion in its opposition brief, Mr. Guan did not argue in his motions *in limine* that materials that were provided to Mr. Guan would not be admissible to show his knowledge or state of mind. Mr. Guan's moving brief is explicit that it applies only to communications that were not provided to Mr. Guan. (ECF 146 ("Guan MIL Br.") at 1, 6 n.3.) We submit that the government has argued so strongly against this uncontested strawman in order to conflate the materials that *were* provided to Mr. Guan (which are admissible, if otherwise appropriate, to show notice or his state of mind generally) with materials that *were not* provided to Mr. Guan (for which the government has no cogent argument for admission).

A. <u>Applicable Law</u>

<u>Background Information</u>

Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "The principal vice of hearsay evidence is that it offers the opponent no opportunity to cross examine the declarant on the statement that establishes the declared fact." *United States v. Reyes*, 18 F.3d 65, 69 (2d Cir. 1994). Statements offered for a purpose other than the truth of the matter asserted, however, fall outside the hearsay rule entirely. *See United States v. Gomez*, 617 F.3d 88, 92 (2010). The government here relies on the argument that, in limited circumstances, courts may allow out-of-court statements as background to clarify noncontroversial matters without causing unfair prejudice on significant disputed matters or to rebut evidence. (*See* Gov. Opp'n Br. at 12 (quoting *Ryan v. Miller*, 303 F.3d 231, 252 (2d. Cir. 2002)).)

The Second Circuit established a two-prong test to determine whether hearsay statements are admissible not for their truth but as background information to contextualize some later communication or action. First, "the non-hearsay purpose by which the evidence is sought to be justified is relevant," and second "the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." *Reyes*, 18 F.3d at 70. In analyzing the two-prong test, the *Reyes* Court offered the following guidance:

> Questions involved in the determination of the relevance and importance of such evidence include: (i) Does the background or state of mind evidence contribute to the proof of the defendant's guilt? (ii) If so, how important is it to the jury's understanding of the issues? (iii) Can the needed explanation of background or state of mind be adequately communicated by other less prejudicial evidence or by instructions? (iv) Has the defendant engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice to the Government?

> Questions involved in the assessment of potential prejudice include: (v) Does the declaration address an important disputed issue in the trial? Is the same information shown by other uncontested evidence? (vi) Was the statement made by a knowledgeable declarant so that it is likely to be credited by the jury? (vii) Will the declarant testify at trial, thus rendering him available for cross-examination? If so, will he testify to the same effect as the out-of-court statement? Is the out-of-court statement admissible in any event as a prior consistent, or inconsistent, statement? (viii) Can curative or limiting instructions effectively protect against misuse or prejudice?

*Reyes,* 18 F.3d at 70-71 (footnotes omitted).

Accordingly, the mere identification of a relevant non-hearsay use of such evidence such as the "background" argument asserted here is insufficient to justify its admission if the jury is likely to consider the statement for the truth of what was stated with significant resulting prejudice. *Id.* Where an out-of-court statement "sought to be justified in its nonhearsay use [relates to] the unimportant issue of investigative background, and it has considerable capacity in its improper application for substantial prejudice to the defendant on the crucial issue of proof of guilt," it is not admissible. *Gomez*, 617 F.3d at 92 (quoting *United States v. Johnson*, 529 F.3d 493, 500 (2d Cir.2008); *see also Ryan*, 303 F.3d at 252 ("The district court erred in concluding that the testimony of [law enforcement officers] was admissible as background evidence. The testimony was not necessary or relevant to a material issue in the case."). Likewise, "a prosecutor's tactical desire to tell the jury an exciting, captivating story does not justify expanding the scope of admissible evidence to include improper matter." *Johnson*, 529 F.3d at 501.

