

Timothy C. Parlatore, Esq.

Managing Partner

timothy.parlatore@parlatorelawgroup.com

Direct: 212-679-6312

June 22, 2026

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re: *United States v. Guan & Hung, No. 24-cr-0322 (VM), Supplemental Submission in Further Support of Defendant Le Van Hung's Motion for Classified-Materials Review Under CIPA § 4*

Dear Judge Marrero:

We write briefly, as a supplement to Mr. Hung's Reply, to address a single point the Government's opposition placed squarely in issue: what compliance with the requested relief actually entails. We do not reargue the motion; we respond only to the burden objection the Government itself injected — its characterization of the requested review as "staggering," "boundless, intrusive, and costly," and a demand to search "the eighteen agencies of the intelligence community." Because that characterization mischaracterizes the process, and because the point bears directly on today's conference, we address it now and are content for the Government to respond at the conference or in writing as the Court prefers.

The point is narrow but important. The hard part of compliance here is not the search. The search is a defined Department procedure, conducted through centralized national-security channels. The hard part is the step that procedure requires the trial team to take first: bringing this case to the attention of the National Security Division. That is the step the Government resists — and, as set out below, the reason it resists that step is the strongest reason the Court should require it. The descriptions of Intelligence Community systems below are drawn solely from public, unclassified sources.[1]

**I. Compliance Runs Through a Named Department Procedure — the "Prudential Search" — Not an Agency-by-Agency Expedition.**

The Department of Justice has publicly defined a named mechanism directly relevant to what Mr. Hung requests: a *prudential search*. The Department's own Criminal Resource Manual defines it — as a federal court has reproduced on the public record — as "[a] search of Intelligence

---

[1] All descriptions of Intelligence Community information systems in this letter are drawn solely from publicly available, unclassified sources, and are offered only to describe — at an unclassified level — the centralized nature of the process the Government's opposition mischaracterizes. Nothing herein reflects or discloses any classified or non-public information.

Licensed to Practice by the States of New York and New Jersey
U.S. District Courts in New York, New Jersey, Connecticut, Pennsylvania, Texas, and the District of Columbia

Parlatore Law Group is a nationwide cloud-based firm. Please send all correspondence electronically.

If physical mail is required, please use the central mailing address below.

www.parlatorelawgroup.com  1440 N Edgewood St, Arlington VA 22201

Community (IC) files . . . for pre-existing intelligence information," undertaken when "the prosecutor and the Department have objective articulable facts justifying the conclusion that the files in question probably contain classified information that may have an impact upon" the case. *In re Extradition of Omar Ameen*, 378 F. Supp. 3d 902, 907 n.8 (E.D. Cal. 2019) (quoting DOJ Criminal Resource Manual § 2052(A)). That the court in that extradition matter ultimately denied the discovery sought on the record before it does not diminish the point for which the definition is offered here: the search Mr. Hung requests is a procedure the Department itself has named and defined, not a defense invention. And by the Department's own terms, "[a] prudential search *should include* a search for *Brady* material and other information that would be subject to the government's post-indictment discovery obligations." *Id.* (emphasis added).

That description is dispositive of the "fishing expedition" label. A search of Intelligence Community holdings for *Brady* material is not an extraordinary undertaking; it is a procedure the Department has named, defined, and conducts in appropriate cases — and one that, by the Department's own description, "should include" precisely the *Brady* search the Government here resists.

### II. The Process Is Centralized Through the National Security Division — Line Prosecutors Do Not Personally Canvass Eighteen Agencies.

The "eighteen agencies" image is a strawman of the Government's own construction. The Department's structure is designed so that a prosecution facing a national-security or classified-discovery issue consults *one* component — the National Security Division. The Justice Manual requires consultation with NSD, including its Counterintelligence and Export Control Section ("CES"), for national-security matters, and governs contacts with the Intelligence Community in criminal investigations and prosecutions. *See* Justice Manual §§ 9-90.020, 9-90.200, 9-90.210 (https://www.justice.gov/jm/jm-9-90000-national-security). And Department regulations assign to the Assistant Attorney General for National Security the function, "[s]ubject to the general supervision of the Attorney General and the Deputy Attorney General," to "[r]eview for concurrence" the Department's use of criminal proceedings in matters arising under the espionage laws and other statutes pertaining to the national security. 28 C.F.R. § 0.72(a) (https://www.ecfr.gov/current/title-28/chapter-I/part-0/subpart-N/section-0.72).

The defense has never asked the trial team to approach eighteen agencies individually, and the governing structure does not contemplate it. Under that structure, the prosecution's task is to consult NSD; it is not to canvass the Intelligence Community itself. The "boundless [and] intrusive" exercise the Government describes is not the process the defense requests or the law contemplates.

### III. The Intelligence Community Maintains Centralized, Cross-Agency Information-Sharing Infrastructure — As the Public Record Establishes.

The "costly" and "boundless" objection also ignores publicly documented fact: the Intelligence Community built centralized, cross-agency information-sharing infrastructure precisely so that locating and sharing responsive intelligence does not require a separate, bespoke canvass of each agency.

