UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>    v.<br><br>WEIDONG GUAN,<br>    a/k/a "Bill Guan,"<br><br><i>Defendant</i>.</td><td>No. 24-cr-322 (VM)<br><br>ORAL ARGUMENT REQUESTED</td></tr>
</table>

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT WEIDONG GUAN'S MOTION TO COMPEL**

## <u>INTRODUCTION</u>

As one court in this district has held, "[t]hat separate government agencies having overlapping jurisdiction will cooperate in the factual investigation of the same alleged misconduct makes perfect sense; but ***that they can then disclaim such cooperation to avoid their respective discovery obligations makes no sense at all***." *United States v. Gupta*, 848 F. Supp. 2d 491, 492 (S.D.N.Y. 2012) (emphasis added). But that is precisely what the Government has done here.

Inexplicably, the Government has opted for a legally expedient path – arguing that it is "too late" to entertain Mr. Guan's request for *Brady* and *Giglio* discovery to which he is constitutionally entitled as it attempts to bulldoze its way to trial. The burden on the Government to run its checks, and explain which agencies were part of its investigation (and then search and produce their files) is minimal. By contrast, the prejudice to Mr. Guan and the harm he would suffer if deprived of material evidence possessed by any of these agencies is significant.

Thus, this Court should direct the prosecutors to search the files of each and every agent at each and every agency that they partnered with in their investigation. And, as the Court remarked at the pretrial conference earlier this week, the Government should "address … the nature and extent of the prosecution's relationship" with these agencies and "clarify exactly what agencies were part of the prosecution team and what role the agencies that defendant has mentioned played in the matter." (Hr'g Tr. dated June 23, 2026 ("June 23 H'rg") at 21:13–17; 25:19–22.) This information will assist this Court in determining whether certain agencies are part of the prosecution team. At any rate, as the Court further observed at this week's pretrial conference, "this is a very important matter," and the consequences of a violation of Mr. Guan's due process rights are far too grave to merely accept the Government's hollow assurances at face value and

proceed to trial.  There are at least four reasons that would justify the relief that Mr. Guan seeks here.

*First*, the Government *admits* that two agencies – **DOL-OIG** and **DSS** – contributed personnel who were involved in the investigation for the past five years such that their files should be searched for *Brady* or *Giglio* information.  While the Government argues that it isn't required to search the files of these agencies because Mr. Guan only seeks "intelligence" materials – and these agencies aren't part of the "intelligence community" – Mr. Guan's motion is not limited in any way by agency or type of information.  Rather, Mr. Guan seeks any *Brady* or *Giglio* material, classified or unclassified, whether possessed by law enforcement, intelligence, or any other government agency that was part of the joint investigation, and could reasonably cast the Government's theory in a different light and undermine confidence in the verdict.  Given the extensive involvement of DOL-OIG and DSS in investigating this case, at a minimum, the Government must search for and produce the Requested Documents in the possession, custody, and control of those agencies.

*Second*, the Government has all but admitted that there is a *third* agency – the **CBP** – that jointly investigated the case.  The Government's latest disclosure appears buried in a footnote in its opposition brief, where it ascribes classic case agent responsibilities to CBP:  assisting prosecutors with obtaining and executing search warrants, running queries about potential subjects, and reviewing search warrant returns.  The CBP is clearly a part of the prosecution team no matter how many times the prosecutors in this case say it isn't, and its files must be searched for *Brady* and *Giglio* material.

*Third,* the Government in its response *still* has yet to disclose – in clear and unambiguous terms – whether and how many *other* agencies were involved in the investigation of this case.

