USDC SONY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/30/26___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

          - against -

WEIDONG GUAN and LE VAN HUNG,

          Defendants.

---

**24 CR. 0322 (VM)**

**DECISION AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

Defendant Weidong Guan ("Guan") is charged with one count of money laundering conspiracy and two counts of bank fraud. (See Dkt. No. 5 at 9-11.) A trial in this matter is scheduled to begin on July 7, 2026. Now before the Court are the motions in limine filed by Guan and the Government.[1] A summary of the Court's rulings on the parties' motions in limine is provided below.

(1) The Government's motion for authentication and admission of certain documentary evidence is GRANTED IN PART. The Court otherwise reserves decision on this motion.

(2) The Government's motion to admit the statements of agents and co-conspirators is DENIED without prejudice to renew at trial.

---

[1] In addition to Guan and the Government, defendant Le Van Hung ("Hung") also filed motions in limine. (See Dkt. No. 147.) On June 29, 2026, Hung entered a plea of guilty to Count One of the Superseding Information. (See Dkt. No. 184.) By separate order, the Court accepts Hung's guilty plea. (See Dkt. No. 189.) Accordingly, Hung's motions in limine are moot.

(3) The Government's motion to exclude the expert testimony of Matthew Price is GRANTED IN PART and DENIED IN PART.

(4) The Government's motion to exclude the expert testimony of James Shanahan is GRANTED IN PART and DENIED IN PART.

(5) The Government's motion to preclude argument concerning reliance on advice of counsel is GRANTED IN PART and DENIED IN PART.

(6) The Government's motion to preclude evidence and argument concerning improperly motivated prosecution is GRANTED IN PART and DENIED IN PART.

(7) The Government's motion to preclude evidence concerning punishment and consequences is GRANTED.

(8) The Government's motion to preclude evidence of Defendant's prior good acts is GRANTED.

(9) The Government's motion to preclude evidence of Defendant's personal characteristics is GRANTED IN PART and DENIED IN PART.

(10) The Court reserves decision on Defendant Guan's motion to exclude evidence concerning internal communications at corporate institutions.

(11) The Court reserves decision on Defendant Guan's motion to exclude evidence concerning out-of-court declarants' fraud- and theft-related complaints.

(12) Defendant Guan's motion to preclude assertions concerning the amount of money laundered is DENIED without prejudice to renew at trial.

(13) Defendant Guan's motion to preclude certain statements concerning "victims" is GRANTED IN PART and DENIED IN PART.

(14) Defendant Guan's motion to exclude victim impact testimony is DENIED without prejudice to renew at trial.

(15) Defendant Guan's motion to exclude evidence of uncharged conduct is GRANTED IN PART and DENIED IN PART.

(16) Defendant Guan's motion to exclude evidence and arguments regarding Guan's tax returns is DENIED.

## I.    DISCUSSION[2]

A.    THE GOVERNMENT'S MOTIONS IN LIMINE

1.    Authentication and Admission of Certain Documentary Evidence

The Government requests approval to introduce certain business records under Federal Rules of Evidence ("Rules") 803(6) and 902(11). (See "Gov't MIL," Dkt. No. 149 at 7–8.) At the pretrial conference on June 23, 2026, counsel for the Government and Guan stated that they would confer regarding the admission and potential redaction of those records and inform the Court of any resulting agreement. Accordingly, the Court reserves decision on this request until after its review of the parties' submission. If necessary, the Court will rule on the admissibility of the proffered business records by separate order at that time.

