Q58BGUAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                          24 Cr. 322 (VM)

WEIDONG GUAN & LE VAN HUNG,


                Defendants.

                                            Conference
------------------------------x

                                            New York, N.Y.
                                            May 8, 2026
                                            12:15 p.m.
Before:

                    HON. VICTOR MARRERO,

                                            District Judge

                        APPEARANCES

JAY CLAYTON
      United States Attorney for the
      Southern District of New York
BY:   PAUL M. MONTELEONI
      REBECCA T. DELL
      AMANDA C. WEINGARTEN
      BENJAMIN M. BURKETT
      Assistant United States Attorneys

PETRILLO KLEIN & BOXER LLP
      Attorneys for Defendant GUAN
BY:   GUY PETRILLO
      KEVIN R. PUVALOWSKI
      MARCELO TRIANA

PARLATORE LAW GROUP LLP
      Attorneys for Defendant HUNG
BY:   TIMOTHY C. PARLATORE


                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

Q58BGUAC

THE COURT:  This is a proceeding in the matter of the United States V. Guan and others, docket number 24 Cr. 322. Counsel, please enter your appearances for the record.

MR. MONTELEONI:  Good afternoon, your Honor.

Paul Monteleoni for the government.  And with me at counsel table are my colleagues Amanda Weingarten, Rebecca Dell and Benjamin Burkett.

MR. PETRILLO:  Good afternoon, your Honor.

Guy Petrillo for Defendant Guan.

MR. PUVALOWSKI:  In addition, Kevin Puvalowski from Petrillo Klein & Boxer for Mr. Guan as well.

MR. TRIANA:  Marcelo Triana from Petrillo Klein & Boxer as well for Defendant Guan.

MR. PARLATORE:  Good afternoon, your Honor.

Tim Parlatore from Parlatore Law Group on behalf of Mr. Hung.

THE COURT:  Thank you.  The Court notes that defendants are not present at this conference.  Have they waived their appearances through counsel?

MR. PETRILLO:  Your Honor, Mr. Guan has waived his appearance and is comfortable with us going forward without him.

MR. PARLATORE:  As has Mr. Hong.

THE COURT:  Thank you.  As the parties are aware, the Court scheduled the trial of this matter to commence on July 7

Q58BGUAC

with a final pretrial conference to be held on June 26. The Court scheduled -- before I indicate that remind the parties that the Court on several occasions granted the defendants additional time in six-week installments on several occasions in order to enable the defendants to adequately prepare. And in recognition of that, there is going to be a unique challenge in this long trial brought about by the language issue that defendants require translation. Given the Court's accommodation of the defendants request numerous times for extension, I was concerned to learn that the defendants believe that they will be challenging or objecting to all exhibits of the government.

And it is my understanding as well that the government submitted the exhibits for the review of the defendants, and roughly four minutes later came a response from the defendant indicating that the defendants were going to object to the introduction or admissibility of exhibits, as well as the authenticity of all of the government's exhibits. I consider that approach in light of the circumstances of this trial and the Court's accommodating the defendants' request for time to be bordering on bath faith. So I would use that as a backdrop against moving forward at this point with the trial on July 7th when we don't have one way in which we could ensure that the trial will be maintained within the allotted time, which is through stipulations or agreements as to the admissibility and

Q58BGUAC

authenticity of documents, especially some documents which on their face can be considered to be authentic. And I will be closely watching that to see if the defendant's position does not change, and they intend to object across the board to exhibits that we find ways to overcome that measure of bad faith.

All right. Mr. Monteleoni, does the government have any additional thoughts on this concern and the preparations for trial and what remains to be done in order that we move ahead on trial as scheduled?

