655 Third Avenue, 12th Fl.
New York, NY 10017

T: 212.370.0330
www.pkbllp.com

# Petrillo Klein + Boxer LLP

**GUY PETRILLO**
gpetrillo@pkbllp.com
D: 212.370.0331
M: 646.385.1479

July 8, 2026

**BY ECF**

Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:   *United States v. Weidong Guan, et al.*
>       24 Cr. 322 (VM)

Dear Judge Marrero:

In connection with the above-referenced matter and on behalf of our client Weidong "Bill" Guan, we respectfully submit this letter moving to preclude the government from introducing uncharged conduct listed in its revised Rule 404(b) notice (ECF 194). The revised Rule 404(b) notice refers to various acts allegedly committed by alleged co-conspirators in the MMO Team but, by and large, fails to connect those acts to any conduct by Mr. Guan (or even known by Mr. Guan) or to any of the charges in this case. The proffered evidence serves no legitimate purpose under Rule 404(b) and is essentially an attempt to show guilt by association; it should be excluded under Rules 404(b) and 403.[1]

The uncharged conduct in the government's notice are irrelevant to issues in the case, do not establish what the government appears to contend, and are almost entirely unrelated to Mr. Guan's own conduct or even knowledge (and instead are related to conduct of co-defendant Le Van Hung, who is not on trial, and others). Many of these categories would have been improper even if Mr. Hung was still being tried alongside Mr.

---

[1] The exposition of the legal standard applicable to Rule 404(b) contained in our motion *in limine* is hereby incorporated by reference. (ECF 148, at 13-14.)

Petrillo Klein + Boxer

Guan; now that he is not, for most, there is no colorable argument to admit this unduly prejudicial evidence.[2]

### A.    Category 3: "Checkout" Activity

The government attempts to introduce acts related to the MMO Team's alleged use of gift cards to purchase goods for shipment to the Epoch Entities, which the government refers to as "checkout" activity. The government purports that a co-conspirator, Le Van Hung, recruited people online ("Nominee-1" and "Nominee-2") to conduct "checkout" activity. (ECF 194 at 2-3.) The government, however, does not cite to any evidence that Nominee-1 or Nominee-2 ultimately engaged in any checkout activity. Instead, the government's own notice states that its financial tracing of accounts for Nominee-1 and Nominee-2 identify only transfers from the nominees' Green Dot cards to Epoch Times accounts. (*Id.* at 3.) In this regard, the government's notice has not established an evidentiary basis in support of  the purported checkout activity.

The government also refers to an email Mr. Guan received from an MMO Team member regarding the checkout activity, and contends that this helps tell the narrative of how Mr. Guan developed his relationship with the MMO Team. But Mr. Guan does not dispute that he communicated and worked with members of the MMO Team on a project whereby the MMO Team purchased prepaid debit cards on Paxful that they then transacted at Epoch Times accounts. The email Mr. Guan received regarding supposed checkout activity should therefore be excluded since the issue of Mr. Guan's relationship with the MMO Team is not in dispute.

### B.    Category 4: Creation of Identification Documents in Others' Names

The government also seeks to admit evidence regarding the MMO Team's creation of fake identification documents, arguing that these documents go to Mr. Guan's state of mind that transactions were carried out with false identification documents. (*Id.* at 5-6.) The government does not, however, point to a single document or communication establishing that Mr. Guan was actually aware that the MMO Team was supposedly creating fake identification documents. Instead, the government baldly asserts that the false documents are somehow probative of the charges at issue in this case because Mr. Guan worked in "close coordination" with the MMO Team. (*Id.* at 5.) The government's

---

[2] Parenthetically, it is not clear an evidentiary basis exists for the uncharged conduct the government describes. The categories listed in the government's Rule 404(b) notice are based almost entirely on references to rows or sheets of the government's summary charts GX 801, 852, and 901. (*See* ECF 194.) The Court has excluded those charts as improper summaries under Rule 1006. (ECF 200 at 3-6.)

Petrillo Klein + Boxer

argument convincingly proves the defense's point here: absent proof that Mr. Guan was aware of this alleged misconduct of the MMO Team (and there is none), there is no probative value to this evidence – it does not relate to anything being contested here. At the same time, the fact that Guan dealt with MMO closely with respect to the gift card donations means that the prejudicial effect of the proffered evidence will be great. The government's argument on this point amounts to naked guilt-by-association. It serves no valid purpose under Rule 404(b) and, even if it did, it would properly be excluded under Rule 403.

C.    Category 5: Purchase of Personal Identifying Information ("PII")

The government also contends that the MMO Team and Hung trafficked in large quantities of stolen PII in order to access a network of nominee prepaid debit cards and financial accounts for transacting prepaid debit cards at Epoch Times accounts. (*Id.* at 6-7.) As with category 4, however, the government does not point to a single document even tangentially connecting Mr. Guan to this conduct. (*Cf. id.* (stating "Hung obtained files of stolen information," "Hung receiving files of 100 Chime accounts," "Hung even hosted a Facebook group where such [stolen] identification" was traded).) Once again, the government seeks to paint Mr. Guan as guilty merely because he coordinated with the MMO Team on their purchase of gift cards that were then donated to the Epoch Times. The proffered evidence does not establish that Mr. Guan knew of any aspect of the uncharged conduct, the uncharged conduct is not probative of any issue that is contested in this case, and the uncharged conduct is tremendously prejudicial. As with category 4, above, this category fails to meet the requirements of Rule 404(b), and even if it did, would be excluded under Rule 403.