<u>Machine-Generated Documents</u>

With respect to a portion of the documents at issue, the government argues that the documents are non-hearsay because they constitute machine-generated documents that are not

out-of-court statements subject to the hearsay rule in the first instance. With respect to purely computer or machine-generated documents, courts have determined that such materials, which are the output of a computer program that could be duplicated, are generally not barred by the rule against hearsay evidence. *See Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, No. No. 22-CV-5612 (JGK), at\*1, 2025 WL 2346377 (S.D.N.Y. July 3, 2025) (citing *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1109-10 (9th Cir. 2015)). Courts have found, however, that such documents "can become hearsay when developed with human input." *United States v. Juhic*, 954 F.3d 1084, 1089 (8th Cir. 2020); *see also United States v. Oliver*, 987 F.3d 794, 801 n.4 (8th Cir. 2021) (declining to follow *Lizarraga-Tirado*, 789 F.3d at 1109-10). Indeed, where the computer-generated nature of the records does not eliminate the underlying human assertions embedded in the source data, courts have found that those documents can constitute inadmissible hearsay-within-hearsay. *See United States v. Zapata*, 356 F. Supp. 2d 323, 329 (S.D.N.Y. 2005) ("The composite central computer records being offered as evidence in this case present an additional problem in that those records constitute hearsay-within-hearsay because Western Union's computer-generated records are based on those send forms, and therefore also contain unverified information provided by customers.") (alterations and internal quotations omitted).

B. <u>Discussion</u>

As noted in the first two sections of his Motion, Mr. Guan seeks to exclude any exhibits and testimony that reflect Internal Communications and out-of-court reports of fraud or theft or potential fraud or theft that he did not see and about which he did not receive notice because they are irrelevant, usurp the role of the jury, are hearsay without a valid exception, and are unduly prejudicial under Rule 403 of the Federal Rules of Evidence. The government apparently concedes that the communications at issue are not admissible under any valid hearsay exception

and primarily argues instead that the communications constitute non-hearsay "background information" that should be admitted to contextualize other proof or, in some cases, that the materials constitute non-hearsay "machine-generated data." The government's arguments are baseless, and the cases the government cites are either plainly distinguishable or actually support Mr. Guan's position.

As to the government's main "background information" argument, the government's contention in this case plainly fails *both* prongs of the two-part test set forth in *Reyes*. First, the communications that were not shared with Mr. Guan are plainly not relevant to any contested issue in this case and, contrary to the government's conclusory assertions, do not actually provide any meaningful context to the statements that *were* made to him.

As an initial matter, the statements made to Mr. Guan are unambiguous on their face and do not need further contextualizing for the jury to find them comprehensible. Take, for example, InComm's communication, which Mr. Guan saw, that there had been "an increase of customers disputing transactions with us that have your company as the name," and that as a result InComm asked the Epoch Times to answer "questions [] we are currently researching." (ECF 149 ("Gov't Opp'n Br.") at 10 (quoting GX 3B-1).) Nothing about that straightforward statement needs further explication for the jury to understand what was said. The statement  that Mr. Guan saw, is plainly relevant to his state of mind, and the government is of course free to argue that Mr. Guan was on notice of problems based on communications that were shared with him; whatever communications occurred internally at InComm to prompt that statement, however, shed absolutely no light on Mr. Guan's state of mind or any other fact at issue in this trial, and there is no legitimate basis to admit them. The same is true, as another example, with respect to a Gemini employee's statement to Mr. Guan that "[y]our account is currently frozen as we have detected

the [] vast majority of the activity on your account is from foreign locations." (Gov't Opp'n Br. at 11-12 (quoting GX 1A-64).) Again, it is not conceivable that the jury will have any difficulty understanding this straightforward English sentence. What Gemini told Mr. Guan is what is relevant; whatever internal communications at Gemini that prompted this message clearly are not.