JWICS — the Joint Worldwide Intelligence Communications System — is, as publicly reported based on Defense Intelligence Agency statements, "the government's network for hosting Top Secret and Sensitive Compartmented Information, where the Defense Department and the

Intelligence Community store their most confidential intelligence," and is described as "the top-secret network for the entire federal government." Brad D. Williams, *DIA details push to modernize top-secret network*, Breaking Defense (Nov. 17, 2021) (https://breakingdefense.com/2021/11/dia-cio-details-push-to-modernize-top-secret-network-amid-150-uptick-in-cyber-threats/). Riding on that network is Intelink — publicly described as the Intelligence Community's information-sharing and collaboration environment, enabling the Community and its partners to share intelligence and collaborate across agencies; its top-secret tier, Intelink-TS, facilitates sharing intelligence products up to the Top Secret/Sensitive Compartmented Information (SCI) level and operates on JWICS.[2]

The significance for this motion is simple. The Intelligence Community maintains centralized capability, on systems it built for exactly this purpose, to identify and share intelligence across agency lines. A prudential search channeled through NSD across that existing architecture is the ordinary operation of a system the Government itself created — the opposite of the "boundless, intrusive, and costly" undertaking the opposition conjures.

### IV. The Court's Role Is the Modest, Familiar One — Ex Parte, In Camera Review.

Once any responsive classified material is identified, the back-end process is familiar and entirely judge-controlled. The Government submits the material for the Court's review *ex parte* and *in camera*, and may propose deletions, summaries, or substitutions under CIPA § 4 and Rule 16(d)(1). *United States v. Aref*, 533 F.3d 72, 78–81 (2d Cir. 2008); *United States v. Stewart*, 590 F.3d 93, 130–32 (2d Cir. 2009); *United States v. Al Farekh*, 956 F.3d 99, 112–17 (2d Cir. 2020). Nothing about this requires public litigation over classified holdings, or judicial supervision of the Intelligence Community. The entire arc — an NSD-channeled prudential search, followed by *in camera* judicial review — is bounded, ordinary, and well within this Court's established authority. Without suggesting that counsel's clearance alters the Court's authority under CIPA § 4, undersigned counsel holds an active TS/SCI clearance and remains available to review any materials at a facility of the Government's choosing, should that assist the process.

### V. The Real Obstacle Is Not the Search — It Is the Referral to the National Security Division; and the Sovereign's Interest Requires Making It.

If compliance is this contained, the question answers itself: why does the Government resist it? The answer is not burden, and it is not cost. The answer is that the prudential-search procedure requires the trial team to bring this case to the attention of the National Security Division — and the trial team is litigating to avoid the very institutional review the Department's own structure is designed to ensure. As in the Reply, Mr. Hung does not contend that these internal procedures create an enforceable right; he cites them only to describe what compliance routinely entails, and to show that the Government's burden objection is unfounded.

That resistance is also the source of the only real delay in this case. Mr. Hung first requested this search by letter dated June 2, 2026. Had the trial team, on receiving that request, done what the Department's procedures contemplate — referred the matter to NSD and initiated a prudential

---

[2] *See* Brad D. Williams, *DIA details push to modernize top-secret network*, Breaking Defense (Nov. 17, 2021), https://breakingdefense.com/2021/11/dia-cio-details-push-to-modernize-top-secret-network-amid-150-uptick-in-cyber-threats/; Gary M. Bald, Executive Assistant Director, FBI, Statement Before the H. Comm. on Homeland Security, Subcomm. on Intelligence, Information Sharing, and Terrorism Risk Assessment, *Enhancing Information Sharing Initiatives* (Sept. 21, 2005).

search — that search could have been completed by now, weeks before the July 7 trial date. And had the search come back empty, there would be no occasion to disturb the trial schedule at all; the issue would simply be resolved. The trial date is now in jeopardy not because the defense raised this issue, and not because the search is burdensome, but because the trial team has spent the intervening weeks resisting a contained step rather than taking it. Whatever continuance proves necessary is therefore a consequence of the Government's own refusal — not a cost properly laid at the defense's feet.

This brings the matter to first principles. A federal prosecutor represents the United States, and the Government's "interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done"; the prosecutor is, "in a peculiar and very definite sense, the servant of the law." *Berger v. United States*, 295 U.S. 78, 88 (1935). Discretionary judgments about how the public interest is served must be made by a "disinterested prosecutor," exercising independent judgment in the public interest. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803–07 (1987) (https://supreme.justia.com/cases/federal/us/481/787/). The Department centralizes national-security decisions in NSD for precisely this reason: the question whether a foreign adversary may have shaped a federal prosecution is not one that a trial team, measuring its success in convictions, should resolve unilaterally — least of all by declining to refer the matter to the very component charged with that judgment. The United States' paramount interest is in ensuring that the People's Republic of China has not weaponized this country's own justice system against the very dissidents the PRC seeks to silence. That interest is *vindicated* by the requested review, not threatened by it.

## CONCLUSION

There is, admittedly, a lack of case law directly on point on the issue of compelling the Government to conduct a prudential search. But Defendant submits that the lack of case law is because the Government ordinarily does not resist following its own procedures, as the trial team has done here. The Trail Team's reluctance to take a step this contained is itself the strongest indication that the step is necessary.

For the reasons set forth in the Reply and herein, Mr. Hung respectfully requests that, at or following tomorrow's conference, the Court direct the Government to (1) conduct, through the National Security Division and its Counterintelligence and Export Control Section, a prudential search of the files and holdings reasonably accessible to it concerning the categories identified in Mr. Hung's motion; (2) submit any responsive materials for *in camera* review under CIPA § 4; and (3) confirm whether the National Security Division was consulted and whether any prudential search, counterintelligence assessment, or comparable review of this case has been conducted. We are prepared to address these matters at tomorrow's conference.

Respectfully submitted,

Timothy C. Parlatore

4