Every time Mr. Guan has challenged DOJ's refusal to provide information on these critical and constitutional issues, the Government has then disclosed more information.  But only in dribs and drabs.  Indeed, at the pretrial hearing the Court observed that "[i]t is apparent … that matters were brought into this proceeding that may not have been fully considered before the hearing" (June 23 Hr'g 25:15–17) – recognizing that the Government's selective and ongoing disclosure of information over time has created a shifting, growing, and ever-changing record on which agencies it has worked with.  For example, the Government for the first time discloses the distinct roles that the FBI and the NYPD played – both of which appear to have jointly investigated the case with the prosecution team – but stop short of providing full details.  Given the Government's record of dribbling out critical information about various agencies' roles and responsibilities, this Court should grant Mr. Guan's request directing the prosecutors to submit affidavits fully explaining the roles and responsibilities of each and every agency involved in its investigation and prosecution of Mr. Guan.[1]

*Finally,* while the Government disputes the materiality of the Requested Documents, courts routinely hold that evidence is material if it would cast the Government's case in a different light and undermine confidence in the verdict.  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citation omitted).  Evidence that the CCP was targeting and seeking to interfere with the lives of Mr. Guan, his family, his Falun Gong community, and his colleagues at *The Epoch Times* would provide the jury with an alternative interpretation of alleged conduct by Mr. Guan which the Government

---

[1]    Indeed, in view of the Government's ongoing lack of transparency on this issue, and the impact that any *Brady* or *Giglio* evidence possessed by agency can have on Mr. Guan's knowledge and intent-based defenses at trial, the Government should affirmatively take steps to assure the defendants and this Court that no stone is left unturned, and that confirm that its search of the FBI, National Security Division, and any other relevant intelligence or counterintelligence agency files have – or have not – yielded any relevant information.

characterizes as suspicious and indicative of his intent to violate the law.  It would explain the innocent reasons why Mr. Guan engaged in this conduct – to elude and foil CCP attacks rather than to evade detection by the U.S. law enforcement and banking authorities.  And critically, it would provide Mr. Guan with the ability to impeach the credibility of any Government witness seeking to testify about the allegedly unusual and suspicious nature of Mr. Guan's conduct.  Such evidence unquestionably qualifies as *Brady* and *Giglio* material under those decisions and their progeny.

**ARGUMENT**

I.    **The Government Admits That <u>DOL-OIG</u> and <u>DSS</u> Are Part of the Prosecution Team.**

In its opposition, the Government readily admits that "two agencies that contributed personnel to assist" the prosecution team "after the first several weeks are the U.S. Department of Labor's Office of Inspector General ('DOL-OIG') and the U.S. Department of State's Diplomatic Security Service ('DSS')."  (Gov't Opp. to Guan Motion to Compel ("Opp."), Doc. No. 173 at 4–5.)  And, the Government previously characterized DOL-OIG and DSS as "investigating agencies" that helped investigate and charge the case from February 2021 to the present.  (Gov't Opp. to Defs. Pretrial Motions ("Opp. to Pretrial Motions"), Doc. No. 104 at 8.)  Thus, by the Government's own admissions, these agencies participated to such an extent and degree in the investigation and prosecution of Mr. Guan that the prosecutors unquestionably have a "duty [that] extends to reviewing the materials in the possession" of DOL-OIG and DSS "for *Brady* evidence." *United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012).

But instead of telling this Court and Mr. Guan that it will at least search the files of DOL-OIG and DSS, the Government bizarrely seeks to skirt its *Brady* and *Giglio* obligations by mischaracterizing Mr. Guan's motion as one for strictly "intelligence" materials and arguing that

5

because neither agency "is a member of the intelligence community"[2] any relevant "materials that the intelligence community may or may not have are not within the possession, custody, or control of the prosecution team in this case." (Opp. at 5.)

The Government's myopic focus on "intelligence" materials and agencies reveals its fundamental misunderstanding of Mr. Guan's motion. Mr. Guan seeks *Brady* and *Giglio* material – whether classified *or* unclassified from government agencies – whether law enforcement *or* intelligence agencies – or any other type of agency for that matter – that jointly investigated this case with the U.S. Attorney's Office. (*See, e.g.*, Guan Motion to Compel ("Motion to Compel"), Doc. No. 165 at 3 (seeking Requested Documents consisting of "classified and unclassified evidence" belonging to "U.S. law enforcement or counterintelligence agencies"), 12 (same), 21 (same).) The test of whether the Government must search for and produce relevant materials in the possession of an agency like DOL-OIG or DSS is *not* whether they are intelligence agencies – or whether this is an intelligence case – but whether the agency in question "engaged in joint fact-gathering," *Gupta*, 848 F. Supp. 2d at 494, such that its agents were effectively "an arm of the prosecutor or part of the prosecution team." *United States v. Meregildo*, 920 F. Supp. 2d 434, 440–41 (S.D.N.Y. 2013) (quotations omitted).