The Government also moves to authenticate evidence containing "electronically stored and processed data" produced by internet service providers and other companies under Rule 902(13). (Gov't MIL at 10.) Pursuant to Rule 902(13), records that are "generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the

---

[2] The Court assumes the parties' familiarity with the factual background of this case, which the Court previously described in its decision and order denying the Defendants' pretrial motions. (See Dkt. No. 110.)

certification requirements of Rule 902(11) or (12)," are self-authenticating. Fed. R. Evid. 902(13). For each record of electronically stored data that it seeks to authenticate, the Government has submitted records custodians' certifications that comply with the procedural requirements of Rule 902(11) and attest that the records were generated by an electronic process or system that produces an accurate result. The Government has also satisfied the notice requirement of Rule 902(13) by filing its Motion in the public record of this action. See United States v. Carter, No. 21-CR-681, 2024 WL 268248, at *4 (S.D.N.Y. Jan. 24, 2024). Accordingly, the exhibits are self-authenticating under Rule 902(13) without the need for extrinsic evidence of authenticity or the live testimony of a records custodian. See, e.g., United States v. Palmer, No. 24-CR-0067, 2025 WL 2978633, at *10 (S.D.N.Y. Oct. 21, 2025); United States v. Otufale, 740 F. Supp. 3d 233, 249 (E.D.N.Y. 2024).

The Government's motion is, therefore, GRANTED IN PART to the extent it requests permission to authenticate by certification the evidence consisting of electronically stored data. (See Gov't MIL at 10–12.) The Court reserves decision as to the authentication and admission of the proffered business records.

2.    <u>Admission of Statements of Agents and Co-Conspirators</u>

The Government moves to admit statements as statements by co-conspirators of Guan pursuant to Rule 801(d)(2)(E) or, in the alternative, as statements of agents of Guan pursuant to Rule 801(d)(2)(D). Guan opposes the motion as premature. (<u>See</u> "Guan Opp'n," Dkt. No. 162 at 3-4.)

The Government concedes that it is "premature and inefficient to litigate exhibit by exhibit at this time" but argues that the Court should find that three "categories of statements" meet the requirements of the hearsay exceptions. (Gov't MIL at 17-18.) The Government's motion describes those categories but does not provide references to specific exhibits or even example quotations. (<u>See</u> id.) Because a determination of admissibility under Rule 801(d)(2)(E) requires consideration of the "circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself," <u>United States v. Gupta</u>, 747 F.3d 111, 123 (2d Cir. 2014), granting the Government's request at this time would be premature. Accordingly, the Government's motion is DENIED. The Government may renew its request to admit the statements at issue in context at trial.

3.    <u>Exclusion of the Proposed Expert Testimony of Matthew Price</u>

The Government seeks to exclude the testimony of Guan's cryptocurrency expert, Matthew Price. (<u>See</u> Gov't MIL at 19-40.) Guan opposes that request. (<u>See</u> Guan Opp'n at 8-21.)

Rule 702 "governs the admissibility of expert and other scientific or technical expert testimony." <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 265 (2d Cir. 2002). It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the [C]ourt that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed R. Evid. 702.

The proponent of expert testimony bears the burden of establishing that the admissibility requirements of Rule 702 are met by a preponderance of the evidence. <u>United States v. Williams</u>, 506 F.3d 151, 160 (2d Cir. 2007). The Court, however, has the ultimate "gatekeeping role" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." <u>Daubert v. Merrell Dow</u>

Pharms., Inc., 509 U.S. 579, 597 (1993). Accordingly, "[e]ven after qualifying a witness as an expert and determining that the opinion is reliable, the Court must ask whether the expert's testimony as to a particular matter will assist the trier of fact." United States v. Guo, No. 23-CR-118, 2024 WL 2262706, at *2 (S.D.N.Y. May 17, 2024). The testimony must be relevant and not be "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." Arista Recs. LLC v. Lime Grp. LLC, No. 06-CV-5936, 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011). Exclusion of expert testimony is "the exception rather than the rule." Media Glow Digit., LLC v. Panasonic Corp. of N. Am., No. 16-CV-7907, 2019 WL 1055527, at *1 (S.D.N.Y. Mar. 6, 2019) (quoting Fed. R. Evid. 702, Notes of the Advisory Committee on 2000 Amendments).