MR. MONTELEONI: Yes, your Honor. Thank you. I would say to begin with, we obviously do agree that we believe stipulations could easily be reached if defendants wished to reach them. We sent over, as we put in our letter, a proposed set of stipulations covering over a thousand exhibits on April 4th, a few days after we presented the exhibits themselves to the defendants. And we received, as we put in the letter, within four minutes a blanket refusal to consider them. I can't speak to why that's their position. It's our burden, so it's their right to take whatever position they want in our view. But it poses some obstacles. I will say that we do believe that we are going to be taking steps. We've been expending extensive efforts actually to take steps to prevent that refusal to stipulate from causing undue delay in the case.

We've been assembling a large number of

Q58BGUAC

certifications, which we believe should be ripe for a ruling from the Court perhaps pretrial under Rule 902 that hundreds, perhaps over a thousand exhibits are self-authenticating pursuant to those certifications.  We intend to be compiling and summarizing large volumes of exhibits into summary charts, which will, I think, to the extent there's custodial or similar testimony necessary, which I think there will be some, should drastically speed that up.  Ultimately, we actually, as a matter of fact encountered a similar issue in the last trial that I happened to do.  And we were able to present the evidence with some efficiency even given the refusal of defendants willingness to stipulate.  But obviously we think that if the defendants do choose to stipulate, that will be far more efficient from the perspective of the jury's time.

In terms of whether they do or they don't.  We do believe that the trial can be completed within the sort of five to six-week estimate that we gave.  Even if there were stipulations, we don't think that it could be completed realistically within the sort of shorter three-week period that I think was contemplated in the email from chambers.  This is just a very document intensive case ultimately.  We've been taking extensive efforts to ensure that we are able to move the documents in very quickly; and also to present them and read the portions of them to the jury that are necessary for their understanding of the case.  But ultimately with 2000 exhibits,

Q58BGUAC

there's just going to be sometime to present that case.

The most recent trial I had, had actually similar volume of exhibits, and very, very short -- some cases nonexistent, defense cross-examinations, which obviously we can't control, still took about five weeks.  I think that the shorter three week period that I think the Court suggested, I don't see that as realistic, whether the defendants do or don't stipulate.  We obviously hope that they do, and we're ready to engage in them in good faith if they ever reconsider their position.  Apart from that, we're just let sort of preparing for trial and preparing to put in our case without any agreements from them and seeking rulings from the Court, which we'll do as far in advance of trial as possible to make the actual trial presentation as fast as possible.  Ultimately though, I don't think that's going to get us to three weeks.  I think that we're looking at the sort of five or six week range.

THE COURT:  Thank you.  Mr. Petrillo.

MR. PETRILLO:  Yes, your Honor.  Just to clarify, Defendant Guan only asked for one extension of the trial date.  I think we're being lumped in as defendants with the plural.  I just want to make that clear.  Number two, we never said we wouldn't stipulate.  We didn't respond following our co-defendant's response and our entertaining the idea.  So I just want to make clear that we are two different defendants.  We're represented by two different sets of counsel, and it's of

Q58BGUAC

course our position that there are two different trials going on here.  I would hope that the Court would keep that in mind.

As far as the estimate of time.  Five to six weeks, I take Mr. Monteleoni at his good faith estimate.  I don't think we add much to that, and that estimate was made April 5th prior to anybody saying anything about stips just to be clear on the record.  We're ready to go forward on July 7.  We're also open to the Court's schedule any modifications the Court may see as desirable.

THE COURT:  Mr. Petrillo, let me make sure I understood your position or your client's position correctly.  You are not taking a position that exhibits authentication of admissibility should be objected to across the board?

MR. PETRILLO:  Not across the board, no.  We will be objecting to certain exhibits depending on their provenance.

THE COURT:  Have you sat down with or be willing to sit down with the government to develop a list of exhibits that will not be disputed?

MR. PETRILLO:  Yes, your Honor.

THE COURT:  All right.  So, Mr. Monteleoni, I expect that you take that on its face.  And that over the next couple of weeks you find ways of assuring the Court that no blanketed objections are going to delay the trial any longer than it has already been by virtue of the various extensions that the Court granted contemplating that some efficiency would be achieved by

Q58BGUAC

stipulations and certifications.