D.    Category 6: Business Email Compromise Scheme

The Rule 404(b) notice refers to the MMO Team "engaging in" a business compromise scheme targeting a nonprofit organization in Maine. (*Id.* at 7; ECF 162-1 at 2 (government's original Rule 404(b) notice containing same language).) As an initial matter, the government's own evidence — as outlined in its summary chart GX 901 — appears to contradict the assertion that the MMO Team committed the underlying fraud. Specifically, GX 901 establish that someone with a Google email address, with a Nigerian telephone number, activated a Green Dot card that was used to obtain the funds from the nonprofit in Maine. (*See* GX 901, sheet 32, rows 1-3, 5-8 (citing GX 3A-12, GX 5A-1, GX 5A-3, GX 6B-1, and GX 2A-20UR.) Less than a third of the funds obtained from the Maine nonprofit were then transferred to another Green Dot card that the government contends was controlled by the MMO Team, and subsequently deposited in an Epoch Times account. (*See id.* rows 9-10 (citing GX 3G-2, GX 3G-3, GX 2A-20UR, GX 2A-21UR, and GX 2A-22UR.) At most, the evidence suggests that the MMO Team at some point dealt with the perpetrator of the

**Petrillo Klein + Boxer**

Honorable Victor Marrero
July 8, 2026
Page 4

business enterprise scheme. But the government's evidence does not establish that someone with the MMO Team engaged in the underlying scheme to steal the funds from the Maine nonprofit.

Even if the MMO Team had been involved in the underlying scheme, as with categories 4 and 5 discussed above, there is no assertion that Mr. Guan was in any way involved in or aware of the alleged business compromise scheme. Again, the government's attempt to tar Mr. Guan with this conduct (which is even one step further removed from the conduct discussed in 4 and 5) cannot be justified under Rule 404(b) or Rule 403.[3]

E.    Category 8: Commissioning Financial or Electronic Accounts of Others, or Purchase of Such Accounts

The government also seeks to introduce evidence concerning the purchase or commissioning the use of financial accounts and electronic accounts belonging to others. (ECF 194 at 8-9.) Notably, this evidence substantially overlaps with the government's purported evidence in category 5, *i.e.,* the purchase of stolen PII. (*Id.* at 8.) As before, the government's basis for introducing this evidence is principally that the conduct is attributable to Hung and the MMO Team. (*Id.* at 8-9 (noting "Hung obtaining 44 Chime accounts," "Hung obtaining batches of Payoneer accounts," "Hung communications with Nominee-1," or "Hung's discussion of use of Nominee-2 Venmo account").) The Rule 404(b) notice also highlights, as before, Hung's role in creating a Facebook group where stolen accounts were exchanged. (*Id.* at 9.) Also as before, however, absent from the notice is any connection to Mr. Guan's knowledge of or participation in this uncharged conduct.

The government's only method to establish a connection is to assert that Mr. Guan must have known about the MMO Team's conduct because his accounts were also supposedly nominee accounts, similar to Nominee-1 and Nominee-2. (*Id.* at 10.) The government's contention appears to be that because Hung accessed accounts belonging to Mr. Guan — which the evidence will show was disclosed to at least one cryptocurrency institution — then he must have known that the MMO Team had utilized a network of nominee accounts. That logic is a stretch, to say the least. The Rule 404(b) notice provides no explanation or basis for establishing that merely because Nominee-1 or Nominee-2 had

---

[3] Mr. Guan does not dispute the government's ability to introduce evidence related to the fact that funds that were deposited in Epoch Times accounts were derived from specified unlawful activity. But the government should not be permitted to argue that the MMO Team "engaged in" the underlying specified unlawful activity (to wit wire fraud) when (a) the government's own evidence indicates someone else committed the offense and (b) there is no proof that Mr. Guan had any knowledge of the uncharged conduct.

Petrillo Klein + Boxer

accounts used by Hung that in turn means that Mr. Guan somehow knew of Hung or the MMO Team's purported practice of maintaining a network of nominee accounts. Without establishing such a basis for Mr. Guan's knowledge or awareness, the government's attempt to introduce uncharged conduct again seeks to cast Mr. Guan as guilty by merely knowing Hung and the MMO Team.

> F.    Category 9: Depositing Checks in the Names of Other Persons

Another category of uncharged conduct is Mr. Guan depositing checks sent to him on behalf of the MMO Team that Mr. Hung and Nominee-1 allegedly coordinated in obtaining. (*Id.* at 10-11.) But the notice again fails to establish a connection between the alleged conduct and the alleged conspiracy to launder proceeds of wire fraud charged in the Indictment. For instance, the government revised Rule 404(b) notice indicates that Hung sent Nominee-1 a check in the name of PII Victim-6 to deposit in a bank account belonging to Nominee-1, before Nominee-1 issued a cashier's check for the same funds that was sent to Mr. Guan. (*Id.* at 10.) But the revised notice does not identify how these funds were the proceeds of wire fraud, let alone that Mr. Guan knew that these funds derived from specified unlawful activity. (*See id.* at 11 (citing GX 801 rows 1604-18 regarding sending money orders to Mr. Guan, and rows 1627-37 sending checks to Mr. Guan).) Without establishing a connection to the alleged conspiracy to launder proceeds of wire fraud, the government should not be permitted to introduce evidence of this uncharged conduct.

Respectfully submitted,

*/s/ Guy Petrillo*
Guy Petrillo

cc:    All Counsel (Via ECF)