Nor is Mr. Guan attacking or calling into question the motivations of the financial institutions in a way that would justify the admission of background information . The banks and other financial institutions are not on trial here, and Mr. Guan is not challenging the institutions' internal deliberative and compliance processes. He is not arguing or suggesting (and has no intention to argue or suggest) that there was anything wrong with or amiss in (i) the compliance, risk, and other institutional control functions that reviewed accounts at issue and related information or (ii) the issuance of the notifications he received from these institutions.[2]

It is useful to apply these facts to the guidance provided in *Reyes* with respect to the first prong of the test:

> Questions involved in the determination of the relevance and importance of such evidence include: (i) Does the background or state of mind evidence contribute to the proof of the defendant's guilt? (ii) If so, how important is it to the jury's understanding of the issues? (iii) Can the needed explanation of background or state of mind be adequately communicated by other less prejudicial evidence or by instructions? (iv) Has the defendant engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice to the Government?

*Reyes,* 18 F.3d at 70-71 (footnotes omitted). The answers to each and every one of these questions show that the "background" materials offered by the government must be excluded: the communications about risk, suspicious activity, fraud, theft, etc., that were not shared with

---

[2] As a result, the cases cited by the government for the proposition that background hearsay can be admissible to rebut defense arguments, (Gov't Opp'n Br. at 12), are inapposite.

Mr. Guan make no proper contribution to proof of his guilt, as he never had any awareness of them; they add nothing to the jury's understanding of the statements that *were* provided to Mr. Guan, which are clear and unambiguous on their face; to the extent that any explanation would be needed, it certainly could be provided without reference to the wildly prejudicial evidence offered by the government; and Mr. Guan has done nothing (and intends to do nothing) that would open the door in a way that would prejudice the government. The first prong of the *Reyes* test simply cannot be met here, and the proffered evidence must be excluded as a result.

Even if there were some relevance to the proffered background material, the government's argument would still plainly fail the second prong of the *Reyes* test. Again, the guidance of the Court of Appeals is useful (indeed, dispositive):

> Questions involved in the assessment of potential prejudice include: (v) Does the declaration address an important disputed issue in the trial? Is the same information shown by other uncontested evidence? (vi) Was the statement made by a knowledgeable declarant so that it is likely to be credited by the jury? (vii) Will the declarant testify at trial, thus rendering him available for cross-examination?[3] If so, will he testify to the same effect as the out-of-court statement? Is the out-of-court statement

---

[3] Because we do not yet have the government's witness list, we do not know at this point whether any of the out-of-court declarants will be testifying. Whether they testify or not, the proffered background material would still be properly excluded under *Reyes*. Indeed, it is worth noting now that the government's statement that "testifying witnesses who engaged in relevant communications with the defendants (or other relevant actions) may explain those communications or actions by testifying about their impressions and understanding of the defendants' conduct, such as their belief that the defendants' pattern of transactions was suspicious," (Gov't Opp'n Br. at 13 n.6), make no sense. Barring some unusual circumstance, such "impressions and understanding," unless conveyed to the defendants, are utterly irrelevant and would therefore run afoul of the rule against lay opinion testimony. *See* Fed. R. Evid. 701. Notably, the case cited by the government does not come close to supporting the government's position. That case, *United States v. Napout,* No. 15-CR-252 (PKC), 2017 WL 6375729, at *13 (E.D.N.Y. Dec. 12, 2017), on its face permitted only *the defendant* to testify about the impact of his understanding of a foreign law issue on his own state of mind. Nothing in that case supports the government's sweeping and incorrect statement that third parties may testify about their "impressions and understanding," and the government's citation to this opinion is quite misleading.

> admissible in any event as a prior consistent, or inconsistent, statement? (viii) Can curative or limiting instructions effectively protect against misuse or prejudice?