Here, the Government investigated and brought charges with the assistance of DOL-OIG and DSS *since February 2021.* (Opp. to Pretrial Motions at 8.) According to their own

---

[2]  While the DSS may not be an intelligence agency *per se*, any suggestion by the Government that the DSS does not possess intelligence (or counterintelligence) materials that may be subject to disclosure under the Classified Information Procedures Act (CIPA) is directly belied by the State Department's own description of the DSS: "DSS conducts *aggressive counterintelligence inquiries and counterespionage investigations with other U.S. government agencies.* All counterespionage investigations are conducted in close coordination with the FBI." (Counterintelligence Investigations, Dep't of State, available at: https://2021-2025.state.gov/counterintelligence-investigations/) (emphasis added).

representations to this Court, for more than five years, DOL-OIG and DSS helped the prosecution team gather facts, investigate, and even make charging decisions. (*See id.* (this "case was jointly investigated by, and ultimately charged with the assistance of" DOL-OIG and DSS).) The extent and nature of these agencies' involvement in the investigation makes them (and their participating agents) "so closely aligned with the prosecution so as to be considered part of the 'prosecution team.'" *United States v. Chalmers*, 410 F. Supp. 2d 278, 290 (S.D.N.Y. 2006).

The Government cites *United States v. Kwok*, 2024 WL 732109 (S.D.N.Y. Feb. 21, 2024) – a case cited in Mr. Guan's motion – as authority that "supports, rather than undermines, the Government's position here." (Opp. at 7.) But *Kwok* is totally inapplicable on the specific issue of whether the files of agencies other than the immediate prosecution team should be searched. In *Kwok*, the defendant made a sprawling and unspecified demand on the Government to search the files of "any other U.S. government agency" without providing any "legal support for this broad request." *Id.* at *5. By stark contrast, Mr. Guan has identified specific agencies by name – *e.g.*, DOL-OIG, DSS, and CBP – and provided specific factual and legal support as to why their files should be searched. (*See* Motion to Compel at 18–20 (citing specific facts from press release and citing *United States v. Cerna*, 633 F. Supp. 2d 1053, 1059 (N.D. Cal. 2009), for the holding that the "official press release[] in this case made clear that at least [three] federal agencies must be deemed 'agents' involved in the investigation for *Brady* purposes"); *see also* Motion to Compel at 8 (citing Opp. to Pretrial Motions and quoting Government's representations to this Court about DOL-OIG and DSS's participation in investigating and charging this case).)

II.    **The CBP's Assistance to the Prosecutors Reflects Classic Case Agent Activities and Responsibilities.**

In its opposition brief, the Government effectively concedes that a *third* agency – whose role it minimized until Mr. Guan filed his motion – occupied a substantial role in the joint investigation of this case.  For the first time ever, the Government shares that CBP:

> **helped review the returns from the first search warrant obtained in this case** … **ran queries in its systems related to certain subjects**, **and**, when a subject arrived at John F. Kennedy International Airport in July 2023, **the USAO-SDNY coordinated with CBP in order to covertly execute a search warrant on that subject's electronic devices.**"

(Opp. at 5 n.3 (emphasis added).)  This is *exactly* the type of work that case agents – who are undoubtedly part of the "prosecution team" – perform in other cases with the U.S. Attorney's Office every day of the week.  And, this information raises additional questions about what kinds of queries – and on which subjects – CBP and other agencies were asked to run, the results that such queries generated, and whether these materials constitute the Requested Documents at issue in Mr. Guan's motion.  In any event, based on CBP's assistance and involvement in this case, it is unquestionably a part of the prosecution team.  This Court should therefore direct the Government to search the files of any and all CBP agents that assisted the prosecution team for the Requested Documents.