As an initial matter, Price is qualified to opine on cryptocurrency and the cryptocurrency industry. He is currently the Vice President of Investigations and Strategic Advisory at a blockchain analytics firm. (See Gov't MIL Exhibit B, Dkt. No. 149-2 at 1.) Prior to that role, Price served as Global Head of Investigations for Binance, one of the "world's largest cryptocurrency exchanges," and as a Special Agent with the Internal Revenue Service, Criminal Investigation-Cyber Crimes Unit, in which capacity he

8

investigated cases involving cryptocurrencies. (Id. at 1-2.) The Government does not explicitly contest Price's qualifications. Nevertheless, the Government makes five arguments as to why Price's testimony should be excluded.

First, the Government contends that Price's expert notice is deficient because it does not explain how his opinion is the product of any specialized knowledge or "clarify his methodology." (Gov't MIL at 28-29.) The Government's argument is not persuasive. Price's notice describes his extensive experience in the cryptocurrency industry in both the government and the private sector. The notice makes clear that he will use that experience, in combination with additional case-specific research, to opine on features and practices of the cryptocurrency industry. (See Gov't MIL Exhibit B, Dkt. No. 149-2 at 2-3.) Further, Price provides several examples of the materials he reviewed. The purpose of an expert notice is "to facilitate trial preparation." Fed. R. Evid. 16, Notes of the Advisory Committee on 2022 Amendment. The information provided by Price has given the Government "a fair opportunity to prepare to cross-examine [the] expert witness[ ] and secure opposing expert testimony if needed." United States v. Mrabet, No. 23-CR-69, 2023 WL 8179685, at *1 (S.D.N.Y. Nov. 27, 2023)

(quoting Fed. R. Evid. 16, Notes of the Advisory Committee on 2022 Amendment).

Second, the Government argues that Price's testimony is not "based on any recognized methodology" and does not include any opinions beyond the ken of the jury. (Gov't MIL at 30.) This argument is not persuasive. To be sure, Price's opinion is based primarily on his experience investigating and working in the cryptocurrency industry, rather than a scientific methodology. But not every expert need rely on a method that conforms to "the exactness of hard science methodologies." E.E.O.C. v. Bloomberg, L.P., 2010 WL 3466370, at *13-14 (S.D.N.Y. Aug. 31, 2010) (internal quotation marks omitted). An expert witness may "rely[] solely or primarily on experience," as long as he "explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 691 F. Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010) (quoting Fed. R. Evid. 702, Notes of the Advisory Committee). Price satisfies that standard here. Price's notice explains how he based his opinions on his unchallenged and extensive experience in the cryptocurrency industry combined with additional research, including review of academic papers and the cryptocurrency

10

exchanges involved in this case. (See Gov't MIL Exhibit B, Dkt. No. 149-2 at 2-3.) The Government may test its concerns with Price's methodology and conclusions on cross-examination.

Additionally, Price's opinions will be helpful to the jury. Much of this case involves complicated transactions in cryptocurrency and other digital payments that many jurors are likely to find challenging without assistance of experts. Jurors' familiarity with those topics cannot be assumed. As another court in this District opined in admitting a cryptocurrency expert over objection, "expert witnesses provide laymen with crucial knowledge where the common experience of jurors is insufficient to comprehend particular facts of a case." Guo, 2024 WL 2262706, at *3 (quoting In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 643 F. Supp. 2d 482, 504 (S.D.N.Y. 2009)) (alterations accepted). Price's opinion will serve just that purpose here. The Court therefore declines to exclude his opinion as a "factual narrative regarding matters within the ken of the jury." (Gov't MIL at 32.)