MR. MONTELEONI:  Yes, absolutely.  Obviously, a stipulation is not going to be sufficient if it's not entered by all defendants; but we will work with any defendant who's willing to work with us on stipulations, absolutely, as soon as they're able to.

THE COURT:  All right.  Thank you.  Yes.

MR. PARLATORE:  Your Honor, I was the one who responded.  And I just want to make clear that there is a difference between agreeing to enter into stipulations of thousands of exhibits that we haven't had a chance to read yet versus objecting to every single exhibit.  There's a couple of different levels here.  First, there's the authenticity.  They gave us thousands of exhibits and said, here, we'd like you to stipulate that these are all authentic and admissible.  If they are in fact self-authenticating, I'd like to at least see the certification from who produced it before agreeing to stipulate to it.

In my experience, when you have self-authenticating documents, stipulations aren't really necessary anyway because they're self-authenticating; but you add on top of that the issue of, are they admissible.  And in this case, since we didn't have a bill of particulars, since we don't have a clear picture of what the government's theory in this case even is, we have a mountain of documents and we have to guess as to

Q58BGUAC

whether they are objectionable or not while being pushed with this mass stipulation.  No, there's no way that I can sign that stipulation.  As we go through them, perhaps there will be certain ones that can be stipulated to.  But as a simple en masse here, stipulate so we can put in thousands of exhibits.  The answer is no.  And add on top of that, my client is incarcerated.  Because the technical capabilities, the first time he's going to see any of these exhibits is when they show it to the jury.  And he's also working through an interpreter.  It's putting me into an impossible situation here, and so I do respectfully disagree with the concept that my refusal to just blanketly enter into the stipulation would be somehow bad faith.

I'm willing to work with them on this, but just simply throwing a mountain of stuff at me and saying stipulate to everything without anything more, that's something I can't do.

THE COURT:  Let's look at this from a point of view of practicality.  Let us focus let's say on documents that are clearly business records of the government or government agencies.  Why should we need to go through a process of individual authentication to determine that a business record is a business record, or that that business record has relevance to the matter on trial here?

MR. PARLATORE:  Because we would need to know unfortunately because of some of the ancillary issues in this

Q58BGUAC

case, we do need to know that it is in fact authentic.  And if they're not able to produce somebody to say, hey, this is our record, that's something that I should be able to consider in when making that --

THE COURT:  There are some things that should not need to have a second government witness to come in and say, yes, that is a document, a business document record of that agency or that individual and is authentic.  Again, it seems counterintuitive that you would need to have that kind of record for every single one of those thousands of exhibits. Why could you not go through them and say, this one is a business record on its face?  If it's something that should not need to have the government bring in a witness to say, again, this is an authentic record.

MR. PARLATORE:  Your Honor, a certification from the custodian of records is a very simple short document that is something I'm used to seeing in every other case.  So when they present me a record that say, hey, we don't have a certification from somebody, that stands out to me.  Okay.  If they produced everything and said, hey, here's -- bank records is the simplest thing.  You give me a mountain of bank records and say, hey, here's the certification from the custodian from the bank saying these are authentic; then we can jump right over the authentication issue and we can argue about admissibility and all the other rules all we want at that

Q58BGUAC

point.  But there's a reason why we have the self-authenticating business records rule, and it's not that onerous to simply get that piece of paper.  But it is one of those things that stands out to a defense lawyer when they can't produce it or won't produce it.  But as he just said, they're going about and getting them right now, so it seems like that's kind of a nonissue.

THE COURT:  Mr. Monteleoni.

MR. MONTELEONI:  May I address that briefly?

THE COURT:  Yes.