*Reyes,* 18 F.3d at 70-71 (footnotes omitted). Once again, the answers to these questions concerning the proffered background hearsay in this case strongly support exclusion of the proffered material: there is no question that the communications address important issues that are disputed — indeed, whether the activity in the Epoch Times-related accounts was suspicious or indicative of money laundering or fraud is both critically important and hotly contested in this case; there is clear risk that the statements by compliance experts at banks and other financial institutions will be credited (and, frankly, given outsized influence) by the jury; and any curative instruction cannot possibly hope to protect against a conclusion by the jury that, because a bank or cryptocurrency company found something, for example, to be indicative of fraud, then fraud must have taken place. The prejudice would be especially grave here because assessments about suspicious activity by the institutions merely reflect internal compliance or risk judgments — not the strict standards applicable to criminal statutes that the jury must apply under the Court's jury instructions. Admitting such evidence would therefore present a very real and substantial risk that the jury would infer criminality based on standards irrelevant to trial or simply defer to the companies' internal conclusions. In sum, the proffered background material utterly also fails the second prong of *Reyes*.

Given how clearly this issue is disposed of under the *Reyes* standard, it is not surprising that the cases the government relies on to support its position are readily distinguishable or favor Mr. Guan's position. Both *United States v. Slaughter* and *United States v. Dennis,* for example, involved relatively innocuous police officer testimony that was necessary to understand what the officers did:

- In *Slaughter*, the Second Circuit applied the *Reyes* balancing test to a government agent's testimony that a civilian pointed to a discarded weapon, and that the tip allowed police to recover the weapon. 386 F.3d 401, 403 (2d Cir. 2004). The Court found the testimony was proffered for a legitimate purpose, i.e., to explain how the officer found the weapon, and that the probative value of the evidence was not outweighed by the danger of unfair prejudice because the out-of-court evidence was relatively benign. *Id.*

- In *Dennis*, the defendant was convicted of drug and weapon-related offenses. No. 21-2952, 2025 WL 1751946, at *1 (2d Cir. June 25, 2025). The Second Circuit affirmed admission of an officer's limited testimony that she received a phone call that there were guns and drugs in the defendant's residence to show the effect the tip had on the officer's state of mind, which was put into issue by the defense. *Id.* at *4. Though the Court allowed this limited testimony, it precluded the government from introducing the call itself into evidence. *Id.*

In two other cases, *United States v. Ruggiero* and *United States v. Manfredonia*, the Second Circuit identified another basis — not present here — for permitting the admission of the statement aside from the background context:

- In *Ruggiero*, the defendant was charged with providing false testimony before a federal grand jury. 472 F.2d 599, 607 (2d Cir. 1973). The Second Circuit found that the testimony of three witnesses regarding out-of-court statements was not reversible error because it was relevant as to proof of operative facts *and* as statements made by co-conspirators. *Id.* (emphasis added).

- In *Manfredonia*, the defendant was charged with two counts of perjury. 414 F.2d 760, 765 (2d Cir. 1969). The Court affirmed the admission of testimony from an undercover IRS agent and a witness regarding out-of-court statements conducted prior to their contact with the defendant as relevant to demonstrate events leading up to the introduction of *and* relationship between defendant and declarant. *Id.* Notably, the Court

9

found no reversible error because both declarants "testified in court and were available for cross-examination." *Id.*

Lastly, in *United States v. Ho* and *United States v. Lubrano* the Second Circuit explained that the relevant statements were necessary to contextualize the nature of the relationships of key players involved in the charged conduct:

- In *Ho*, the charges against the defendant involved violations of the Federal Corrupt Practices Act and money laundering statutes. 984 F.3d 191, 195 (2d Cir. 2020). The Court affirmed admission of out-of-court statements that were relevant to contextualize the nature of the relationships among the individuals and provide insight into why one declarant decided to meet with the defendant the following day. *Id.* at 208.

- In *Lubrano*, the charges against the defendant were based primarily on drug transactions between himself and a government informant who died before trial. 529 F.2d 633, 635, 636 (2d Cir.1975). The Court affirmed admission of the testimony of a government agent relating to the specific direction he gave the informant, namely, to take serialized currency, meet with defendant and arrange the drug purchase immediately preceding the meeting with the defendant. *Id.* at 637. As the Court explained, this evidence was relevant to aid the jury in understanding the background events leading to the crimes in question in light of the unavailability of the informant. *Id.*

All of these cases are factually distinct from the facts present in Mr. Guan's case in which the government seeks to admit out-of-court statements that (a) are not necessary to understand institutions' actions, or the unambiguous statements that were shared with Mr. Guan, or the relationship between the Epoch Times and the institutions at issue, and (b) would be deeply prejudicial and carry a substantial risk that they would unfairly cause the jury to decide criminal guilt based on internal, compliance-related opinions and conclusions or provisional investigative views of institutional risk and compliance personnel.