III.    **The Government Must Disclose All Personnel Involved In the Investigation and Their Roles and Responsibilities So This Court Can Determine For Itself Whether Any Other Agency Jointly Investigated This Case.**

At every turn in this process, the Government has categorically rejected Mr. Guan's position that the files of other agencies are relevant and should be searched.  Each time the Government has been challenged on its categorical refusal to do anything, Mr. Guan has learned something new.  And each time another layer of the onion is peeled back, the Government dribbles out more information than it did previously.  While the Government may be willing to assume the

risk that no additional *Brady* and *Giglio* material exists, neither this Court nor Mr. Guan should be forced to accept the risk that such vital information is withheld from a defendant like Mr. Guan who is facing serious criminal charges based on the Government's responses to these critical questions to date.

The Government in its response has revealed more information about other agencies – namely, the FBI and NYPD – that may have jointly investigated the case. (Opp. at 5 n.3, 6.) While the Government seeks to diminish the extent of their involvement, it should be compelled to provide more information via affidavit so that this Court can determine – one way or the other – whether these agencies and their participating agents would qualify as part of the prosecution team.

Moreover, while the Government complains that it should not be forced to search the dozens of federal, state, and local agencies that make up OCDETF, it should at least represent to this Court to what degree, if any, each of these agencies participated in the investigation and prosecution of this case. The Government previously has represented to the public in its press release that this case – and the resulting prosecution – is the product of an "intelligence-driven, multi-agency" approach in an "OCDETF operation." This Court should at the very least compel the Government to explain via affidavit which of the agencies in the "multi-agency approach" investigated this case alongside the U.S. Attorney's Office. This approach is entirely consistent with the relief that other courts previously have granted in similar cases: requiring the government to submit affidavits "describing with specificity the nature and extent of the prosecutors' … relationship with [other agencies] during their investigations of the Defendant," including the "nature of all communications" and the extent of the information shared. *United States v. Alexandre*, 2022 WL 16798756, at *4 (S.D.N.Y. Nov. 8, 2022).

9

**IV.    Mr. Guan Seeks Textbook *Brady* and *Giglio* Material That Is Highly Likely To Exist.**

The Government argues that Mr. Guan's request for *Brady* and *Giglio* material is based on "entirely conclusory allegations that fail to demonstrate that the information [he] seek[s] even exists (or is even likely to exist)." (Opp. at 8.)  And it further disputes the materiality of the Requested Documents on the basis that Mr. Guan cannot demonstrate that he "contemporaneously knew" about such information.  (Opp. at 10.)  The Government is wrong on both points.

*First*, Mr. Guan's motion articulates in reasonably specific detail – with ample support from an extensive public record – why the Requested Documents are likely to exist.  There is no dispute that the PRC and CCP have long waged a transnational campaign to repress members of Falun Gong and *The Epoch Times*, a publication with close ties to Falun Gong.  The Government's previous prosecutions of PRC and CCP agents for such repressive conduct substantially increases the likelihood that evidence of the CCP specifically targeting Falun Gong members and *The Epoch Times* executives exists.  Indeed, in *Kwok*, the court directed the Government to produce virtually the same categories of evidence (*e.g.*, CCP targeting) that Mr. Guan has requested here because the CCP's transnational repression campaign is well-known, well-documented, and targets prominent dissidents and their movements.  *Kwok*, 2024 WL 732109, at *3 (directing disclosure of "evidence related to the CCP's targeting of Kwok, his family, his co-defendants, and the corporate entities relevant to the indictment") (alterations omitted).