Third, the Government argues that Price's opinions should be excluded because they are not "tied to the contemporaneous knowledge of either defendant" and therefore "not relevant to the defendants' criminal intent." (Id. at

34.) Regarding the issue of relevance generally, Price's testimony on cryptocurrency industry practices will, as explained above, assist the trier of fact on an issue relevant to the case. Price's opinions are also relevant to intent specifically. For example, the Government has offered its own money laundering expert, Ross S. Delston, who intends to testify as to certain "red flags" of money laundering. (See Guan Opp'n Exhibit A, Dkt. No. 161-1 at 2-3.) Included in those "red flags" is a "large volume of transfers of funds from prepaid gift cards bought with cryptocurrency" and "the purchase of prepaid cards at a substantial and unexplained discount." (Id. at 3.) Price's proposed testimony that such practices are common to cryptocurrency exchanges, including the exchange at issue, is relevant and helpful to rebut that testimony.[3]

Fourth, the Government objects to Price's testimony regarding cryptocurrency industry practices as "inadmissible under Rules 401 and 403 because it consists of irrelevant, confusing, and unfairly prejudicial evidence of the alleged behavior of other persons who are not parties or witnesses to this case." (Gov't MIL at 36.) For reasons similar to those

---

[3] Price of course may not "state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704.

stated above, the Court rejects this argument. Price's proposed testimony is, as explained above, both relevant and probative. The Government has not sufficiently shown that the probative value of Price's testimony, as described in his expert notice, is "substantially outweighed" by a danger of "unfair prejudice, confusing the issues, [or] misleading the jury," as required for exclusion under Rule 403. Fed. R. Evid. 403. The Government may renew its objection to specific opinions Price articulates at trial.

Fifth, the Government argues that Price's proposed testimony is "also inadmissible under Rule 403 because it lacks fit to this case." (Gov't MIL at 38–39.) For the reasons stated above in relation to the Government's third and fourth arguments, this contention is also unconvincing except as to one aspect of Price's proposed testimony. In his expert notice, Price states his intent to testify that "[g]ift cards and prepaid debit cards, when combined with cryptocurrencies, also play an important role in international remittances." (Gov't MIL Exhibit B, Dkt. No. 149-2 at 3.) Guan provides no indication that international remittances play any role in this case. The discussion of international remittances instead appears to be an attempt to cast a wide net for an innocent explanation for Guan's alleged actions untethered to the facts of the case. As international remittances have

13

"limited or no bearing on the issues in this case," the negligible probative value attendant in Price opining on them is substantially outweighed by a risk of confusing or misleading the jury. United States v. Chastain, No. 22-CR-305, 2023 WL 2966643, at *9 (S.D.N.Y. Apr. 17, 2023); see Fed. R. Evid. 403. Price will therefore be precluded from opining on international remittances and their connection to gift cards, cryptocurrency, or other digital currencies.

In sum, the Government's motion is GRANTED IN PART to the extent it seeks to preclude Price from opining on "international remittances." Otherwise, the motion is DENIED.

### 4. Exclusion of the Proposed Expert Testimony of James Shanahan

The Government moves to exclude the expert testimony of Defendant Guan's expert James Shanahan, who intends to opine regarding "chargebacks, a procedure wherein holders of payment cards such as credit or debit cards can dispute, and potentially reverse, transactions made with their cards." (Gov't MIL at 40.)

The Government first argues that Shanahan's proposed background testimony on chargebacks should be excluded as within the ken of the jury and "cumulative with the testimony of fact witnesses." (Gov't MIL at 43.) As is the case regarding Price's testimony concerning cryptocurrencies,

14

Shanahan's testimony will be helpful to the jurors' understanding of an industry and practice with which they cannot be expected to be familiar. Whether Shanahan's testimony will be cumulative cannot be assessed before any fact witness has testified. In that respect, the Government's motion is premature. See United States v. Malvasio, No. 23-CR-396, 2026 WL 1329849, at *5 (S.D.N.Y. May 13, 2026).