MR. MONTELEONI:  I think that much of what defense counsel was just talking about is hypothetical because almost all of these certifications have already been produced in discovery.  Then after learning from defense counsel that he wasn't going to consider stipulations, which didn't come by the way with any request to see the certifications to be pointed to where they were in discovery to any questions about any documents.  Just said, will not agree to the admissibility of any exhibits.  I responded to quickly, would you agree to authenticity if not admissibility?  And he responded with just the single word "no".  I don't think that it was actually about having trouble finding the certifications, but they've largely all been produced.

We then marked dozens of certifications covering over a thousand exhibits as additional government exhibits upon

Q58BGUAC

learning of their refusal to stipulate; and then there were a few stragglers that were getting updated certifications for. Look, if he's going to just try to engage with whether there's a genuine question of admissibility or authenticity about them, I'm glad to hear that.  I think that there's plenty of time to do that, even on top of the month that he's had to grapple with this already since communicating this to him.  I think that ultimately it's just going to be his decision to whether he wants to actually do it.

THE COURT:  I'm going to direct the parties to meet and confer over the course of the next week and come back to the Court with an indication of how productive those discussions between the parties have been in addressing the concerns that we've talked about here.  I cannot accept that out of a thousand documents or exhibits that the government has indicated has produced that every one or even a substantial number of those routine type records are in fact not authentic and that they would require the government to produce yet another witness to come to court only to say, yes, that is an authentic record of this, whatever it is at the time.

So I would suggest that you come back within a week and bring the Court up-to-date on your progress in addressing these issues and seeing to what extent you've been able to reach some sort of a mutual accommodation that will address this issue and not create the inefficiency of the Court having

Q58BGUAC

to have witnesses testify to routine type of documents that on their face should be certified as authentic or admissible. Let me ask the parties whether one week would be sufficient for this purpose, or do we need additional time beyond that?

MR. MONTELEONI: The government believes one week is reasonable.

MR. PETRILLO: Agreeable for us as well, your Honor, for Mr. Guan.

MR. PARLATORE: I believe so, especially if they can give us a list of which ones have certifications. Any one that has a certification from the custodian of records I'm almost certainly not going to object to those. I don't anticipate that if they're going to give me a certification from a custodian of records and say I don't think that's a proper certification.

THE COURT: That's encouraging to hear that.

MR. PARLATORE: Again, this is about authenticity, not admissibility, because several of the exhibits that they have produced, we do not believe are admissible, so that's a separate issue.

MR. PETRILLO: We agree with that, your Honor.

THE COURT: I understand that issue. But when you're talking about, as I hear, potentially a thousand documents, you have to look at that from a point of view efficiency and practicality.

Q58BGUAC

MR. PARLATORE:  Which I have to weigh against my client's rights that when it comes to efficiency and practicality about authenticity, as long as we got the certification, no problem.  But we can't just give up if something is admissible hearsay, we're not going to give it up for the purpose of efficiency.

THE COURT:  All right.  So I would hope that one result of what I am suggesting is the parties reaching agreement as to documents or exhibits that are not disputed, and we will put that into the category of undisputed documents that we will address in accordance with the Court's individual practices.  Anything else?  Government.

MR. MONTELEONI:  No, your Honor.  We just wanted to confirm the email from chambers suggested that only a three-week period had been blocked out for trial.  And since we believe that's insufficient, even if we do get full stipulations to authenticity for all of these, we wanted to confirm that the Court has available the current date enough time for our estimated length of trial.

THE COURT:  When I indicated the three week possible schedule, I did not take sufficiently into account that the defendants are going to be following the entire trial through interpretation.  And as you know, interpretation always delays trials.  So I adjusted for that and indicated that we will aim for a trial of four to five weeks.  And if we begin to push

Q58BGUAC

upon that, we could revisit the question at this point.

MR. MONTELEONI:  Thank you, your Honor.

THE COURT:  Anything else?  If not, thank you.  Have a good day and a good weekend.

(Adjourned)