The government's attempt to smuggle impermissible hearsay data into this case through alleged "machine-generated documents," should also be rejected. The government inaccurately characterizes GX 1C-2, 1C-4UR, and 1C-7, by stating "much of the text of these documents is

machine-generated." GX 1C-2 and GX 1C-7, for example, contain over five pages of internal messages from Gemini employees. GX 1C-2 and 1C-4UR ("UR" means unredacted), meanwhile, includes sections labeled "User Provided Information," explicitly indicating that a portion of the "automated" text relies on human input (and thus is inadmissible hearsay). *See Juhic*, 954 F.3d at 1088-89.

II.     THE GOVERNMENT FAILS TO ARTICULATE THE RELEVANCE OF MR. GUAN'S TAX RETURNS AS EVIDENCE OF CONCEALMENT OF THE ALLEGED SCHEME

In his Motion, Mr. Guan moved to preclude the government from introducing evidence and arguments that Mr. Guan allegedly filed false and misleading tax returns for tax years 2019 through 2023, for three reasons. (Guan MIL Br. at 16-18.) First, the tax returns are not direct evidence of the charged offenses, and only one year's return (from 2019) shows any entries concerning cryptocurrency-related activity. (*Id.* at 16.) Second, the tax offenses the government seek to introduce must be sufficiently similar to the conduct at issue so that the jury can draw a reasonable inference of knowledge or intent from the other act, which is not the case here. (*Id.* at 17.) And third, evidence about Mr. Guan's tax returns would necessitate a confusing and time consuming trial-within-a-trial regarding whether Mr. Guan's tax returns were reasonable under the circumstances. (*Id.* at 17-18.)

The government responds that Mr. Guan's tax filings and the related anticipated testimony of an IRS witness are "probative of [Mr.] Guan's fraudulent intent and efforts to conceal the true purpose of his cryptocurrency trading from the IRS." (Gov't Opp'n at 23.) In particular, the government asserts that Mr. Guan's tax returns illustrate that the cryptocurrency trading was not reported as corporate income for the Epoch Times Entities, "which would have necessitated acknowledging the fact that this activity was linked to the [Epoch Times Entities]." (*Id.* at 24.) Although it is not exactly clear, the government's theory appears to be that the tax

11

returns are offered to show that Guan endeavored to conceal from the IRS that The Epoch Times Entities were involved in cryptocurrency transactions and that if the cryptocurrency trading was reported on The Epoch Times Entities' tax returns, instead of those of Mr. Guan, the money laundering scheme would have been disclosed.

The government's opposition brief lacks any coherent theory on what this alleged concealment would establish or how it even theoretically affected the charged money laundering conspiracy in any way. In particular, there is no argument or fact that the defense is aware of that suggests that the reporting of the relevant cryptocurrency trading as corporate income for tax year 2019 would have resulted in the disclosure of the alleged money laundering scheme. Stated another way, even if Mr. Guan had reported the facts as the government sees them to the IRS and/or to his tax preparer, there is no persuasive explanation offered by the government as to how such disclosure would have tended to disclose the alleged money laundering conspiracy. The government's opposition brief is silent on this point. Meanwhile, the government provides no explanation whatsoever for how Mr. Guan's tax returns for tax years 2020 through 2023 are potentially relevant to concealment of the alleged conspiracy.