*Second*, the Government's contention that Mr. Guan lacked contemporaneous knowledge of the information he seeks is simply wrong.  Mr. Guan's motion cited several examples of the PRC and CCP's attacks on the two groups that Mr. Guan is most closely associated with – Falun Gong and *The Epoch Times*.  Mr. Guan would therefore have known about, anticipated, and feared the threat that the PRC and CCP were targeting him, his family, his Falun Gong community, and

10

his colleagues at *The Epoch Times.*  And Mr. Guan's contemporaneous knowledge that the PRC and CCP are constantly targeting and seeking to infiltrate the lives of Falun Gong members *is* the very reason why evidence of a transnational repression campaign would undercut the Government's theory that he knowingly violated the money laundering conspiracy and bank fraud statutes.

The Government accuses Mr. Guan of engaging in suspicious conduct – layering transactions to conceal the illicit source of funds that were transferred through thousands of accounts and lying to banks.  But Mr. Guan did not engage in this conduct to violate the law – he did so out of his fear and knowledge that the CCP was watching him and seeking to infiltrate every aspect of his life.  And in doing so, Mr. Guan's intent was to elude and foil CCP attacks, rather than to evade detection by the U.S. law enforcement or banking authorities.

The Requested Documents therefore present an "alternative, nonculpable explanation" of Mr. Guan's conduct.  *Id.* at *3–4 ("evidence of CCP targeting provides an alternative explanation for [defendant's] use of multiple cellphones and bank accounts" as a countermeasure to "avoid the Chinese government's efforts to interfere with his accounts or hack his phones"); *United States v. Percoco*, 2017 WL 6314146, at *23 (S.D.N.Y. Dec. 11, 2017) (evidence that "speaks to [defendant's belief or understanding" as to the appropriateness of particular conduct is *Brady* evidence).

Moreover, evidence that U.S. law enforcement and intelligence agencies have surveilled the CCP's and PRC's efforts to infiltrate Guan, and the Falun Gong and *The Epoch Times* community – and their counterintelligence records of such CCP and PRC activity in the United States – would confirm that Mr. Guan's fears of CCP and PRC targeting aren't just his subjective musings, but are "objectively legitimate," credible, and can be "used to counter the Government's

11

case or bolster his defense." *Id*. at *3. And while the issue of "[w]hether Guan's explanations ultimately hold water is, of course, a question for the jury," *Kwok*, 2024 WL 732109 at *4, the Requested Documents are nevertheless material evidence for Mr. Guan's defense, and the Court should therefore compel the Government to produce them.

Finally, even if Mr. Guan lacked contemporaneous knowledge about the information he seeks through the Requested Documents, such evidence still can be used to impeach the Government's witnesses, who may – for example – testify about the allegedly unusual or suspicious nature of Mr. Guan's conduct. Evidence of CCP and PRC targeting would provide the appropriate context in which the jury could fully evaluate Mr. Guan's conduct and weigh the credibility of the testimony of the Government's witnesses. *See United States v. Diaz*, 176 F.3d 52, 108 (2d Cir. 1999) (evidence is material "where [its] likely impact on the witness's credibility would have undermined a critical element of the prosecution's case"); *United States v. Hamilton*, 373 F. App'x 95, 97 (2d Cir. 2010) (*Brady* material includes that which "can be used to impeach government witnesses").

**CONCLUSION**

For the foregoing reasons, Mr. Guan's motion to compel should be granted.

Dated:  New York, New York
   June 25, 2026

Respectfully submitted,

KASOWITZ LLP

By: *Edward E. McNally*
  Edward E. McNally
  Daniel J. Fetterman
  Ann M. St. Peter Griffith (*pro hac vice*)
  Brian S. Choi

  1633 Broadway
  New York, New York 10019
  Tel.:  (212) 506-1700

Email: emcnally@kasowitz.com
        dfetterman@kasowitz.com
        astpetergriffith@kasowitz.com
        bchoi@kasowitz.com

PETRILLO KLEIN + BOXER LLP

Guy Petrillo
Kevin R. Puvalowski
Marcelo Triana
Shanice Hinckson

655 Third Avenue, 12th Floor
New York, New York 10017
Tel.:  (212) 370-0332
Email:  gpetrillo@pkbllp.com
        kpuvalowski@pkbllp.com
        mtriana@pkbllp.com
        shinckson@pkbllp.com

*Counsel for Defendant Weidong Guan*