Much of the remainder of Shanahan's proffered testimony must be excluded. In his expert notice, Shanahan states his opinion as to the "acceptable chargeback rate" in the "card industry" and opines that the "number of chargebacks experienced in Epoch Times-related merchant accounts is within the norm of industry averages and does not suggest that the accounts suffered from a significant chargeback problem." (Gov't MIL Exhibit C, Dkt. No. 149-3 at 6.) Guan argues that Shanahan's testimony is "relevant to Mr. Guan's understanding whether the chargeback rate was within industry standards." (Guan Opp'n at 28.) But Guan offers no argument and points to no evidence that he was ever aware of the industry standard. Without evidence that Guan knew the "acceptable chargeback rate," testimony as to that rate and the merchant accounts' conformity with it is not relevant to the underlying dispute. See United States v. Mendlowitz, No. 17-CR-248, 2019 WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019)

15

(collecting cases), aff'd, No. 21-2049, 2023 WL 2317172 (2d Cir. Mar. 2, 2023). Instead, such testimony is likely to confuse the jury by presenting it with a standard against which to judge Guan's conduct that is untethered to the facts of the case. See United States v. Martoma, 993 F. Supp. 2d 452, 456-57 (S.D.N.Y. 2014); Mendlowitz, 2019 WL 6977120, at *7 (affirming rejection of similar expert testimony as the "the risk of prejudice was high since there was a likelihood of jury confusion that the standard against which [the defendant's] conduct was to be measured was industry practice rather than whether his conduct violated" the law). Accordingly, Shanahan is precluded from opining as to the industry standard for chargeback rates and from comparing the chargeback rate of the relevant accounts to that standard.

Shanahan is further precluded from offering his opinion that "the chargeback rate typically fell to low levels in the months after it spiked, suggesting that Epoch Times management was able to take remedial actions to reduce chargeback rates after they increased." (Gov't MIL Exhibit C, Dkt. No 149-3 at 7.) Such "interpretations of conduct" and commentary on a defendant's mental state are not proper subjects for expert testimony. In re Rezulin Prods. Liability Litig., 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).

Should the Government introduce evidence concerning the chargeback rates of the relevant accounts and the thresholds imposed by relevant banks, Shanahan may testify as to his calculation of the accounts' chargeback rates, as long as that testimony is not cumulative with that of fact witnesses. The Government's objections to his calculations of the chargeback rates go to their weight rather than their admissibility.

Accordingly, the Government's motion is GRANTED IN PART and DENIED IN PART. Shanahan is precluded from opining as to industry standard or "acceptable" chargeback rates, comparing the chargeback rate of the relevant accounts to that standard, or offering his interpretation of Guan or Epoch Times's response to chargebacks. The motion is otherwise denied.

5.  Preclusion of Argument Concerning Reliance on the Advice of Counsel

The Government moves to preclude Guan from "making any argument that [he] relied on the express or implicit advice or approval of counsel in engaging in the charged conduct." (Gov't MIL at 52.) Guan disclaims any formal advice-of-counsel defense but opposes the Government's motion. (See Guan Opp'n at 33.) Although the Government and Guan disagree as to the nature of Guan's communications with counsel, they appear to broadly agree on the proper use of evidence of

17

Guan's communications. Consistent with the parties' positions and the authorities cited in the papers, Guan will be permitted to offer testimony and argument that the communications at issue demonstrate good faith. However, Guan will be precluded from arguing that he relied on the attorneys' communications or otherwise arguing that the advice or presence of counsel "blessed" what he is alleged to have done. United States v. Bankman-Fried, No. 22-CR-0673, 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024) (citations omitted); see SEC v. Am. Growth Funding II, LLC, No. 16-CV-828, 2018 WL 6322145, at *3 (S.D.N.Y. Dec. 4, 2018). Accordingly, the motion is GRANTED IN PART and DENIED IN PART.

6.    Preclusion of Evidence and Argument Concerning Improperly Motivated Prosecution

The Government moves to preclude Guan from arguing or presenting evidence that the charges against him are "improperly motivated, or concerning claims of religious or political persecution or other inflammatory religious or political consequences." (Gov't MIL at 64.) Guan disclaims any intention to argue that the charges against him are improperly motivated. (See Guan Opp'n at 38.) All evidence or arguments sounding in selective or improperly motivated prosecution is excluded as improper for trial. See United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) ("[A]

18

selective prosecution defense is an issue for the court rather than the jury."). Defendant Hung previously raised arguments concerning selective and improperly motivated prosecution in a motion to dismiss the indictment. (See Dkt. No. 97.) Although this Court rejected those arguments, (see Dkt. No. 110 at 25–31), Hung's pretrial motion was the appropriate forum for litigating them. A trial before a jury is not.