Because the government's contentions regarding a connection between the alleged misrepresentations on Mr. Guan's tax returns and the alleged concealment of the charged conspiracy do not withstand examination, the proffered evidence about those returns cannot be deemed inextricably entwined with the charged offenses; it must instead be analyzed under the standards applicable to Rule 404(b). For the reasons discussed in Mr. Guan's Motion, the evidence should be excluded under those standards because the proffered conduct carries substantial risk of prejudice weighed against little or no actual relevance and would also require

a confusing and time consuming trial-within-a-trial. Evidence about Mr. Guan's tax returns should not be permitted on the government's case-in-chief.

III.     THE BALANCE OF THE GOVERNMENT'S RULE 404(B) NOTICE STILL FAILS TO PROVIDE SUFFICIENT NOTICE OF THE CONDUCT BEING OFFERED AND IS GENERALLY NOT INTERTWINED WITH THE CHARGED OFFENSES

With respect to the remainder of the government's scanty Rule 404(b) notice, Mr. Guan moved to preclude the government from introducing evidence of the uncharged conduct as vague on its face because the government's notice failed to offer a particularized explanation of how the listed items meet the Rule 404(b) standard. (Guan MIL Br. at 14-15.) In particular, despite enumerating ten categories of conduct, the government's notice did not identify the specific acts the government intends to offer, provide dates or timeframes of when acts occurred, indicate what conduct is allegedly attributable to Mr. Guan, or explain how many specific incidents are intended to be introduced. (*Id.*)

In its opposition brief, the government does not convincingly remedy these failings. Instead, it argues that the conduct described in its Rule 404(b) notice is not subject to Rule 404(b) at all because it is "inextricably intertwined" with the charged conduct. (Gov't Opp'n Br. at 19.) We submit, however, that with one exception,[4] the government's explanations of the eight categories of conduct that are currently at issue[5] (which are at times opaque to put it generously)

---

[4] The second listed category of conduct in the government's Rule 404(b) notice — selling gift cards and prepaid debit cards at a discount and/or commissioning the taking of photographs of such cards — is directly connected to the alleged money laundering conspiracy (though, we submit that the government will be unable to show that there is anything illegal or even improper about such conduct).

[5] The government concedes that it will not seek to introduce evidence on its case-in-chief concerning an alleged money transmission business or so-called romance fraud schemes, i.e., categories 1 and 7 in the government's Rule 404(b) notice. (Gov't Opp'n Br. at 22 n.9.)

fail to demonstrate that the listed categories are intertwined with any of the charged conduct (and certainly the money laundering conspiracy alleged against Mr. Guan):

- In its discussion of category "(3) asking others to purchase products in the United States with gift cards and/or debit cards so that the products could be shipped back to Vietnam," (*id.* at 21), the government asserts that such so-called "checkout activities" was "among the multiple revenue streams that the MMO Team generated for" Epoch Times (*id.*); even if true, the government fails to connect such activity in any way to the alleged money laundering conspiracy or the underlying specified unlawful activity;

- In its discussion of categories "(4) commissioning the creation of identification documents in others' names, (5) the bulk purchase of stolen personally identifiable information," and "(8) commissioning the use of the financial or electronic accounts of other persons, or the bulk purchase of such accounts in the names of other persons," although the government summarily asserts that such activities "are part of the layering activity that is core to the money laundering allegations," (*id.* at 19), the government has not explained who engaged in these activities and how and to what these activities are connected. None of these activities appears to us to have anything to do with the core money laundering allegations against Mr. Guan. Before the Court considers whether to admit such evidence, the government should be required to proffer these particulars;

- In its discussion of category "(6) engaging in or receiving the proceeds of business email compromise schemes," the government makes reference to so-called "business email compromise schemes," (*id.* at 20); the problem here is that there does not appear to be any allegation or proof that the MMO Team perpetrated the so-called schemes, indeed, our reading of the cited exhibit (GX 6B-1) suggests that it was not; in other words, the

14

so-called business email compromise scheme does not appear to represent conduct properly attributed to the MMO Team or either of defendants; and

- Finally, in its discussion of categories "(9) the mailing of checks in the names of other persons to Guan or to other co-conspirators for deposit in bank accounts controlled by Guan, and (10) the creation of payment processing or other financial accounts under false and fraudulent customer information or the transfer of funds using false and fraudulent payment descriptions," (*id.* at 14, 21), to the extent that these assertions can be comprehended at all, there is no obvious connection between such alleged conduct and the alleged conspiracy to launder the proceeds of wire fraud that is charged in the Indictments; again, before being allowed to introduce such evidence on its case-in-chief, the government should be required to proffer what the supposed connection is.