However, the parties disagree as to whether Guan should be precluded from introducing evidence of Chinese government and Chinese Communist Party actions against members of the Falun Gong spiritual movement, of which Guan is an adherent. (See Gov't MIL at 67–69; Guan Opp'n at 38–40.) Given the lack of an evidentiary record or indication of the specific evidence Guan seeks to introduce on this point, the Court cannot at present say that such evidence lacks relevance. Cf. United States v. Guo, No. 23-CR-118, 2024 WL 1939221, at *6 (S.D.N.Y. May 2, 2024) (finding "evidence showing that [d]efendants' fears of [Chinese Communist Party] targeting were objectively legitimate — even if they were not aware of the specific pieces of evidence" to be relevant as it "gives credence to certain nonculpable explanations for [the defendants'] actions"). Nor can the Court determine whether, as the Government argues, the probative value of any such

19

evidence is substantially outweighed by the risk of confusing or misleading the jury. See Fed. R. Evid. 403.

The Government's motion is, therefore, GRANTED IN PART and DENIED IN PART. Guan is precluded from offering evidence or argument that the charges are the result of selective or improperly motivated prosecution. But the Court will not at this time preclude all evidence concerning Guan's association with the Falun Gong and Chinese government actions against Guan and Falun Gong adherents.

### 7.    Preclusion of Evidence Concerning Punishment or Consequences

The Government moves to preclude Guan from introducing evidence or argument "concerning the punishment or consequences the [he or third parties] have faced or will face if convicted, or collateral consequences to third parties." (Gov't MIL at 69.) Guan does not oppose the motion. As is the case regarding arguments about selective prosecution, any evidence or argument concerning the consequences Guan — or any third party — has suffered or may suffer in the event of conviction concerns issues independent of the sole question before the jury: Guan's guilt or innocence pertaining to the crimes on trial. Accordingly, the Government's motion is GRANTED.

20

8.   Preclusion of Evidence Concerning Defendant's
     Prior Good and Bad Acts

The Government moves to preclude Guan from presenting evidence or argument of alleged "good acts," or the lack of commission of bad acts, in order to refute the charges against him. (See Gov't MIL at 71-72.)

It is black letter law that a criminal defendant "may not seek to establish his innocence . . . through proof of the absence of criminal act"—or the existence of good acts— "on [other] specific occasions." Unites States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990). A defendant may offer reputation or opinion testimony from a character witness concerning a "pertinent trait" of the defendant. See Fed. R. Evid. 404(a)(2)(A), 405(a). But, unless a character trait is an essential element of an offense, character may not be shown by evidence of specific acts. Cf. Fed. R. Evid. 405(b). As it requests nothing further than conformity with those Rules, the Government's motion is GRANTED.

9.   Preclusion of Evidence Concerning the Defendant's
     Personal Characteristics

The Government seeks to preclude Guan from introducing "evidence or argument concerning his family background, ethnicity or nationality, immigration status, marital status, ancestry, health, age, or any other similar factors." (Gov't MIL at 72.) The Government does not further specify what

21

evidence it seeks to exclude. Such evidence will be admitted only to the extent the parties establish that it is relevant and admissible. Objections to specific evidence may be raised at trial. Accordingly, the motion is GRANTED IN PART and DENIED IN PART.

B.    DEFENDANT GUAN'S MOTIONS IN LIMINE

    1.    Exclusion of Certain Evidence Concerning Internal Communications at Corporate Institutions and of Out-Of-Court Declarants' Fraud- And Theft-Related Complaints

Guan's first two requests implicate exhibits that are also the subject of the Government's motion to admit certain evidence as business records. (See "Guan MILS," Dkt. No. 146 at 1–6.) Given the parties' stated intent to confer as to the admissibility of this evidence, (see Part I.A.1 supra), the Court reserves decision on this request until after its review of the parties' submission.