Barring a more detailed proffer of how these amorphous categories of alleged conduct were (a) actually engaged in by the defendants or their alleged con-conspirators, and (b) connected to the charged money laundering conspiracy, they should not be considered for possible admission. Absent such connection, there is a substantial risk that the jury will conclude that the defendants and their alleged co-conspirators had a propensity to engage in suspicious or illegal activity and convict on that basis instead of the proof relevant to the charged offenses, is substantial — precisely what Rule 404(b) is intended to prevent.

IV. THE GOVERNMENT CONCEDES IT WILL LIMIT THE VICTIM IMPACT EVIDENCE IT WILL INTRODUCE

In his Motion, Mr. Guan moved to limit the government's introduction of "victim impact" testimony from witnesses who experienced fraud or identity theft. (Guan MIL Br. at 11.) In particular, Mr. Guan recognized that even if an alleged victim's testimony is relevant for establishing the elements of an offense, courts must take care to avoid the prejudicial potential of

15

testimony about the effects of a crime. (*Id.* (quoting *United States v. Hendricks*, 921 F.3d 320, 329 (2d Cir. 2019)).) Mr. Guan further noted that the government's exhibits indicate that it intends to call witnesses who experienced debit/gift card fraud or identity theft and asked the Court to limit the government's presentation of these victims to the facts related to the fraud or theft and preclude testimony about the impact of the fraud on the victims' lives. (Guan MIL Br. at 11.)

The government has now confirmed its intention to call victims of fraud or identity theft but concedes that it does not intend to "elicit lengthy testimony about the long-term effects that the crime had on victims' lives." (Gov't Opp'n Br. at 25-26.) Given this concession, the Court's intervention is not required at this time on this issue. Mr. Guan reserves his rights to object if the government's questioning crosses this threshold and, in that eventuality, we respectfully ask that the Court ensure that the government's presentation does not introduce excessive and prejudicial victim impact evidence.

V.      THE GOVERNMENT CONCEDES THAT IT WILL NOT REFER TO INDIVIDUALS AS VICTIMS OF MONEY LAUNDERING, BUT STILL IMPERMISSIBLY ATTEMPTS TO REFER TO TAXPAYERS AS VICTIMS

In his Motion, Mr. Guan moved to prevent the government from referring to state or federal governments, or taxpayers, as "victims," and from calling prepaid debit, gift, or cardholders "victims," arguing that references to "victims" of the alleged conspiracy would be inaccurate  given that the money laundering statue does not require any identifiable victim to establish the conspiracy. (Guan MIL Br. at 9.) In its opposition brief, the government asserts that it should be permitted to use the term "victim" when referring to individuals harmed by the underlying specified unlawful activity that it intends to prove at trial. (Gov't Opp'n Br. at 38-39.) In light of the government's arguments, with one exception discussed below, and so long as the government does not suggest that such "victims" were victimized by Mr. Guan or his alleged co-

conspirators, Mr. Guan will not object to the government using the term "victim" when referring to those who experienced the fraud or identity theft specified unlawful activity. We note that the government appears to concede that it will not use the term "victim" when referring to the money laundering conspiracy charged here. (*Id.*)

However, the government appears to still contend that it should be permitted to refer to taxpayers as victims of fraud. (*Id.* at 42 ("[U]se of the term 'victim' in reference to . . . taxpayers . . . affected by public benefit theft . . . is appropriate.").) It is not surprising that the government does not cite a case supporting this proposition, as numerous courts have held that referring to taxpayers as victims is manifestly improper since it implicates the jury's pecuniary interest in the case as taxpayers themselves. (Guan MIL Br. at 10 (quoting cases)); *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007) ("Remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper."); *United States v. Schimmel*, 943 F.2d 802, 806 (7th Cir. 1991) ("[A]n appeal to the pecuniary interests of the jurors is unquestionably an unacceptable predicate for argument in a criminal trial . . . ."). Therefore, the government should not be permitted to refer to taxpayers as victims, which would encourage the jury to deviate from its neutrality and decide the case based on personal interest and bias.