    2.    Preclusion of Assertions Concerning an Amount of Money Laundered Absent an Established Evidentiary Nexus to Unlawful Activity

Guan initially moved to preclude the Government from referencing an amount of money laundered without first establishing an "evidentiary nexus to specified unlawful activity." (Guan MIL at 6.) However, in his Reply, Guan states that "there is nothing for the Court to rule on at this time" concerning this request. ("Guan Reply," Dkt. No. 175 at 18.)

The motion is, therefore, DENIED as moot. Guan may renew his objection at trial as appropriate.

3.    Preclusion of Certain Statements Concerning "Victims"

Guan moves to preclude the Government from referring to "victims" of alleged public benefit theft or fraud or identity theft. (Guan MIL at 9.) In his Reply, Guan concedes that he will not object to the Government using the term "victim" when referring to persons who experienced the fraud or identity theft specified as unlawful activity. (See Guan Reply at 16–17.) Nevertheless, Guan objects to the Government's "refer[ring] to taxpayers as victims of fraud" because it "implicates the jury's pecuniary interest in the case as taxpayers themselves." (Id. at 17.)

The Government will not be precluded from referring to "victims" of the underlying specified unlawful activity. The Court finds nothing improper given the nature of the charges. Further, any potential prejudice will be negated by the Court's instruction to the jury that arguments by counsel do not constitute evidence. However, the Government will be precluded from referring specifically to "taxpayers" as "victims." Such argument is inappropriate and prejudicial as it is likely to appeal to the jurors' pecuniary interest. See United States v. Ahmed, No. 14-CR-277, 2016 WL 3647686, at

23

*10-11 (E.D.N.Y. July 1, 2016). Accordingly, the Defendant's motion is GRANTED IN PART and DENIED IN PART.

4.    Exclusion of Victim Impact Testimony

Guan initially moved to preclude the Government from eliciting victim impact testimony. (Guan MIL at 11.) In his Reply, Guan states that a decision by the Court on this issue is not currently required. (Guan Reply at 16.) The motion is, therefore, DENIED as moot. Guan may renew his objection at trial as appropriate.

5.    Exclusion of Certain Evidence of Uncharged Conduct

Guan moves to exclude certain evidence of uncharged conduct or, in the alternative, to compel the Government to provide a more particularized notice of the evidence it seeks to admit. (See Guan MIL at 13.) In a letter dated April 6, 2026, the Government informed Defense counsel that it intended to introduce, "as part of the direct proof of the crimes charged or pursuant to Rule 404(b)," evidence of certain "activities of Le Van Hung and the other members of the 'MMO Team' (and of Guan in concert with the MMO Team)." (Dkt. No. 162-1 at 1-2.) Those "activities" included:

> (1) running an unlicensed money transfer business, (2) selling gift cards and prepaid debit cards at a discount and/or commissioning the taking of photographs of such cards, (3) asking others to purchase products in the United States with gift cards and/or debit cards so that the products could

24

be shipped back to Vietnam, (4) commissioning the creation of identification documents in others' names, (5) the bulk purchase of stolen personally identifiable information, (6) engaging in or receiving the proceeds of business email compromise schemes, (7) engaging in or receiving the proceeds of romance fraud schemes, (8) commissioning the use of the financial or electronic accounts of other persons, or the bulk purchase of such accounts in the names of other persons, (9) the mailing of checks in the names of other persons to Guan or to other co-conspirators for deposit in bank accounts controlled by Guan, and (10) the creation of payment processing or other financial accounts under false and fraudulent customer information or the transfer of funds using false and fraudulent payment descriptions.

(Id. at 2.)