VI.    THE GOVERNMENT APPEARS TO CONCEDE THAT IT MUST LINK THE MONEYS ALLEGED TO BE INVOLVED IN THE MONEY LAUNDERING CONSPIRACY TO SPECIFIED UNLAWFUL ACTIVITY

Mr. Guan moved to preclude the government from asserting an amount of money laundered in the conspiracy without first establishing an evidentiary connection to specified unlawful activity. (Guan MIL Br. at 6-9.) Mr. Guan's Motion noted that the government has, from the beginning of this case, demonstrated an inclination to tout huge figures that purportedly quantify the scale of the alleged money laundering conspiracy and has repeatedly changed positions as to what the actual amounts are. (*Id.* at 6-8.) As a result, Mr. Guan asked the Court to

bar the government from stating to the jury a dollar figure of the underlying fraud or theft of cards to quantify the scale of the conspiracy unless the government establishes a connection, based on competent evidence, between the stated figure and the specified unlawful activity. (*Id.* at 7-9.)

In its opposition brief, the government now suggests that the alleged conspiracy involved "tens of millions" of dollars of crime proceeds, (Gov't Opp'n Br. at 31-32), i.e., an indefinite estimate that is different from the allegation in the Indictment that the conspiracy involved at least $67 million or all or substantially all of the monies that were transferred by MMO as reflected in the bill of particulars correspondence. The government concedes, however, that it is "required to link the moneys [alleged to be involved in a money laundering scheme] to specified unlawful activities[]" (*id.* at 30 (quoting *United States v. Gotti*, 459 F.3d 296, 337 (2d Cir. 2006))), and Mr. Guan does not dispute that the government can refer to the amount of such crime proceeds so long as it has a *good faith* basis for doing so, based on competent evidence. As a result, we respectfully submit that there is nothing for the Court to rule on at this time. That said, should the government state a figure or figures at trial that cannot be sustained by a good faith estimate of what the admissible evidence will show (accounting for whatever evidence that is excluded as a result of Mr. Guan's motions *in limine* or otherwise), we submit that the undue prejudice to Mr. Guan would be significant; in that case, Mr. Guan reserves his rights to seek an appropriate remedy.

VII. MR. GUAN AGREES THE COURT CAN DECIDE LATER WHETHER TO PROVIDE THE JURY WITH THE INDICTMENT OR EXCLUDE EVIDENCE OF METADATA

As noted in his Motion, Mr. Guan does not at present seek any relief regarding whether the Indictment should be submitted to the jury or whether evidence of a document's metadata

should be admitted. Mr. Guan agrees that those issues may be appropriately addressed as they arise at trial and reserves all rights on these issues.

CONCLUSION

For the foregoing reasons, Mr. Guan respectfully requests that the Court (1) grant his Motions *in Limine* in their entirety, and (2) grant such other and further relief as the Court deems appropriate.

Dated: New York, New York
      June 19, 2026

PETRILLO KLEIN + BOXER LLP

By: /s/ *Guy Petrillo*
     Guy Petrillo
     Kevin R. Puvalowski
     Marcelo A. Triana
     Shanice D. Hinckson
     655 Third Avenue, 12th Floor
     New York, New York 10017
     Tel: 212-370-0330
     gpetrillo@pkbllp.com
     kpuvalowski@pkbllp.com
     mtriana@pkbllp.com
     shinckson@pkbllp.com

     *Counsel for Weidong Guan*