The Government has now stated that it does not intend to introduce evidence of activities (1) and (7) in its case-in-chief. (See "Gov't Opp'n," Dkt. No. 162 at 22 n.9.) And Guan has conceded that evidence of activity (2) is admissible as direct evidence of the crimes charged. (See Guan Reply at 13 n.4.) Guan moves to exclude evidence of the remaining seven categories of conduct. (See Guan Reply at 13–15.) The Government argues that the evidence is admissible as direct evidence of the crimes charged or, in the alternative, as Rule 404(b) evidence. (See Gov't Opp'n at 19–23.)

Rule 404(b) provides in relevant part:

Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character . . . This evidence may be admissible for another purpose,

25

such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2).

Evidence of uncharged criminal activity may also be admitted as direct evidence of the crime charged and "not considered other crimes evidence under [Rule] 404(b) if it [1] arose out of the same transaction or series of transactions as the charged offense, [2] if it is inextricably intertwined with the evidence regarding the charged offense, or [3] if it is necessary to complete the story of the crime on trial." United States v. Nektalov, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004) (quoting United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000)). However, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." Id. at 372.

The vague language of the Government's letter and the lack of an established evidentiary connection between the conduct at issue and the charged offenses preclude the Court from finding that the evidence at issue is sufficiently intertwined with evidence of the charged offenses or necessary to a complete story of the crimes on trial. By that same token, the Government's proffer is not sufficiently specific for the Court to determine the admissibility of the

26

proposed evidence under Rule 404(b). See United States v. Townsend, No. 06-CR-34, 2007 WL 1288597, at *6 (S.D.N.Y. May 1, 2007). Nevertheless, Guan has not shown that the evidence of the alleged uncharged acts is categorically subject to exclusion. Should the Government seek to admit this evidence as direct evidence or Rule 404(b) evidence, it must provide an evidentiary basis or a more detailed proffer. Guan's motion is, therefore, GRANTED IN PART and DENIED IN PART.

6.   Exclusion of Evidence and Arguments Regarding Guan's Tax Returns

Guan moves to preclude the Government from introducing evidence, argument, or testimony concerning his personal tax returns for tax years 2019 through 2023. (See Guan MIL at 16–19.) The Government provided notice to Guan in its Rule 404(b) notice of its intent to introduce his tax returns for those years. (See Gov't Opp'n Exhibit A, Dkt. No. 162-1 at 1.)

The tax returns are admissible under Rule 404(b) to show Guan's knowledge or intent. See Fed. R. Evid. 404(b)(2). As Guan has made clear, Guan's knowledge and intent is "likely to be the most important [issue] in this case." (Guan Opp'n at 9.) Evidence that Guan's tax returns filed during the conspiracy were false or misleading as to his cryptocurrency trading activity is relevant and probative to that issue. See United States v. Adelekan, No. 22-1232-CR, 2024 WL 4501962,

27

at *2 (2d Cir. Oct. 16, 2024) (affirming admission of tax returns as probative of intent under Rule 404(b) in a money laundering conspiracy case). Additionally, the tax returns are not excludable under Rule 403 as they are "no more inflammatory than the charges alleged in the indictment." Id. (quoting United States v. Abu-Jihaad, 630 F.3d 102, 133 (2d Cir. 2010)). Accordingly, the motion regarding Guan's tax returns is DENIED.[4]

## II.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the Government's motions in limine (Dkt No. 149) are **GRANTED IN PART** and **DENIED IN PART**. It is further

**ORDERED** that the motions in limine of Defendant Weidong Guan (Dkt No. 145) are **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED.**

Dated:    30 June 2026
          New York, New York

_____
          Victor Marrero
          U.S.D.J.

---

[4] Guan's Motion also includes an objection to the Court's sharing the full indictment with the jury and a reservation of his right to oppose the admission of document metadata. (See Guan MIL at 18-23.) However, Guan makes clear in his Reply that he "does not at present seek any relief" on these issues. (Guan Reply at 18-19.) The issues will therefore be addressed as they arise at trial.